ACCEPTED
03-14-00632-CV
3771129
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/14/2015 3:40:26 PM
JEFFREY D. KYLE
CLERK

**No. 03-14-00632-CV**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/14/2015 3:40:26 PM
JEFFREY D. KYLE
Clerk

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**KARL B. BAILEY**
*Appellant,*

v.

**MIDFIRST BANK**
*Appellees.*

ON APPEAL FROM THE 250TH JUDICIAL DISTRICT COURT, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. D-1-GN-14-002430

**APPELLANT'S BRIEF**

WILLIAM B. GAMMON, SBN: 07611280
ANTHONY G. READ, SBN: 24056184
**GAMMON LAW OFFICE, PLLC.**
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279
Firm@GammonLawOffice.com
COUNSEL FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

## KARL B. BAILEY
*Appellant,*

v.

## MIDFIRST BANK
*Appellee.*

ON APPEAL FROM THE 250TH JUDICIAL DISTRICT COURT, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. D-1-GN-14-002430

## APPELLANT'S BRIEF

WILLIAM B. GAMMON, SBN: 07611280
ANTHONY G. READ, SBN: 24056184
**GAMMON LAW OFFICE, PLLC.**
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279
Firm@GammonLawOffice.com
COUNSEL FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

*Appellant:*

*Karl B. Bailey*

*Appellant's Counsel:*

WILLIAM B. GAMMON, SBN: 07611280
ANTHONY G. READ
GAMMON LAW OFFICE, PLLC.
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279
Firm@GammonLawOffice.com


*Appellee:*

*MidFirst Bank*

*Appellee's Counsel:*

CHRIS H. POCHYLA, SBN: 24032842
BARRETT DAFFIN FRAPPIER TURNER &
ENGEL, LLP
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001
Telephone: 972-340-7955
Facsimile: 972-341-0734

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL............................................3
TABLE OF CONTENTS............………………………….............4
TABLE OF AUTHORITIES ..............................................6
STATEMENT OF THE CASE............................................9
RECOMMENDATION ON ORAL ARGUMENT ............................10
ISSUES PRESENTED........................................................11
STATEMENT OF THE FACTS ........................................12
SUMMARY OF THE ARGUMENT ....................................15
ARGUMENT AND AUTHORITIES........................................17

    I. Midfirst's Traditional Motion for Summary Judgment……….17

        A. Standard of Review- Tex. R. Civ. P. 166a…………..…..17

        B. The Trial Court's Summary Judgment is in Error Because Bailey has Standing to Bring his Claims as Successor, Assignee Bound and Benefitted by the Deed of Trust or a Person with an Interest in the Property……….18

        C. Bailey has Standing to Challenge The Assignment to MidFirst Bank …………….....…….……………….…….....20

        D. The Trial Court's Judgment is in Error Because Bailey was Entitled to Notice of the Foreclosure Sale by Statute…………………………………………………….21

        E. The Trial Court's Judment is in error Because There are Genuine Issues of Material Fact as to When MidFirst Bank Knew of the SPP Deed and the Bailey Deed…………………………………………………22

        F. Bailey has a Cause of Action for Breach of Contract….24

        G. Bailey's Claim for Void Foreclosure is Supported by Evidence…………………………………………………24

**H. Bailey's Quite Title Claim Raises Material Fact Issues**……………………………………………………25

**II.** **Midfirst Bank's No-Evidence Motion for Summary Judgment**……………………………………………26

    **A. Standard of Review- Tex. R. Civ. P. 166a**………………26

    **B. Bailey is Entitled to Equitable Estoppel/Unjust Enrichment**…………………………………………………..27

    **C. Bailey Provided More Than a Scintilla of Proof to Support Breach of Contract, Void Foreclosure and Quiet Title Claims**………………………………………………..28

**III.** **Midfirst Bank's Motion for Summary Judgment on its Counterclaims**……………………………………………29

    **A. Standard of Review- Tex. R. Civ. P. 166a**……………29

    **B. MidFirst Bank's Request for Declaratory Judgment is Improper**…………………………………………………30

    **C. This Suit Does Not Support a Writ of Possession Counterclaim**……………………………………………….31

**IV.** **Bailey's Motion for Summary Judgment MidFirst Bank's Counterclaims**……………………………………………….32

**PRAYER** ........................................................................33
**CERTIFICATE OF COMPLIANCE** .....................................33
 **CERTIFICATE OF SERVICE**…………………………………...34
**APPENDIX** ........................................................................35

# TABLE OF AUTHORITIES
## Cases

*Acevedo v. Stiles*, 2003 Tex. App. LEXIS 3854 (Tex. App.— San Antonio 2003, pet. denied)…………………………………………………………………………..32

*American Savings & Loan Assoc. v. Musick*, 531 S.W.2d 581, 586 (Tex. 1976)...19

*Aurora Petroleum, Inc. v. Cholla Petroleum, Inc.*, 2011 Tex. App. LEXIS 1382, 8-9 (Tex. App. – Amarillo 2011, no pet.)………………………………………………27

*Austin v. Countrywide Home Loans*, 261 S.W.3d 68 (Tex. App.—Houston [1st Dist.] 2008, pet. denied)…………………………………………………………...21

*Boudreau v. Fed. Trust Bank*, 115 S.W.3d 740, 743 (Tex. App.—Dallas 2003, pet. denied)…………………………………………………………….…………30

*City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005)………………..………29

*Estelle v. Hart*, 55 S.W.2d 510, 513 (Tex. Comm'n App. 1932, no writ)………...19

*Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007)…………...…23

*Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.)……………………………………………………………….…..20

*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007)…….. 26

*Goswami v. Metropolitan Sav. & Loan Asso.*, 751 S.W.2d 487, 489 (Tex. 1988)..19

*Heldenfels Bros. v. City of Corpus Christi*, 832 S.W. 2d 39, 41 (Tex. 1992)…….27

*Howell v. Murray Mortgage Co.*, 890 S.W.2d 78, 84 (Tex. App. Amarillo 1994, rehearing overruled)……………………………………………………………....18

*John Chezik Buick Co. v. Friendly Chevrolet Co.*, 749 S.W.2d 591, 594 (Tex. App.— Dallas 1988, writ denied)…………………………………………………30

*Johnson v. Hewitt*, 539 S.W.2d 239, 240-241 (Tex. Civ. App. — Houston [1st Dist.] 1976, no writ)……………………………………………………………30

*Joseph v. City of Ranger*, 188 S.W.2d 1013, 1014 (Tex. Civ. App. — Eastland 1945, writ ref'd w.o.m.)……………………………………………………………………….30

*Kansas Reinsurance Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1370 (5th Cir. Tex. 1994)……………………………………………………………….23

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003)………………..26

*Leavings v. Mills*, 175 S.W.3d 301 (Tex. App.— Houston [1st Dist.] 2004, no pet.)………………………………………………………………………………..21

*Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002)...30

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)……………………………………………………..…………17,29

*Martin v. New Century Mortgage Co.*, 2012 Tex. App. LEXIS 4705 (Tex. App.—Houston [1st Dist.] 2012, no pet.)……………………………….…………20, 21

*MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986)…………………..……..18, 29

*Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981)……………………………….23

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985)………17, 29, 30

*Priesmeyer v. Pacific Southwest Bank, F.S.B.*, 917 S.W.2d 937 (Tex.App.—Austin 1996, no pet.)……………………………………………………………………20

*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-216 (Tex. 2003)………………………………………………………………………..17

*Reinagel, et al. v. Deutsche Bank Nat'l Trust Co.*, No. 12-50569, 2013 U.S. App. LEXIS 14089 (5th Cir. (Tex.) July 11, 2013)……………………………………20

*Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999)………………...30

*Shepard v. Boone*, 99 S.W.3d 263 (Tex. App.—Eastland 2003, no pet.)…………21

*Stanley v. Citifinancial Mortg. Co.*, 121 S.W.3d 811, 817 (Tex. App. — Beaumont 2003)………………………………………………………………………..25

*Tipps v. Chinn Exploration Co.*, 2014 Tex. App. LEXIS 10061 (Tex. App.—
Texarkana Sept. 5, 2014, pet. filed)…………………………………………...26

*Tri-Cities Const., Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ.
App.—Houston [1st Dist.] 1975, no writ)…………………………………..20

*Vazquez v. Deutsche Bank Nat'l Trust Co., N.A.*, 441 S.W.3d 783, 790 (Tex.
App.— Houston [1st Dist.] 2014, no pet. hist.)……………………………..21

*Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982)…22

*Wolf v. Highland Haven Prop. Owners Ass'n*, 2013 Tex. App. LEXIS 10912 (Tex.
App.— Austin Aug. 29, 2013, pet. denied)………………………………….23

## Statutes and Rules

7 Tex. Admin Code § 65.3 (21) .............................................................................. 13
Tex. Prop. Code § 51.002 ......................................................................................25
Tex. Prop. Code § 51.002(b)..................................................................................21
Tex. R. Civ. P. 166a ......................................................................................... 17, 26
Tex. R. Civ. P. 166a(c)………………………………………………...17, 29, 32
Tex R. Civ. P. 310 ....................... ……………………………………12, 17, 31

## Other

Black's Law Dictionary 1444 (West 1979)…………..……………………...32

## STATEMENT OF THE CASE

1.01 Karl B. Bailey made ALL of his mortgage payments, but was nonetheless foreclosed upon. This is a void foreclosure case. Karl B. Bailey's causes of action are breach of contract, void foreclosure, violation of the DTPA and quiet title. (CR 13-18). Plaintiff also seeks equitable estoppel and claims against unjust enrichment. Defendant MidFirst Bank's counterclaims are for declaratory judgment and a writ of possession. (CR 19-23.)

1.02 Trial court is the 250th District Court of Travis County, the Honorable John K. Dietz then presiding. The ruling in the case was made by visiting judge the Honorable Gus Strauss.

1.03 The claims and counterclaims between Karl B. Bailey and Defendant MidFirst Bank were resolved on dueling summary judgment motions. (Appendix C, D.)

1.03 The trial court denied Plaintiff's summary judgment motion and granted Defendant MidFirst Bank's summary judgment motion. (Appendix A, CR 24-25.)

1.04 On Plaintiff's motion, the claims and counterclaims between Plaintiff and Defendant MidFirst Bank were severed to render the ruling on the motions for summary judgment appealable. (Appendix B, CR 28).

## RECOMMENDATION ON ORAL ARGUMENT

Bailey suggests that the issues presented should not be determined on the record alone and that oral argument is necessary. The issues presented have become sufficiently muddled by misinterpretation and the law sufficiently misapplied that oral argument would benefit the panel.

/s/ Anthony G. Read
Anthony G. Read

**TO THE HONORABLE THIRD DISTRICT COURT OF APPEALS:**

Appellant, Karl B. Bailey, pleads that this honorable Court of Appeals reverse the judgment of the visiting judge in the 250th Judicial District Court and remand this case for further proceedings.

## ISSUES PRESENTED

2.01 Is Bailey bound and benefited by the covenants and agreements of the Deed of Trust signed by Amy and Travis Chestnut by virtue of succession, assignment or interest in the property? Does Bailey therefore have standing to bring claims against MidFirst Bank?

2.02 Did the trial court err in determining Bailey did not have standing to specifically challenge the Assignment to MidFirst Bank?

2.03 Did the trial court err in determining Karl B. Bailey was not entitled to receive notice of the foreclosure sale under either the statutory provisions, the Chestnut Deed of Trust, public policy or equity?

2.04 Did the trial court err in determining no genuine issue of material fact existed regarding MidFirst Bank's knowledge of subsequent deeds and when it occurred?

2.05 Did the trial court err in denying Karl B. Bailey's Breach of Contract claim by finding he did not have standing?

2.06 Did the trial court err in denying Karl B. Bailey's Void Foreclosure Claim when he did not receive statutory notice?

2.07   Did the trial court err in denying Karl B. Bailey's Quiet Title claim when there were issues of material fact?

2.08   Did the trial court err in granting no-evidence summary judgment on Karl B. Bailey's Equitable Estoppel/Unjust Enrichment Claim?

2.09   Did the trial court err in granting no-evidence summary judgment on Karl B. Bailey's Breach of Contract, Void Foreclosure and Quiet Title claims?

2.10   Did the trial court err in granting MidFirst Bank declaratory judgment? Was the declaratory judgment in violation of the applicable statute as it raised an issue already before the trial court?

2.11   Did the trial court err in granting a writ of possession under TEX. R. CIV. P. 310 when the plain language of the Rule states TRCP 310 applies to suits seeking foreclosure when this was not a suit seeking foreclosure?

## STATEMENT OF THE FACTS

3.01   Karl B. Bailey ("Bailey") purchased a homestead using creative financing foisted upon him by Eric Lee ("Lee") and Smoke Signal Pass, LLC ("SSP"). This

transaction is known as a "Wally Wrap"[1] or Wrap-around real estate loan.[2] From the time he purchased the Property until he received a surprise Demand to Vacate, Mr. Bailey dutifully made **ALL** of his payments. (Appendix D)

3.02 The property in question is commonly known as 1234 Acanthus Street, Pflugerville, Travis County, Texas 78660 (the Property) and is more particularly described in Appendix C, Exhibit 2-A-1.

3.03 On July 15, 2004, the Property was purchased by Travis Chestnut and Amy Chestnut (the Chestnuts), using funding from lender Alethes, LLC. The Chestnuts executed a Deed of Trust which was recorded in the Travis County Property Records as document 2004136582 (Chestnut Deed). (Appendix C, Exhibit 2-A-1.)

3.04 On April 22, 2009, a purported assignment of the Chestnut Deed to MidFirst Bank (MFB) was recorded in the Travis County Property Records as document 2009079593 (MFB Assignment). (Appendix C, Exhibit 2-A-3.) The MFB assignment was executed by Mortgage Electronic Registration Systems, Inc.

---

[1] A "Wally Wrap" system was designed roughly twenty (20) years ago as a secondary financing tool for the purchase of real property. According to WALLY TINGLEY & ASSOCIATES., P.C., "a seller provides buyer non-qualifying interim purchase wrap financing for 1 – 5 years (balloon period), stacking the wrap financing on seller's prior mortgage." http://wallytingley.com/wallywrap/. Essentially, the seller is providing the buyer a "junior" mortgage which "wraps" around and exists in addition to any "senior" mortgages securing the property in question. This "junior" mortgage provides financing for a minimum of five years. The buyer usually makes a down payment and pays off both the agreed upon financing and seller's existing mortgage within that five year period. This "interim" financing: is used by a buyer to own the property in question and sell, or refinance into a mortgage loan.

[2] "Wrap-around real estate loan--A financing device whereby a junior mortgage lien secures a liability consisting of the amount of senior debt, plus any additional funds advanced to the borrower." 7 TEX. ADMIN CODE § 65.3(21).

(MERS) as "nominee" for the original lender, Alethes, LLC. The MERS assignment claimed to assign to MFB the negotiable Promissory Note and the lien interest.

3.05 At some point, the Promissory Note was endorsed by Alethes, LLC (**not MERS**) to GMAC Bank. (Appendix B, Exhibit A-2.) GMAC Bank endorsed the Note to GMAC Mortgage Corporation which endorsed the Note to MFB.

3.06 On July 30, 2009, the Chestnuts executed a General Warranty Deed to SSP which was recorded in the Travis County Property Records as document 200913692 (SPP Deed). (Appendix C, Exhibit A-4.)

3.07 On July 31, 2009, SPP executed a Special Warranty Deed with Vendor's Lien to Bailey (and his wife Rebecca) which was recorded in the Travis County Property Records as document 2009135933 (Bailey Deed). (Appendix C, Exhibit A-4.) The wraparound transaction meant Bailey made his payments to SPP and SPP would ensure MFB was paid. SPP charged an amount greater than the payment to MFB which it kept as profit.

3.08 Bailey began making the required payments to SSP and continued to do so until he received a Demand to Vacate from MFB on February 14, 2011. (Appendix D, Exhibit 6.)

3.09 It is uncontested MFB did not provide contractual or statutory notice to Bailey prior to the foreclosure. (Appendix C, ¶8.) MFB sent notices to the Chestnuts.

3.10 On May 8, 2009, MFB filed an Appointment of Substitute Trustee in the Travis County Property Records, dated November 5, 2010 which was recorded as document 20101892473. (Appendix C, Exhibit 5.) This document was filed after the SPP Deed and the Bailey Deed.

3.11 On November 15, 2010, MFB, through its purported servicer Midland Mortgage Co. (MMC), filed a Notice of Substitute Trustee Sale as document 2010001061513 in the Travis County Property Records. (Appendix C, Exhibit B-1.)

3.12 On January 4, 2011, MMC conducted a foreclosure sale. (Appendix C, Exhibit B-2.)

## SUMMARY OF THE ARGUMENT

4.01 Bailey was an innocent victim in this transaction. SPP sold him the Property and took his payments. Bailey made each and every payment he was required to make until he received a Demand to Vacate indicating MFB had foreclosed on the Property. Bailey had no way of knowing SPP was keeping his payments and not forwarding them to MFB as required. MFB, on the other hand, was charged with knowledge of recordings in the property records and therefore knew of the SPP and Bailey's Deed and would have known Bailey was the entity making payments.

4.02 Bailey attempted to work with MFB to take over the Chester Deed of Trust and resume payments. MFB would not agree to such an arrangement which would

have ended this controversy and ensured MFB was paid all it was due.

4.03    The foreclosure was void because MFB did not have requisite authority to conduct or to order the sale conducted. Further, MFB did not give Bailey the statutory notice of foreclosure.

4.04    The trial court erred in granting summary judgment when genuine issues of material fact existed as to when MFB knew of the SPP Deed and Bailey Deed. This genuine issue of material fact is determinative of Bailey's rights under all three deeds. Specifically, Bailey's rights a successor or assignee, privity with MFB or an interest in the property and whether he was entitled to notice of default, notice of acceleration and notice of sale.

4.05    The trial court erred in determining Bailey did not have standing to challenge the void foreclosure and the void assignment.

4.06    The trial court erred in denying Bailey's Void Foreclosure Claim as there exist genuine issues of material fact as to who holds superior title to the subject property and the impact of the execution of the wraparound.

4.07    The trial court erred in finding no evidence for Bailey's quiet title and void foreclosure claims.

4.07    The trial court erred in not finding equitable estoppel/unjust enrichment since Bailey made all payments and MFB was the beneficiary of a number of those payments.

4.08   The trial court erred in granting declaratory judgment for MFB since the issues were already before the trial court in Bailey's claims. Declaratory judgment is not available on claims that have already been raised in the suit.

4.09   The trial court erred in granting a writ of possession under TEX. R. CIV. P. 310 in violation of the plain language of the Rule.

## ARGUMENT AND AUTHORITIES

## I. MIDFIRST'S TRADITIONAL MOTION FOR SUMMARY JUDGMENT

### A. STANDARD OF REVIEW- TEX. R. CIV. P. 166A.

5.01   A trial court's decision to grant summary judgment is reviewed de novo using the standards for summary judgment set forth in Tex. R. Civ. P. 166a. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-216 (Tex. 2003). In reviewing a grant of summary judgment, a court of appeals must determine whether the successful movant carried its burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In making this decision, a court of appeals takes all evidence favorable to the non-movant as true, and make every reasonable inference in favor of the non-movant, resolving all doubts in his or her favor. *Provident Life & Accident Ins. Co.,* 128 S.W.3d at 215. Where defendant-movant seeks summary judgment on an

affirmative defense, it must prove conclusively all elements of that defense. *MMP, Ltd. v. Hones*, 710 S.W.2d 59, 60 (Tex. 1986).

**B. THE TRIAL COURT'S JUDGMENT IS IN ERROR BECAUSE BAILEY HAS STANDING TO BRING HIS CLAIMS AS SUCCESSOR, ASSIGNEE BOUND AND BENEFITED BY THE DEED OF TRUST OR A PERSON WITH AN INTEREST IN THE PROPERTY.**

6.01   Section 12 of the Chestnut Deed states: "The covenants and agreements of this Security Agreement shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b)."[3] (Appendix C, Exhibit A.)

6.02   This is analogous to Bank A loaning money for a house to Homeowner B under a Deed of Trust.  Homeowner B then sells the house to Homeowner C.  When B or C defaults, C is bound and benefited as a successor or assign under Section 12 of the Deed of Trust in that Bank A has the right to foreclose and take the Property from Homeowner C despite no direct contract.  This is so because Homeowner C is bound and benefited by the Deed of Trust as a successor or assign. *See, Howell v. Murray Mortgage Co.*, 890 S.W.2d 78, 84 (Tex. App. Amarillo 1994, rehearing overruled) (stating "when the term successor is used in common parlance it means anyone who follows. However, when used as a legal term applying to . . . natural persons, [it] is [an] apt and appropriate term to designate one to whom property

---

[3] Paragraph 9(b) is the "due on sale clause" which was not invoked.

descends or [the] estate of decedent." and finding the person to whom the property descended was a successor bound by the terms of the Deed of Trust).

6.03   Bailey is also a successor or assign to the Chestnut Deed because it gives MFB the right to foreclose on property owned by Bailey.

6.04   Alternatively, Bailey has standing to challenge the foreclosure as an interested party.

6.05   Appellee cites *Goswami v. Metropolitan Sav. & Loan Asso.*, 751 S.W.2d 487, 489 (Tex. 1988) for the proposition that "as a general rule, only the mortgagor or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust."

6.06   Even if Bailey is not a successor or assignee of the Chestnut Deed, *Goswami*, in the same paragraph cited above, points out that "when the third party has a property interest, whether legal or equitable, that will be affected by such a sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale." citing *American Savings & Loan Assoc. v. Musick*, 531 S.W.2d 581, 586 (Tex. 1976); *Estelle v. Hart*, 55 S.W.2d 510, 513 (Tex. Comm'n App. 1932, no writ). *Goswami* 751 S.W.2d at 489.

6.07   Bailey had both legal and equitable interest in the Property.  He had a Deed and was faithfully making monthly payments. The void sale of the Property by MFB affected Bailey's rights.  Therefore, alternatively, Bailey has standing to challenge

the foreclosure since he has a property interest.

6.08 Bailey had no opportunity to challenge the foreclosure sale because he was not aware of any default. He was an innocent party and was making his payments as required by his agreement with SPP. SPP was charged with getting the payments to MFB.

## C. BAILEY HAS STANDING TO CHALLENGE THE ASSIGNMENT TO MIDFIRST BANK.

7.01 As discussed *supra*, Bailey has standing with regard to the Chester Deed as a successor or assign or, alternatively, as a party with an interest in the property.

7.02 Texas law follows the common law rule where a debtor may bring any ground against an assignee to challenge an assignment as void or invalid. *See Tri-Cities Const., Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ); *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.). This was recently acknowledged by the Federal 5th Circuit, and is the majority rule followed in Texas. *See, Reinagel, et al. v. Deutsche Bank Nat'l Trust Co.*, No. 12-50569, 2013 U.S. App. LEXIS 14089 (5th Cir. (Tex.) July 11, 2013) (reversing district court, Hon. Sam Sparks, on this point of law).

7.03 Texas Courts also permit challenging the chain of assignments regarding the right of a party to foreclose. *See, Priesmeyer v. Pacific Southwest Bank, F.S.B.*, 917 S.W.2d 937 (Tex.App.—Austin 1996, no pet.); *see, also, Martin v. New Century*

*Mortgage Co.*, 2012 Tex. App. LEXIS 4705 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Austin v. Countrywide Home Loans*, 261 S.W.3d 68 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Leavings v. Mills*, 175 S.W.3d 301 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Shepard v. Boone*, 99 S.W.3d 263 (Tex. App.—Eastland 2003, no pet.).

7.04    The right to challenge an assignment was very recently upheld in *Vazquez v. Deutsche Bank Nat'l Trust Co., N.A.*, 441 S.W.3d 783, 790 (Tex. App.— Houston [1st Dist.] 2014, no pet. hist.). Bailey, like Vasquez, alleges the assignment to MFB was void and therefore the trial court should not have granted summary judgment that he lacked standing.

### D. THE TRIAL COURT'S JUDGMENT IS IN ERROR BECAUSE BAILEY WAS ENTITLED TO NOTICE OF THE FORECLOSURE SALE BY STATUTE

8.01    As discussed *supra*, Bailey is bound and benefited by the Chestnut Deed as a successor or assign. Consequently, Bailey was entitled to the benefit of the Chestnut Deed, section 18.

8.02    The Chestnut Deed, section 18, requires Lender to "mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law." Applicable law, TEX. PROP. CODE 51.002(b) requires the notice be sent by certified mail.

8.03    It is undisputed no such notice was sent to Bailey.  (Appendix C, Exhibit ¶8.)

8.04    Bailey was also entitled to notice of the sale as a matter of public policy and equity.  MFB was either aware or charged with awareness of the Bailey Deed and knew Bailey had an interest in the property.  The public policy reason for notice under the statutes and case law (and Deed of Trust) is to allow property owners to cure defaults and prevent foreclosure.  Allowing Mortagees to deny property owners notification prevents property owners from taking any action to prevent foreclosure.  This contravenes the public policy of reducing foreclosures and ensuring that contracts are voluntarily and knowingly complied with, rather than breached and not cured.

8.05    Equity also dictates Bailey receive advance notice of the foreclosure. MFB benefited from Bailey's payments.  Bailey has an interest in the property. Allowing MFB to retain Bailey's payments and gain any equity in the property unjustly enriches MFB and the expense of an innocent party – Bailey.

**E. THE TRIAL COURT'S JUDGMENT IS IN ERROR BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO WHEN MIDFIRST BANK KNEW OF THE SPP DEED AND THE BAILEY DEED.**

9.03   MFB is charged by Texas Law with knowledge of the contents of the property records regarding its property.  *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982) ("it is well settled that 'a purchaser is bound by every recital, reference and reservation contained in or fairly disclosed by any instrument

which forms an essential link in the chain of title under which he claims.'") (internal cites omitted).[4] *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981) ("Constructive notice in law creates an irrebuttable presumption of actual notice.).

9.04   It can be argued property owners are not bound to periodically search the property records to ensure nothing unexpected is filed.[5]   However, since MFB filed an appointment of substitute trustee on December 7, 2010, they would be charged with knowledge of the SPP Deed and Bailey Deed since both were on file since 2009 which was prior to the December 7, 2010 filing date of the appointment of substitute trustee.   Further, MFB had a duty to determine whether other liens existed on the property including tax and mechanics liens.

9.05   MFB is charged with knowledge of the SPP Deed and Bailey Deed from December 7, 2010.   This means MFB was aware Bailey had an interest in the property and was required to be notified of default, acceleration and sale. The affidavit of MFB's First Vice President, Thad Burr, indicated the SPP Deed and Bailey Deed were unknown to MFB when filed.   He did not address the genuine

---

[4] *See also*: *Wolf v. Highland Haven Prop. Owners Ass'n*, 2013 Tex. App. LEXIS 10912 (Tex. App.— Austin Aug. 29, 2013, pet. denied) "…we note that appellants are charged with constructive notice of the actual knowledge of the Subject Property's ownership they could have acquired by examining the Burnet County public records." *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007) (per curiam) ('While not all public records establish an irrebuttable presumption of notice, the recorded instruments in a grantee's chain of title generally do.').have been acquired by examining public records.')".

[5] *Kansas Reinsurance Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1370 (5th Cir. Tex. 1994)

material issue of fact as to **when** MFB found out about the deeds.

### F. BAILEY HAS A CAUSE OF ACTION FOR BREACH OF CONTRACT.

10.01    As discussed *supra*, Bailey is a successor to the Chestnut Deed of Trust.

10.02    The Chestnut deed is a valid contract, Bailey tendered every payment required of him until ***after*** foreclosure.  (Appendix D, Exhibits 6 and 7, Affidavit and Proof of Payments.) MidFirst breached the contract by not providing notice to Bailey as admitted in paragraph 23 of MFB's Amended MSJ. Bailey pled damages of having a void foreclosure executed on his home.  The lack of notice was a violation of Section 18 of the Chester Deed.

### G. BAILEY'S CLAIM FOR VOID FORECLOSURE IS SUPPORTED BY EVIDENCE.

11.01 The MFB assignment of the Note and Deed of Trust was void. (Appendix C, Exhibit A-3.) The document purports to transfer both the Note and Deed of Trust from Alethes, LLC via MERS as nominee to MFB. The assignment was executed April 22, 2009.  A conflict exists with the MFB assignment and the endorsements on the Note.

11.02 The Note is endorsed by Alethes, LLC to GMAC Bank. (Appendix C, Exhibit A-2.) One of two possible sequences of events render the MFB assignment and/or Note endorsements invalid.  If Alethes, LLC endorsed the Note to GMAC Bank before the MFB assignment, MFB did not receive the Note as stated in the MFB assignment as Alethes, LLC had endorsed it and no longer held it.  Alternatively, if

the MFB assignment occurred before the endorsement, the Alethes, LLC endorsement to GMAC Bank was void because Alethes, LLC no longer held the note.

11.03 Regardless, a material issue of fact exists as to whether the MFB assignment is valid. This creates a material issue of fact as to whether MFB had authority to direct the foreclosure as it did not own the Note.

11.04 Even if the MFB sale was not void for the reasons above, genuine issues of material fact exist as to whether Bailey was entitled to notice under TEX. PROP. CODE 51.002. Bailey was a party to the Chestnut Deed through the Bailey and SSP Deeds. Bailey was a person MFB knew or should have known was obligated to pay the debt. This would have been in MFB's records based on their knowledge of the property records. Some cases indicate someone not a party to the Deed of Trust are not entitled to notice.[6] In the instant case, a genuine issue of material fact exists as to whether Bailey was a successor or assign to the Chester Deed.

### H. BAILEY'S QUIET TITLE CLAIM RAISES MATERIAL FACT ISSUES.

11.04 MFB first states Bailey's Quiet Title claim fails and then discusses the elements of a Trespass to Try Title Claim. (Appendix C, Exhibit ¶¶ 52-53.)

11.05 The elements of a Quiet Title Claim are: (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim,

---

[6] *Stanley v. Citifinancial Mortg. Co.*, 121 S.W.3d 811, 817 (Tex. App. — Beaumont 2003).

although facially valid, is invalid or unenforceable. *Tipps v. Chinn Exploration Co.*, 2014 Tex. App. LEXIS 10061 (Tex. App.— Texarkana Sept. 5, 2014, pet. filed).

11.06 Issues of material fact have been raised by Bailey on this claim. The Bailey Deed shows an interest in a specific property, the Substitute Trustee's Deed shows a claim by MFB. (Appendix C, Exhibit B-2.)The void foreclosure, discussed *supra*, demonstrates the claim, although facially valid, is invalid or unenforceable.

## II. MidFirst Bank's No-Evidence Motion for Summary Judgment

### A. STANDARD OF REVIEW- TEX. R. CIV. P. 166a.

12.01    When a party moves for summary judgment on a no-evidence ground, the court reviews the claim under the same legal sufficiency standard as directed verdicts. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). Under that standard, evidence is considered in the light most favorable to the non-movant. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007). The non-movant is "not required to marshal [his] proof; [his] response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a. A no-evidence summary judgment is improperly granted if the party responding brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d at 751.

## B. Bailey is Entitled to Equitable Estoppel/Unjust Enrichment

13.01 It must be remembered in the instant case Bailey was an innocent party in this transaction. He paid each and every payment he was required to pay to SPP per the Bailey Deed. The void foreclosure occurred without his knowledge. Once it did occur, he attempted to resume payments with MFB. MFB declined to accept the money.

13.02 When MFB became aware of the wraparound through the property records, it also became aware it had been taking payments which originated from Bailey.

13.03 MFB cites *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W. 2d 39, 41 (Tex. 1992) for the proposition that unjust enrichment must entail a benefit obtained by fraud, duress or taking of undue advantage. Actually, the case says a party **may** recover under these circumstances.[7] *Heldenfels Bros.* does **not** say these conditions **must** occur. Other case law provides unjust enrichment in other circumstances. *See, e.g., Aurora Petroleum, Inc. v. Cholla Petroleum, Inc.*, 2011 Tex. App. LEXIS 1382, 8-9 (Tex. App. – Amarillo 2011, no pet.). [8]

---

[7] "A party *may* recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (emphasis added).

[8] "Unjust enrichment is an equitable principle that is the result of a failure to make restitution of benefits wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay… While it often applies when one person has obtained a benefit from another by fraud, duress, or by taking an undue advantage… it is also available if a contract is unenforceable, impossible, not fully performed, or void for other legal reasons … Indeed, fraud is not a requisite component for a finding of unjust enrichment." (internal cites omitted).

13.04 Bailey was current on his payments up until MFB's void foreclosure. (Appendix C, Exhibit 6 and 7.) MFB was aware at some point before the foreclosure that Bailey was making the payments. Either when the source of the checks changed from the Chestnuts to SPP or when MFB checked the property records in preparation for foreclosure or when filing the assignment of substitute trustee. MFB continued to foreclose knowing Bailey had made all payments. MFB was unjustly enriched by the payments made by Bailey.

13.05 MFB is further estopped from asserting the foreclosure is valid in that MFB knowingly received payments from Bailey, yet continued to foreclose on his property.

### C. Bailey Provided More Than a Scintilla of Proof to Support Breach of Contract, Void Foreclosure and Quiet Title Claims.

14.01 As discussed *supra*, Bailey is a successor, assign or, alternatively, a party with an interest to the Chestnut Deed of Trust. This demonstrates a valid, enforceable contract exists with MFB. Consequently, more than a scintilla of evidence has been provided establishing the contested element: existence of a valid, enforceable contract.

14.02 Bailey has not pled wrongful foreclosure. Instead, Bailey pled the foreclosure was void, *ab initio* and has provided more than a scintilla of evidence the Note and Deed of Trust were not properly transferred to MFB and Bailey did not receive notice of the sale to which he was entitled.

14.03 MFB did not have standing to initiate or direct its servicer to initiate foreclosure proceedings against Bailey as it was neither the owner nor holder of any indebtedness secured by Bailey's homestead.

14.04 MFB continues to address Bailey's quiet title claim with the elements of a trespass to try title claim. As discussed *supra*, Bailey has more than a scintilla of evidence to support his quiet title claim.

## III. MIDFIRST BANK'S MOTION FOR SUMMARY JUDGMENT ON ITS COUNTERCLAIMS

### A. STANDARD OF REVIEW- TEX. R. CIV. P. 166a.

15.01 To succeed on a traditional motion for summary judgment on its counterclaim, the defendant must show that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). To meet this burden, the defendant must conclusively prove all essential elements of its claim. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A matter is conclusively established if reasonable people could not differ on the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence that raises a genuine issue of

material fact. *Boudreau v. Fed. Trust Bank*, 115 S.W.3d 740, 743 (Tex. App.—Dallas 2003, pet. denied). In deciding whether to grant defendant's motion, the court must take as true all competent evidence favorable to the plaintiff and indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Nixon*, 690 S.W.2d at 548-49.

**B. MidFirst Bank's Request for Declaratory Judgment is Improper**

16.01   MFB moved for summary judgment on its counterclaim for Declaratory Judgment, arguing that its motion had proven it had standing to foreclose. Because Bailey has not brought an action under the Act, Movant is not permitted to bring counterclaims under the Act.  The Declaratory Judgment Act is not available to settle disputes already pending before a court. *Johnson v. Hewitt*, 539 S.W.2d 239, 240-241 (Tex. Civ. App. — Houston [1st Dist.] 1976, no writ); *Joseph v. City of Ranger*, 188 S.W.2d 1013, 1014 (Tex. Civ. App. — Eastland 1945, writ ref'd w.o.m.). *John Chezik Buick Co. v. Friendly Chevrolet Co.*, 749 S.W.2d 591, 594 (Tex. App. — Dallas 1988, writ denied).

16.02   MFB's Declaratory Judgment counterclaim is duplicative of Bailey's Quiet Title claim and therefore a dispute already before the Court and should be denied.

16.03   Further, MFB has not proven that its foreclosure was valid as discussed *supra.* The SPP Deed and Bailey Deed negated MFB's right to foreclose or at least its right to foreclose without notifying Bailey.

### C. This Suit Does Not Support a Writ of Possession Counterclaim

16.04   The trial court, ignoring the plain language of TEX. R. CIV. P. 310, granted MFB a writ of possession. The rule's plain language specifies an order foreclosing in a suit having for its object foreclosure:

> When an ***order foreclosing a lien*** upon real estate is made ***in a suit having for its object the foreclosure of such lien***, such order shall have all the force and effect of a writ of possession as between the ***parties to the foreclosure suit*** and any person claiming under the defendant to such suit by any right acquired pending such suit; and the court shall so direct in the judgment providing for the issuance of such order. The sheriff or other officer ***executing such order of sale*** shall proceed by virtue of such order of sale to place ***the purchaser of the property sold thereunder in possession thereof within thirty days after the day of sale.***

16.05   This suit concerned a lien already foreclosed (precluding an **order foreclosing a lien**). The suit did not **have as its object the foreclosure of the lien** (which had already been done). No one could **execute an order of sale** because the property had been sold. Finally, the property could not have been sold under the trial court's order as it had already been sold.

16.06   Shepardizing Rule 310 reveals the majority of citing cases were decided pre-1939. Of the more recent cases (2003 and 1982), one is not applicable. The 2003

case, from the San Antonio Fourth Court of Appeals ignores the plain language of the Rule and finds a writ proper even though the purpose of the suit was not foreclosure (which had occurred previously or the party was not informed).[9]

16.07   It appears only one case since 1939 has interpreted this Rule and has ignored its plain language.  No Texas court has cited the San Antonio decision for this proposition.  Since it is a single opinion not binding on this Court, Bailey requests this Court apply the plain language of the Rule and find the issuance of a writ not appropriate when the foreclosure has already taken place and was not part of the instant suit.


## IV. BAILEY'S MOTION FOR SUMMARY JUDGMENT MIDFIRST BANK'S COUNTERCLAIMS

17.01   Section III above discusses MFB's counterclaims.

17.02   MFB did not satisfy its burden under Tex. R. Civ. P. 166a(c).

17.03   MFB's counterclaim for Declaratory Judgment is not permitted as the issue is already before the court.

17.04   This suit does not support a writ of possession counterclaim.

---

[9] "We again disagree. A writ of possession is nothing more than a 'writ of execution employed to enforce a judgment to recover the possession of land. It commands the sheriff to enter the land and give possession of it to the person entitled under the judgment.' BLACK'S LAW DICTIONARY 1444 (West 1979). The writ was appropriate in this case because the Acevedos failed to supersede the trial court's judgment awarding Stiles' home to her." *Acevedo v. Stiles*, 2003 Tex. App. LEXIS 3854 (Tex. App.— San Antonio 2003, pet. denied)

**PRAYER**

Karl B. Bailey respectfully requests that the Court reverse the judgment of the District Court in all things for further action consistent with its opinion.

Respectfully submitted,

By: */s/ Anthony G. Read*
ANTHONY G. READ, SBN: 24056184
WILLIAM B. GAMMON, SBN: 07611280
**GAMMON LAW OFFICE, PLLC.**
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279
Firm@GammonLawOffice.com
COUNSEL FOR APPELLANT

**CERTIFICATE OF COMPLIANCE**

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), as amended effective January 1, 2015, the undersigned certifies that this Brief complies with the length limitations of Rule 9.4(i) and the typeface requirements of Rule 9.4(e).

1.  Exclusive of the contents excluded by Rule 9.4(i)(1), this Brief contains 5120 words as counted by the Word Count function (including textboxes, footnotes, and endnotes) of Microsoft Office Word 2013.

2.  This Brief has been prepared in proportionally spaced typeface using:

    Software name and Version: Microsoft Office Word 2013
    Typeface Name; Times New Roman
    Font Size: 14 point

*/s/ Anthony G. Read*
Anthony G. Read

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Appellant's Brief, with Appendix, was served by ProDoc e-service or facsimile on this the 12th day of January, 2015, to:

Chris Pochyla, SBN: 24032842
*Counsel for MidFirst Bank*
Barrett Daffin Frappier Turner & Engel, LLP
15000 Surveyor Blvd., Ste. 100
Addison TX 75001
Tel: (972) 340-7935
Fax: (972) 341-0734


*/s/ Anthony G. Read*
Anthony G. Read

**No. 03-14-00632-CV**

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**KARL B. BAILEY**
*Appellant,*

v.

**MIDFIRST BANK**
*Appellees.*

## APPENDIX TO APPELLANT'S BRIEF

A.   **Order on Defendant Midfirst Bank's First Amended Motion for Summary Judgment**

B.   **Order on Plaintiff's Motion to Sever**

C.   **Defendant MidFirst Bank's First Amended Motion for Summary Judgment**

D.   **Plaintiff's Response to Defendant's Traditional and No-Evidence Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment**

E.   **7 TEX. ADMIN CODE § 65.3 (21)**

F.   **TEX. R. CIV. P. 310**

G.   **TEX. PROP. CODE 51.002(b)**

H.   **TEX. R. CIV. P. 166a**

# APPENDIX
# TAB A

Notice sent: Final Interlocutory None

Disp Parties:

Disp code: CVD / CLS

Redact_____

Judge_____ Clerk_____

DC

BK14191 PG208

CAUSE NO. D-1-GN-11-000558

| | | |
|---|---|---|
| KARL B. BAILEY, JR. | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | | |
| vs. | § | |
| | § | |
| MIDFIRST BANK; SMOKE SIGNAL | § | 250TH JUDICIAL DISTRICT |
| PASS, LLC; ERIC J. LEE; KW | § | |
| MANAGEMENT, LLC, d/b/a Keller | § | |
| Williams | § | |
| | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

Filed in The District Court
of Travis County, Texas
JUL 02 2014
At_____
Amalia Rodriguez-Mendoza, Clerk

## ORDER ON DEFENDANT MIDFIRST BANK'S FIRST AMENDED MOTION FOR SUMMARY JUDGMENT

On this day, the Court determined it had jurisdiction over the subject matter and the parties to this proceeding. After considering Defendant MidFirst Bank's ("MidFirst") First Amended Motion for Summary Judgment, the pleadings, the affidavits, and other evidence on file, the Court GRANTS Defendant MidFirst's first amended motion for summary judgment.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that Defendant's First Amended Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED that all of Plaintiff's cause of actions against Defendant MidFirst are dismissed with prejudice to the re-filing of same.

IT IS FURTHER ORDERED that Defendant MidFirst's foreclosure sale conducted on January 4, 2011 was valid, that it has a priority first lien on the Property in question, and that any interests of any secondary or junior lienholder were extinguished as a result of the foreclosure sale.

IT IS FURTHER ORDERED that Defendant, MidFirst, is entitled to possession of the premises in accordance with TEX. R. CIV. P. 310 and that Defendant MidFirst have restitution, for

which let writ issue, of the premises commonly known as 1234 Acanthus Street, Pflugerville,

Texas 78660, and legally described, to-wit:

**LOT 18 BLOCK B, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87, PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 2000188927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.**

SIGNED on ___July 2,___ , 2014.

_____
PRESIDING JUDGE

**SUBMITTED BY:**

**BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP**

/s/Chris Pochyla_____
Chris Pochyla
State Bar No. 24032842
15000 Surveyor Boulevard, Suite 100
Addison, TX 75001
ChrisPO@bdfgroup.com
972-386-5040
972-341-0734 (Fax)

ATTORNEY FOR DEFENDANT
MIDFIRST BANK

# APPENDIX

# TAB B

Notice sent: ~~Final~~ ~~Interlocutory~~ None

Disp Parties:_____

Disp code: CVD / CLS _____

Redact pgs:_____

Judge _AC M_    Clerk _S WG_

**CAUSE NO. D-1-GN-11-000558**

**Filed in The District Court
of Travis County, Texas**

**JUL 2 2 2014**

At _____9:30____ P M.

Amalia Rodriguez-Mendoza, Clerk

| | | |
|---|---|---|
| KARL B. BAILEY, JR. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff | § | |
| | § | |
| v | § | |
| | § | 250th JUDICIAL DISTRICT |

250th JUDICIAL DISTRICT

MIDFIRST BANK; SMOKE SIGNAL PASS, LLC; ERIC J. LEE; KW MANAGEMENT, LLC, d/b/a Keller Williams

Defendants §

TRAVIS COUNTY, TEXAS

### ORDER ON PLAINTIFF'S MOTION TO SEVER

After considering plaintiff Karl B. Bailey's motion to sever, the response, the pleadings, and arguments of counsel, the Court

GRANTS the motion to sever, severs MidFirst Bank, and orders the court clerk to assign the severed action a new cause number and copy the file from this case into the new case, upon the payment of proper fees.

The new cause number is      D-1-GN-14-002430

SIGNED on _July 22_, 2014.

PRESIDING JUDGE

I, AMALIA RODRIGUEZ-MENDOZA, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on _22 of July, 2014_.

AMALIA RODRIGUEZ-MENDOZA
DISTRICT CLERK

By Deputy: _____

SCANNED

# APPENDIX
# TAB C

| | | |
|---|---|---|
| KARL B. BAILEY, JR. | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| MIDFIRST BANK; SMOKE SIGNAL | § | 250TH JUDICIAL DISTRICT |
| PASS, LLC; ERIC J. LEE; KW | § | |
| MANAGEMENT, LLC, d/b/a Keller | § | |
| Williams | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## DEFENDANT MIDFIRST BANK'S FIRST AMENDED
## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant MidFirst Bank ( "Defendant" or "MidFirst"), pursuant to Rule 166a(c) and (i) of the Texas Rules of Civil Procedure, and files this First Amended Motion for Summary Judgment seeking dismissal of all the claims filed against Defendant by Plaintiff Karl B. Bailey, Jr. ("Plaintiff"). In support thereof, Defendant respectfully shows the following:

## I. INTRODUCTION

1. Plaintiff is Karl B. Bailey, Jr. Defendants are MidFirst Bank, Smoke Signal Pass, LLC ("SSP"), Eric J. Lee, and KW Management, LLC d/b/a Keller Williams.

2. MidFirst attaches an Affidavit from MidFirst as *Exhibit A* and an Affidavit from Becky Howell as *Exhibit B* to establish facts in support of this motion and incorporate same by reference as though fully set forth herein.

3. Under TRCP 166a(i) any party, after sufficient time has passed for discovery, may make a motion to the Court for a no-evidence summary judgment. The Plaintiff filed his Original

Petition on February 24, 2011. Defendant filed their original answer on April 4, 2011. Plaintiff filed his First Amended Petition on July 10, 2013 and Defendant filed their First Amended Answer, Affirmative Defenses and Counterclaim on September 13, 2013. Since the filing of the Original Petition, no discovery has been undertaken by counsel for the Plaintiff.

4. Sufficient time has passed for the Plaintiff to conduct discovery or at least begin the discovery process. *See, e.g., McClure v. Attebury,* 20 S.W.3d 722, 730 (Tex. App.—Amarillo Dec. 1, 1999, no pet.)(holding trial court did not abuse its discretion in determining that a summary judgment motion filed seven months after filing of suit was filed after adequate time for discovery). TRCP 166a(i) does not require that the entire period to conduct discovery must have passed before a party may move the court for a no-evidence motion for summary judgment, just that a sufficient time for discovery to have been conducted has passed. In the present case, although Plaintiff has had ample time to conduct discovery and has apparently decided not to do so. Sufficient time has passed for Plaintiff to conduct discovery and marshal evidence to prove Plaintiff's claims.

5. MidFirst was the holder of Travis Chestnut and Amy Chestnut's (collectively "Borrowers") mortgage loan. Borrowers were obligors on a certain mortgage loan agreement, as that term is defined in Tex. Prop. Code §§51.0001 *et seq.* secured by the real property, and improvements commonly known as 1234 Acanthus Street, Pflugerville, Texas 78660 (hereinafter, "Property") and more particularly described as follows:

**LOT 18 BLOCK B, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87, PAGES 57C-58A, OF**

THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 2000188927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

6. On July 15, 2004, Borrowers obtained a loan in the amount of $116,578.00 by executing a promissory note ("Note") and granting a Deed of Trust ("Deed of Trust") against the Property, which secured the payment of the Note of even date as stated previously. *See Exhibits A, A-1 and A-2.*

7. On or about July 30, 2009 (unknown to and unapproved by MidFirst) the Chestnuts executed a General Warranty Deed wherein the Chestnuts granted, sold, and conveyed the subject Property to Defendant Smoke Signal Pass LLC. On or about July 31, 2009 (again, unknown to and unapproved by MidFirst) Defendant Smoke Signal Pass LLC conveyed the subject Property to Plaintiff. *See Exhibit A-4.*

8. The mortgage loan subsequently went into payment default (loan is due for the May 1, 2010 and all subsequent payments) and Chestnuts were given notice of the default and opportunity to cure the default before accelerating the Note. *See Exhibits A and A-5.* The Chestnuts failed to cure the default and MidFirst's counsel sent via certified mail, the Notice of Acceleration and Notice of Substitute Trustee's Sale for the January 4, 2011 foreclosure sale. *See Exhibits B and B-1.*

9. On January 4, 2011, Wendy Alexander, acting as Substitute Trustee, conducted the public foreclosure sale of the Property, as memorialized in a Substitute Trustee's Deed of same date recorded on January 12, 2011 in the official public records of Travis County, Texas. *See Exhibit B-2.* MidFirst was the owner of the loan and holder of the note on or before

April 22, 2010 and continued to be at the time of the foreclosure sale. MidFirst purchased the Property at the non-judicial foreclosure sale for $118,742.11. *Id.*

## II. SUMMARY OF ARGUMENT

10. Plaintiff filed their First Amended Petition against MidFirst for (1) Breach of Contract, (2) Wrongful Foreclosure, (3) Violations of the Fair Debt Collection Practices Act, (4) Equitable Estoppel/Unjust Enrichment, and (5) Quiet Title. Plaintiff seeks to recover actual damages for the alleged conduct.

11. MidFirst is entitled to summary judgment on all claims alleged by Plaintiff as the uncontroverted summary judgment evidence negates Plaintiff's causes of action against MidFirst and/or Plaintiff has no evidence to support an essential element of Plaintiff's claims against MidFirst.

## III. SUMMARY JUDGMENT EVIDENCE

12. In support of this motion, Defendant relies upon and incorporates herein by reference the following previously filed judgment evidence:

| | |
|---|---|
| Exhibit A: | Affidavit of MidFirst |
| Exhibit A-1: | Deed of Trust |
| Exhibit A-2: | Promissory Note |
| Exhibit A-3: | Assignment of Deed of Trust |
| Exhibit A-4: | General Warranty Deed and Special Warranty Deed |
| Exhibit A-5: | Notice of Default Letter |
| Exhibit B: | Affidavit of Becky Howell |
| Exhibit B-1: | Notices of Acceleration and Notice of Substitute Trustee Sale |

Exhibit B-2:        Substitute Trustee's Deed

## IV. SUMMARY JUDGMENT STANDARD

13. Summary judgment is proper if the movant establishes that there are no genuine issues of material fact and that he/she is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 675-9 (Tex. 1979). A defendant who conclusively negates at least one of the essential elements of a plaintiff's cause of action is entitled to summary judgment. *See, Cathey v. Booth*, 900 S.W. 2d 339, 341 (Tex. 1995); *Rodriguez v. Naylor Industries, Inc.*, 763 S.W.2d 411, 413 (Tex. 1989). Summary Judgment is proper for the defendant when it disproves an essential element of the plaintiff's cause of action as a matter of law. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 476-77 (Tex. 1995); *citing Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991).

14. The summary judgment evidence presented herein conclusively negates an essential element of Plaintiff's claims against MidFirst and/or Plaintiff has no evidence to support an essential element of Plaintiff's claims against MidFirst. Since no genuine issue of material fact remains as to Plaintiff's causes of action against MidFirst, Plaintiff's claims against MidFirst should be denied as a matter of law and dismissed with prejudice.

## V.

## TRADITIONAL SUMMARY JUDGMENT

15. Defendant MidFirst relies upon the conclusive summary judgment evidence attached hereto and incorporated herein to establish that: (1) MidFirst is the grantee, beneficiary, owner, or holder of the Deed of Trust and the Note; (2) Midland Mortgage Co. ("Midland") was the mortgage servicer of the Borrowers' mortgage loan at the time of

foreclosure; (3) MidFirst had standing to foreclose on the Property; (4) the complained of defect in the foreclosure sale that MidFirst had no standing to foreclose is without merit; (5) the allegation that MidFirst violated the FDCPA because it lacked standing to foreclose is patently false; (6) MidFirst is not a "debt collector" under the FDCPA; and (7) foreclosing on real property is not "debt collection" under the FDCPA.

## A. MIDFIRST BANK IS ENTITLED TO JUDGMENT IN ITS FAVOR BECAUSE THE PLAINTIFF LACKS STANDING TO BRING ONE OR MORE OF HIS ALLEGED CAUSES OF ACTION AGAINST MIDFIRST.

16. Subject matter jurisdiction is essential to the authority of a court to decide a case. *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 443 (Tex.1993, reh. overruled). Standing is implicit in the concept of subject matter jurisdiction. *Id.* The standing requirement stems from two limitations on subject matter jurisdiction the separation of powers doctrine and, the open courts provision. *Id.* Subject matter jurisdiction is never presumed and cannot be waived. *Id.*, at 443-444.

17. One limit on court's jurisdiction is the separation of powers doctrine. See TEX. CONST. ART. II, § 1; *Texas Ass'n of Business*, 852 S.W.2d at 444; *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471-74, 102 S.Ct. 752, 757-60, 70 L.Ed.2d 700 (1982); *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). Under this doctrine, governmental authority vested in one department of government cannot be exercised by another department unless expressly permitted by the constitution. *Texas Ass'n of Business*, 852 S.W.2d at 444. Accordingly, the separation of powers provisions the Texas constitutions "prohibit courts from issuing advisory opinions because such is the function of the executive rather than the judicial

department." *Id.*, at 444; *Firemen's Insurance Co. v. Burch*, 442 S.W.2d 331, 333 (Tex.1969); *Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641, 644 (Tex.1933).

18. The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties. *Texas Ass'n of Business*, 852 S.W.2d at 444; *see also* Firemen's *Ins. Co.*, 442 S.W.2d at 333; *Puretex Lemon Juice, Inc.*, 160 Tex. At 591, 334 S.W.2d at 783. An opinion issued in a case brought by a party without standing is advisory because rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury. *Texas Ass'n of Business*, 852 S.W.2d at 444. Texas courts, have no jurisdiction to render such opinions. *Texas Ass'n of Business*, 852 S.W.2d at 444.

19. Under the Texas Constitution, standing is implicit in the open courts provision, which contemplates access to the courts only for those litigants suffering an injury. *Texas Ass'n of Business*, 852 S.W.2d at 444. Specifically, the open courts provision provides:

> "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

TEX. CONST. ART. I, § 13; *Texas Ass'n of Business*, 852 S.W.2d at 444. Accordingly, lack of standing deprives a court of subject matter jurisdiction because standing is an element of such jurisdiction. *See Texas Ass'n of Business*, 852 S.W.2d at 444-45.

20. Whether Bailey has the standing to assert any causes of action against MidFirst is a fundamental issue that must be addressed by the court prior to consideration of the merits of the claims asserted. As a general rule, only the mortgagor or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust. *Goswami v. Metropolitan Savings and Loan Association,*

751 S.W.2d 487, 489 (Tex.1988, reh. overruled); *see also Mercer v. Bludworth*, 715 S.W.2d 693, 698 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e)

21. Pursuant to Tex. Prop. Code §51.002(b)(3), the notice of foreclosure sale must be given at least twenty-one (21) days before the date of sale by serving written notice of the sale by certified mail on each debtor *who is obligated for the debt.*(emphasis added). The courts have repeatedly held in separate occasions that there is no requirement that the lienholder serve persons who are not obligated to pay the debt. A party that concedes they are not a party to the Deed of Trust was not entitled to statutory notice of sale. *See Stanley v. Citifinancial Mortgage Co.*, 121 S.W.3d 811, 817 (Tex. App. – Beaumont 2003 no pet.) In a case that is directly on point with the case at hand, the court held that the purchasers of the property that took the property subject to the note and deed of trust were not entitled to notice of the sale. *Hausmann v. Texas Sav. & Loan Ass'n*, 585 S.W.2d 796, 797-800 (Civ. App. - El Paso 1979, ref. n.r.e.).

22. The same argument should be applied to the plaintiffs' unsupported allegations of (1) Breach of Contract, (2) Wrongful Foreclosure, (3) violations of the Fair Debt Collection Practices Act, (4) Equitable Estoppel/Unjust Enrichment, and (5) Quiet Title. If there was a valid cause of action under these theories, the Plaintiff has not shown any case law to support his assertion that he is the party that can pursue the claims. Such a claim could only be made by the party aggrieved by the actions, the Chestnuts. Merely alleging a cause of action is not sufficient grounds for prosecution of the Plaintiff's causes of action, the Plaintiff must affirmatively show that he has the right to seek the redress for the cause of action alleged. It is clear from the Plaintiff's claims and the facts supporting the same

that the Plaintiff's allegations are directed at other defendants and he is holding MidFirst hostage during the prosecution of this matter.

23. As the case law stated above, there is no requirement that the Movant has any legal duty to provide notice to the Plaintiff. As such, Movant is entitled to summary judgment on all of Plaintiff's claims because there is no privity of contract between the parties and the Plaintiff can show no statutory basis to support the relief requested.

## B. PLAINTIFF LACKS STANDING TO CHALLENGE ANY ASSIGNMENT

24. The Plaintiff's claims against MidFirst boil down to his assertion that MidFirst did not have the right to enforce the note. Even if the Plaintiff could somehow show he had the requisite contacts with MidFirst to demonstrate the standing to assert any of his claims, he would be met with a second wall of jurisdictional barriers related to the fact that even a mortgagor could not overcome.

25. A plaintiff lacks standing to challenge any purported defects in any assignments of the Deed of Trust because they were not a party to them. *See Pagosa Oil and Gas, L.L.C. v. Marrs and Smith P'ship*, 323 S.W. 3d 203, 212-13 (Tex. App.- El Paso Feb. 10, 2010, pet. denied) (nonparty to an assignment lacks standing to contest it); *Valdez v. Fed. Home Loan Mortgage Corp.*, No. 3:11-cv-1363-F (N.D. Tex. Nov. 29, 2011) (slip op.) (Royal Ferguson, J.); *Defranchesi v. Wells Fargo Bank, N.A.*, 2011 WL 3875338, * 4 (N.D. Tex Aug. 31, 2011); *Eskridge v. Federal Home Loan Mortgage Corp.*, et al., 2011 WL 2163989, *5 (W.D. Tex. Feb. 24, 2011). Accordingly, Plaintiff lacks standing to challenge the assignment and MidFirst is entitled to summary judgment.

## C. MERS AND ITS STATUS ACCORDING TO TEXAS LAW

26. The MERS system is merely an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans." *Spositi v. Federal National Mortgage Association,* No. 4:11-CV-542, 2011 WL 5977319, at *4 (E.D. Tex. Nov. 3, 2011) quoting *Richardson v. Citimortgage,* No. 6:10-cv-119, 2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010) quoting *In re: Mortgage Registration Systems (MERS) Litigation,* 659 F.Supp.2d 1368, 1370 (U.S. Jud. Pan. Mult. Lit. 2009). The Texas Property Code defines "mortgagee" to include "grantee, *beneficiary,* owner or holder of a security instrument, a *book entry system* or, if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." TEX. PROP. CODE §§ 51.0001(4)(A), (B) and (C) (West Supp. 2010) (emphasis added). The Texas Property Code defines "book entry system" as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns." TEX. PROP. CODE § 51.0001(1) (West Supp. 2010). Consequently, MERS is a "book entry system" as defined by the Texas Property Code.

27. Since the Texas Property Code defines beneficiary and "book entry system" as a mortgagee and the Deed of Trust identifies MERS as the beneficiary under the Deed of Trust, MERS is a mortgagee with the right to foreclose, or, in this case, the right to convey and assign the Note and Deed of Trust to U.S. Bank. See *Defranceschi v. Wells Fargo Bank, N.A.,* Action No. 4:10-CV-455-Y, 2011 WL 3875338, at *4 (N.D. Tex. Aug. 31, 2011) (MERS, as the designated beneficiary under the Deed of Trust, has the right to assign the Deed of Trust); *Eskridge v. Federal Home Loan Mortg. Corp.,* No. W-10-CA-

285, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011) ("MERS was given the authority to transfer the documents in the Deed of Trust."); Spositi 2011 WL 5977319, at *4 (as the beneficiary under the deed of trust, MERS is the mortgagee under the Texas Property Code); and *Teas v. Republic Nat'l Bank*, 460 S.W.2d 233, 243 (Tex. Civ. App.—Dallas 1970, writ ref'd n.r.e.) (assignment of the deed of trust cannot be transferred with the debt).

## D. PLAINTIFF'S CAUSE OF ACTION FOR BREACH OF CONTRACT FAILS

28. Plaintiff alleges that the actions and omissions of Defendant constituted a breach of oral and written agreements entered into between Plaintiff and Defendant concerning forbearance and loan modification, which proximately cause Plaintiff damages. Baily's claim for breach of contract fails for any number of reasons, but the most glaring problem that Baily faces in his cause of action against MidFirst is the simple, yet un-rebuttable fact that *he did not have a contract with MidFirst.* Defendant did not breach any contract with Plaintiff and is entitled to summary judgment on this claim.

29. To state a claim for breach of contract, Plaintiff must show: "(a) the existence of a valid contract; (b) performance or tendered performance by the plaintiff; (c) breach of the contract by the defendant; and (d) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). Moreover, in order to plead breach of contract, Plaintiff must identify which provisions of which contract Defendant's conduct allegedly violated. *See Philips v. Deutsche Bank Nat'l Trust Co.*, No. EP-10-CV-442-KC, 2011 WL 482839 (W.D. Tex. Feb. 7, 2011) (citing *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d.

660, 666 (Tex. App. 2010) and *Chapa v. Chase Home Fin. LLC, No.* C-10-359, 2010 WL 5186785, at *4 (S.D. Tex. Dec. 15, 2010)).

30. This claim fails as a matter of law because Plaintiff has no standing to sue MidFirst for breach of contract. It is well settled that a plaintiff may not enforce a contract to which he is not a party. *See Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (per Curiam); *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 193 (Tex. 2009) ("a person who did sign a contract or authorize its execution cannot enforce it"); *Rodriguez v. U.S. Sec. Assocs.*, 162 S.W.3d 868, 876 (Tex. App.-Houston [14th Dist.] 2005, no pet.); *Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd.*, 848 S.W.2d 724, 730 (Tex. App.- Dallas 1992, writ denied) ("only parties to a contract have a right to sue for its breach"); *IP Petroleum Co., Inc. v. Wevanco Ener., L.L.C.*, 116 S.W.3d. 888, 898 (Tex. App.- Houston [1st Dist.] 2003, pet. denied) (same). "It is axiomatic that a plaintiff must prove a contractual relationship in order to have standing to sue for breach." *See Broadnax v. Kroger Texas, L.P.*, No. 05-04-01306-CV, 2005 WL 2031783, at *12 (quoting *Citizens Real Estate & Mortgage Co. v. Sharp*, 246 S.W.2d 698, 701 (Tex. Civ. App. – Texarkana 1952, no writ)).

31. To have standing to assert a claim for breach of contract, "a plaintiff must demonstrate that he was in privity with the defendant at the time of the breach." *Broadnax*, 2005 WL 2031783 at *11 (citing *C&C Partners v. Sun Exploration & Prod.*, 783 S.W.2d 707, 721 (Tex. App.- Dallas 1989, writ denied), overruled on other grounds, *Formosa Plastics Corp. USA v. Presidio*, 960 S.W.2d 4 (Tex. 1998)). A plaintiff can demonstrate he was privity with defendant by showing that he was either 1) in direct privity with the defendant; or 2) a third party beneficiary to the contract. *Id.* Parties to a contract, and

those in direct privity, are the signatories named in a contract. *See Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006) (person who did not sign contract was not a party to the contract); *ANCO Ins. Servs v. Romero*, 27 S.W.3d 1, 5-6 (Tex. App.-San Antonio 2006, pet. denied) (company that did not sign final contract was not a party to the contract).

32. Here, Plaintiff is not a party to the contract with MidFirst which is at issue in this lawsuit. To the contrary, Travis Chestnut and Amy Chestnut are the borrowers of record and the signatories on the Note, Deed of Trust and associated loan documents. Plaintiff is not mentioned in either the Note or Deed of Trust; nor is Plaintiff mentioned in any of the origination documents.

33. Further, Plaintiff did not assume the loan or otherwise become bound by its provisions (specifically, being entitled to notice of default or notice of acceleration) and the Borrowers did not assign their rights under the Note or Deed of Trust to Plaintiff. In addition, under the Warranty Deed, Plaintiff only acquired---and could only acquire---the Borrower's limited ownership rights in the Property. As the signatory of the Note and Deed of Trust, only the Borrowers are in direct privity with the MidFirst. Accordingly, because Plaintiff is neither a party to, nor the signatory of, the contract he claims was breached, he lacks standing to bring the breach of contract claim.

34. A party who is not named in the contract and who does not assert a third party beneficiary claim against the defendant does not have standing to bring a breach of contract claim. *See, e.g. Broadnax*, 2005 WL 2031783 at *12 ("We conclude [plaintiff] lacks standing to enforce the terms of the contract against [defendant] because [plaintiff] is not a party to the contract between [defendants] and he did not assert a third party beneficiary claim") (quoting *IP Petroleum*, 116 S.W.3d at 898); *see also C&C Partners*, 783 S.W.2d at 721.

Plaintiff does not assert that he is a third party beneficiary of the contract, nor does he make any factual allegations to that effect.

35. Even if Plaintiff did assert a third party beneficiary claim, it would fail. A third party may recover on a contract made between other parties "**only** if the parties intended to secure a benefit to that third party, and **only** if the contracting parties entered into the contract directly for the party's benefit." Stine, 80 S.W.3d at 589-590 (quoting *MCI Telecomms Corp. v. Texas Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1991)) (emphasis added); *see also Canfield v. Countrywide Home Loans, Inc.*, 187 S.W. 3d 258, 263-64 (Tex. App.-Beaumont 2006, pet. denied); *Rodriguez,* 162 S.W.3d at 876. There is a presumption against conferring third party beneficiary status on noncontracting parties. *See City of Alton v. Sharyland Water Supply Corp.*, 277 S.W.3d. 132, 149-50 (Tex. App.-Corpus Christi 2009, pet. granted); *see also S. Texas Water Auth. V. Lomas,* 223 S.W.3d 304, 306 (Tex. 2007) (per curiam); *MCI,* 995 S.W.2d at 652; *Ortega v. City Nat'l Bank,* 97 S.W. 3d 765, 776 (Tex. App.-Corpus Christi 2003, no pet.). The intention to confer a benefit to a third party "must be clearly and fully spelled out in order to show the contracting partied entered into the contract directly for the third party's benefit." *See Broadnax,* 2005 WL 2031783 at *13 (quoting *Stine,* 80 S.W.3d at 589; MCI, 995 S.W.2d. at 651). 'The fact that a person might receive an incidental benefit from a contract to which he is not a party does not give that person a right of action to enforce the contract." MCI, 995 S.W.2d at 651. A court will not create a third-party beneficiary contract by implication, and "[i]f there is any reasonable doubt as to the intent of the contracting parties to confer a direct benefit on the third party, then the third-party beneficiary claim must fail." *Id.*

(quoting *Dallas Firefighters v. Whitten v. Vehicle Removal Corp.*, 56 S.W.3d 293, 312 (Tex. App.—Dallas 2001, pet. denied).

36. The contract here was not made for the Plaintiff's benefit in any manner what-so-ever. Not only is Plaintiff not a party to the Note or Deed of Trust, neither document either contemplates nor mentions Plaintiff. *Id.* There is no indication whatsoever of any intention to benefit the Plaintiff, let alone any intention that is "clearly and fully spelled out." *Stine*, 80 S.W.3d at 589; *MCI*, 995 S.W.2d at 651. Courts considering facts highly similar to the facts of this case hold that a person who is not a signatory to the contract is not a third party beneficiary. *See, e.g. Canfield*, 187 S.W.3d at 364 (person not a party to or signatory of the note and deed of trust is not a third party beneficiary); *Broadnax*, 2005 WL 2031783 at *13 (no third party beneficiary status where plaintiff not mentioned at all in the contract); *O'Leary v. Coleman*, No. 13-07-272-CV, 2008 WL 1973899, at *7 (Tex. App.-Corpus Christi May 8, 2008, no pet.) (no third party beneficiary status where plaintiff was not a party to the deed).

37. The *Canfield* case is particularly instructive. In *Canfield*, two borrowers executed a note and deed of trust. *Canfield*, 187 S.W.3d 258 at 260. Subsequently, the borrowers executed a general warranty deed in favor of the plaintiff, but the plaintiff never formally assumed the loan. *Id.* The plaintiff made payments on the loan and eventually sought to pay off the loan, claiming entitlement to the escrow account funds. *Id* at 262, 264. When the servicer of the loan refused to release the funds in escrow to the plaintiff because he was not a party to the note or deed of trust, the plaintiff sued. *Id.* The court held the plaintiff, as a stranger to the note or deed of trust, was not a third party beneficiary and hence lacked standing to sue for breach of contract. *Id.* at 264. The court reasoned:

None of the documents executed between the [borrower] and the lender [lender] were intended to secure any direct benefit to [plaintiff], and we will not create one from surmise. {Lender's] contractual obligation.....was to the [borrowers], the only other party legally obligated to repay the FHA-insured loan, as neither [of the plaintiffs] ever attempted to qualify to assume the [borrowers'] financial obligation.

38. Here, like in Canfield, Plaintiff is a stranger to the Note and Deed of Trust. Nothing in the Note, Deed of Trust, or any of the origination documents indicate any intent, on the part of either the Borrowers or MidFirst, that Plaintiff benefit under the contract. Under these circumstances, Plaintiff is not a third party beneficiary to the contract and has no standing to sue for breach of contract. Accordingly, because Plaintiff lacks standing, the Court should grant Defendant's summary judgment on Plaintiff's breach of contract claim.

## E. PLAINTIFF'S CAUSE OF ACTION FOR WRONGFUL FORECLOSURE FAILS

39. Plaintiff's cause of action for wrongful foreclosure fails as a matter of law. The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex.App.-Houston [14th Dist.] 1989, writ denied). Plaintiff herein does not allege that there was any irregularity in the conduct of the foreclosure sale itself. *See Petition* at ¶¶ 3-4. Plaintiff merely alleges that MidFirst lacked standing to foreclose pursuant to its alleged inability to prove ownership and possession of the Note. *Id.*

40. Plaintiff's allegation is misguided as there is no requirement under the Deed of Trust or Texas Property Code requiring proof and ownership of the Note (colloquially known as the show-me-the-note theory) prior to a non-judicial foreclosure under the Deed of Trust. *See* Tex. Prop. Code ¶¶ 51.002, 51.0025; *see also Wells v. BAC Home Loans Servicing,*

*L.P.*, No. W–10–CA–00350, 2011 WL 2163987, at *3 (W.D.Tex. Apr.26, 2011); *Coleman v. Bank of America, N.A.*, No. 3–11–CV–0430–GBD, 2011 WL 2516169, at *2 (N.D.Tex. May 27, 2011), rec. adopted, 2011 WL 2516668 (N.D.Tex. June. 22, 2011); *Dillard v. Mortg. Elec. Registration Sys., Inc.*, No. 3–10–CV–0091–N, slip op. at 4 n. 1 (N.D.Tex. Apr. 16, 2010), appeal dism'd, No. 11–10069 (5th Cir. Apr. 21, 2011).

41. The Texas Property Code governs non-judicial foreclosure sales of real property under a security instrument and clearly specifies the requirement for a non-judicial foreclosure proceeding in Texas. In accordance with Tex. Prop. Code §51.00025, a "mortgage servicer" of a "mortgagee" may conduct the foreclosure proceedings. Tex.Prop.Code § 51.0001(3) & 51.0001(4).

Tex. Prop. Code § 51.0001(3) defines "Mortgage Servicer" as follows:

*The last person to whom a mortgagor has been instructed by the current mortgagee to send payment for the debt secured by a security instrument.*

Texas Prop. Code § 51.0001(4) defines "Mortgagee" as follows:

*(A)   the grantee, beneficiary, owner, or holder of a security instrument;*
*(B)   a book entry system; or*
*(C)   if the security instrument has been assigned of record, the last person to whom the security instrument has been assigned of record.*

42. Non-judicial foreclosure of real property under a contract lien is governed by the terms of the security instrument (Deed of Trust in the instant case) and Chapter 51 of the Texas Property Code. *Holy Cross Ch. Of God in Christ v. Wolf*, 44 S.W. 3d. 562, 569 (Tex. 2001). Neither case law nor the governing statutory provisions require that the "holder" of the Note is the only party with authority to conduct a non-judicial foreclosure sale. In fact, the well settled law in Texas is that you do not have to be the noteholder. The Texas Property Code clearly and unequivocally states that the Mortgagee or Mortgage Servicer

may administer the foreclosure of a property under Section 51.002 of the Property Code. Plaintiff's contention that MidFirst does not have authority or standing to foreclose on the Deed of Trust is clearly wrong.

43. Plaintiff fails to acknowledge that both Midland and MidFirst were entitled to foreclose under the property code and the Deed of Trust. Midland was the last entity to whom the Borrowers were instructed by MidFirst to make payments to for their mortgage loan. *See Exhibit A.* The Deed of Trust is on file in the Official Public Records of Travis County, Texas. *See Exhibit A-2.* Pursuant to the Assignment of Deed of Trust filed in the Official Public Records of Travis County, Texas on May 15, 2009, either MidFirst as the holder of the Note and Deed of Trust or Midland, its Mortgage Servicer (as defined by Tex. Prop. Code §51.0001), could conduct the foreclosure of the Property. *See Exhibit A and A-3.* The documents on file in the public records clearly indicate that MidFirst and Midland are the parties entitled to proceed with foreclosure.

44. Neither the property code, case law, nor the language of the Deed of Trust requires proof of ownership of the Note before conducting a non-judicial foreclosure. A foreclosure action is not an action to enforce a note, but an action under the deed of trust. Texas courts have refused to conflate foreclosure with enforcement of a promissory note. *Reardean v. CitiMortgage, Inc.*, A-11-CA-420-SS, 2011 WL 6 3268307, *3 (W.D. Tex. July 25, 2011); *Kan v. OneWest Bank, FSB*, No. A-11-CA-381-SS, 2011 WL 5419693, at *3-5 (W.D. Tex. Oct. 27, 2011); *Ray v. CitiMortgage, Inc.*, No. A-11-CA-441-SS, 2011 WL 3269326, at *3-4 (W.D. Tex. Jul. 25, 2011). MidFirst has presented evidence that both MidFirst and Midland were proper parties to conduct the foreclosure and therefore

Plaintiff's causes of action must fail. Therefore, MidFirst is entitled to summary judgment as a matter of law.

45. Plaintiff's wrongful foreclosure claim further fails as Plaintiff failed to tender the amount due under the Note and Deed of Trust. In order to be entitled to have a foreclosure sale set aside in Texas, a plaintiff must actually tender—not just offer to tender—the full amount owed on the note. *Lambert v. First Nat. Bank of Bowie*, 993 S.W.2d 833, 835–36 (Tex.App.-Ft. Worth 1999, pet. denied) (dismissing plaintiff's claim for rescission where plaintiff "offered to tender 'all amounts due and owing' under the note and deed of trust" because "he never tendered these amounts to the court"); *see also Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.); ("Tender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims title under a void foreclosure sale."); *Falk v. Wells Fargo Bank*, 2011 WL 3702666 (N.D.Tex. Aug.19, 2011) ("[f]or a foreclosure sale to be set aside or cancelled, the mortgagor must tender the amounts due and owing under the note and deed of trust."). Here, Plaintiff never tendered the amount due under the Note and Deed of Trust. As a result, this claim fails and MidFirst is entitled to summary judgment.

## F. ALTERNATIVELY, MIDFIRST BANK IS THE HOLDER OF THE NOTE

46. Alternatively, MidFirst is the "holder" of the Note. Under Texas law, a "holder" is defined as a person who is in possession of an instrument payable to him or to bearer. Tex. Bus. & Com. Code Ann. §1.201(20) (Vernon Supp.2001). When an instrument is payable to an identifiable person, the "holder" is the person in possession if he is the identified person. Tex. Bus. & Comm.Code Ann. §1.201(21); *SMS Fin., LLC v. ABCO*

*Homes, Inc.*, 167 F.3d 235, 238 (5th Cir.1999). There are two types of possession: actual and constructive. Constructive possession exists when a person does not actually possess land or chattel but has the intent and capability to maintain control and dominion over it. *Mehan v. WAMCO XXVIII, Ltd.*, 138 S.W.3d 415, 418 (Tex. App.-Fort Worth 2004, no pet.); *Blankenship v. Citizens Nat'l Bank of Lubbock,* 449 S.W.2d 77, 79 (Tex.Civ.App.-1969, writ ref'd n.r.e.); *see also GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 728-29 (Tex.1993) (holding that person has possession custody, or control of documents or tangible things if person has the right to obtain possession of same from a third party).

47. Here, the Note is indorsed to MidFirst. *See Exhibits A & A-1.* Further, Defendant MidFirst has been in actual possession of the Note since on or before April 22, 2010. *See Exhibit A.* Because the Note is indorsed to MidFirst and MidFirst was in possession of same, MidFirst is the "holder" of the Note. Thus, Plaintiff's lack of standing argument is without merit.

## G. PLAINTIFF'S DTPA ACTION FAILS

48. Plaintiff also asserts a cause of action for violation of the Texas Deceptive Trade Practices-Consumer Protection Act. Defendant moves for summary judgment for this cause of action on the grounds that there are no genuine issues of material fact of law with respect to essential elements of this cause of action against Defendant.

49. Plaintiff lacks standing to sue under the DTPA because he cannot establish that he is a consumer as defined by the DTPA. *Ford v. City State Bank of Palacios,* 44 S.W.3d 121, 133 (Tex.App.—Corpus Christi 2001, no writ); see also *Crown Life Insurance Co. v. Casteel,* 22 S.W.3d 378, 386 (Tex.2000). Whether a plaintiff is a consumer under the

DTPA is a question of law to be determined by the trial court from the evidence. *Ford*, 44 S.W.3d at Id. To qualify as a consumer under the DTPA, a party must meet two requirements. *Id.* First, he must seek or acquire goods or services by lease or purchase. *Ford*, 44 S.W.3d at Id.; *Crown Life*, 22 S.W.3d at 386. Second, the goods or services sought or acquired must form the basis of the party's complaint. *Ford*, 44 S.W.3d at Id.; *Melody Home Manufacturing Co. v. Barnes*, 741 S.W.2d 349, 351-52 (Tex.1987).

50. In determining whether a plaintiff is a consumer, the focus is on the plaintiff's relationship to the transaction. *Ford*, 44 S.W.3d at Id.; *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex.1997); see also *Kennedy v. Sale*, 689 S.W.2d 890, 893 (Tex.1985) (a plaintiff establishes its standing by the terms of its relationship to a transaction, and not by a contractual relationship with the defendant).

51. In this matter, the plaintiff fails to show that he had any relationship with MidFirst, much less one that would implicate his causes of action against MidFirst. Plaintiff neither sought to nor acquired goods or services by lease or purchase from MidFirst. Further, there were no goods or services sought or acquired that form the basis of the Plaintiff's complaint. Plaintiff contracted with a third party to purchase the home without the consent of MidFirst. There is simply no causal nexus between Plaintiff's claims and MidFirst's alleged culpability.

## H. PLAINTIFF'S QUIET TITLE ACTION FAILS

52. MidFirst is also entitled to summary judgment on the quiet title cause of action asserted by Plaintiff since Plaintiff has failed to show any of the elements required to prove a quiet title claim.

53. To prevail in a trespass to try title action, a plaintiff must (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). Not only did Plaintiff fail to prove any of these elements but Plaintiff did not even allege any of these elements in his Petition. Plaintiff has produced no evidence to show a regular chain of conveyance nor has it shown superior title from a common source.

54. Plaintiff based his claim entirely on the perceived weaknesses in MidFirst's title and not on the strength of his own title. *See Fricks v. Hancock*, 45 S.W.3d 322, 327 Tex. App.--Corpus Christi 2001, no pet.); *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e); *Wall v. Carrell*, 894 S.W.2d 788, 797 (Tex. App.—Tyler 1994, writ denied) .)(**"The defendant is not required to show title in [it]self, nor may the plaintiff rely on the defendant's failure to do so."**)(emphasis added); *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied) ("The plaintiff in a suit to quiet title must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference.").

55. Although MidFirst was not required to show title in itself, it has done so. For all of these reasons, Defendant's Motion for Summary Judgment on this cause of action should be granted.

# VI.
## NO-EVIDENCE SUMMARY JUDGMENT

56. Defendant moves for summary judgment pursuant to Rule 166a(i) of the Texas Rules of Civil Procedure, which provides in pertinent part as follows:

(i) **No-Evidence Motion.** After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. *The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.* TEX. R. CIV. P. 166a(i). (Emphasis added).

57. A court may grant a no-evidence motion for summary judgment if the movant can show that adequate time for discovery has passed, and the non-movant has no evidence to support one or more essential elements of its claim. TEX. R. CIV. P. 166a(i). With a "no evidence" motion, the burden is on the Plaintiff to come forward with evidence that raises a fact issue on the challenged element of its cause of action. TEX. R. CIV. P. 166a(i); *see also In re Mohawk Robber Co.,* 982 S.W. 2d 494 (Tex. App. – Texarkana 1998, orig. proceeding). If the Plaintiff fails to produce sufficient evidence on the challenged element, the court must grant the defendant's motion. Tex. R. Civ. P. 166a(i).

58. The rule regarding the time period for filing a no-evidence motion for summary judgment "does not require that discovery must have been completed, only that there was 'adequate time.'" *Specialty Retailers, Inc. v. Fuqua,* 29 S.W.3d 140, 145 (Tex.App.—Houston [14th Dist.] 2000, pet. denied). Plaintiff has had adequate time for discovery, as this case has been on file since July 1, 2008. *See, e.g., McClure v. Attebury,* 20 S.W.3d 722, 730 (Tex.

App.—Amarillo Dec. 1, 1999, no pet.)(holding trial court did not abuse its discretion in determining that summary judgment motion filed seven months after filing of suit was filed after adequate time for discovery); *see also Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)(an adequate time for discovery had passed when no evidence motion was filed eight days before the end of the discovery period when case had been on file for 16 months).

59. When a motion for no-evidence summary judgment is filed, the burden shifts to the respondent to provide more than a scintilla of evidence to raise a genuine issue of material fact on each of the challenged elements. *See Howell v. Hilton Hotels Corp.*, 84 SW3d 708, 715 (Tex. App.-Houston [1st Dist.] 2002, pet. denied); *General Mills Restaurants, Inc. v. Texas Wings, Inc.*, 12 S.W.3d 827, 832 (Tex. App.-Dallas 2000, no pet.). In response to a no-evidence motion, the respondent must present some summary judgment evidence raising a genuine issue of material fact on the elements attached, or the motion must be granted. Tex. R. Civ. P. 166a(i); *Saenz v. Southern Union Gas Co.*, 999 S.W.2d 490, 494(Tex. App.-El Paso 1999, pet. denied). The respondent must ensure that evidence is properly before the trial court for its consideration in ruling on the motion for summary judgment. *Id.; Blake v. Intco Investments of Texas, Inc.*, 123 S.W.3d 521, 524-525 (Tex. App.-San Antonio 2003, no pet.).

60. In presenting its summary judgment evidence, the nonmovant must produce more than a "scintilla of evidence" to raise a genuine issue of material fact for each element of its cause of action. A nonmovant can only produce more than a scintilla of evidence when the evidence produced "rises to a level that would enable reasonable and fair minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d

706, 711 (Tex. 1997). To put it another way, a nonmovant produces less than a scintilla of evidence when the evidence is "so weak as to do no more than create a mere surmise or suspicion of fact." *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

## A. BREACH OF CONTRACT

61. Plaintiff's cause of action for breach of contract requires 1) a valid, enforceable contract; 2) plaintiff performed, tendered performance of, or was excused from performing its contractual obligations; 3) defendant breached the contract, and 4) MidFirst's breach caused plaintiff injury. *See Doss v. Homecomings Financial Network, Inc.*, 210 S.W.3d 706, 713 (Tex.App.—Corpus Christi 2006, pet. denied). *Also see Hussong v. Schwan's Sale Enterprises*, 896 S.W.2d 320, 326 (Tex.App—Houston [1st Dist.] 1995, no writ hist.).

62. To prove a valid, enforceable contract exists, plaintiff must prove that there was an offer, an acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration supporting the contract. *See DeClaire v, G & P McIntosh, F.L.P.*, 260 S.W.3d 34, 39 (Tex.App—Houston [1st Dist.] 208, no pet.) (elements 1-4); *and see Texas Gas Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970) (element 5).

63. Plaintiff cannot show that a valid, enforceable contract exists with MidFirst. No further elements need to be addressed because Plaintiff cannot show this threshold issue. As such, MidFirst is entitled to a no-evidence summary judgment on this claim

## B. WRONGFUL FORECLOSURE

64. The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Charter Nat'l Bank–Houston v.*

*Stevens*, 781 S.W.2d 368, 371 (Tex.App.-Houston [14th Dist.] 1989, writ denied). Here, MidFirst is entitled to summary judgment because Plaintiff cannot by admissible evidence demonstrate that there is any evidence to support his cause of action for wrongful foreclosure.

65. Specifically, Plaintiff cannot provide admissible evidence to support elements one (1) through three (3) listed above. Furthermore, Plaintiff cannot provide admissible evidence in support of Plaintiff's argument that MidFirst "did not have standing to initiate foreclosure proceedings against anyone as it is neither the owner nor the holder of any indebtedness secured by Plaintiffs (sic) homestead." *See Petition* at ¶3.

## C. EQUITABLE ESTOPPEL/UNJUST ENRICHMENT

66. Plaintiff must establish that MidFirst obtained a benefit from Plaintiff by fraud, duress, or the taking of an undue advantage to prove a cause of action for unjust enrichment. *See Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The Plaintiff must show that he took the necessary steps to enter into a relationship with MidFirst.

67. To receive equity, Plaintiff must do equity and Plaintiff does not appear to have wholly clean hands. To now complain that MidFirst must pay for the wrongful acts of a third party with no demonstrable affiliation with MidFirst is unreasonable.

   a. Plaintiff cannot provide any evidence that MidFirst obtained a benefit from Plaintiff by fraud.

   b. Plaintiff cannot provide any evidence that MidFirst obtained a benefit from Plaintiff by duress.

   c. Plaintiff cannot provide any evidence that MidFirst obtained a benefit from Plaintiff by taking undue advantage of Plaintiff.

## Aiding and Abetting

68. The elements of assisting-and-participating liability under Reinstatement (2nd) of Torts § 876(c) are the following:

    i.    The primary actor's activity accomplished a tortuous result;

    ii.    The defendant provided substantial assistance to the primary actor in accomplishing the tortuous result;

    iii.    The defendant's own conduct, separate from the primary actor's, was a breach of a legal duty to the plaintiff; and

    iv.    The defendant's participation was a substantial factor in causing the tort.

*See Reinstatement (2nd) of Torts § 876(c)* (elements 1-3), *§ 876(c) cmt. e* (element 4).

69. A plaintiff must prove defendant's own conduct, separate from the primary actor's, was a breach of a legal duty to the plaintiff to establish a cause of action for aiding and abetting—assisting & participating liability. *See City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex.1969). As the evidence shows, Plaintiff cannot provide any information that demonstrates MidFirst owed a legal duty to Plaintiff.

70. Plaintiff must prove defendant's assistance of the primary actor was a substantial factor in causing the resulting tort to establish a cause of action for aiding and abetting—assisting & participating liability. The five factors relevant to whether the defendant's assistance was a substantial cause of the tort are (1) nature of wrongful act, (2) amount of assistance, (3) relationship of defendants, (4) defendant's presence, and (5) defendant's state of mind. *See Reinstatement (2nd) of Torts § 876(c) cmt. e. Also see Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex.1996); *And see Shinn v. Allen*, 984 S.W.2d 308, 311 (Tex.App— Houston [1st Dist] 1998, no pet.).

71. Plaintiff cannot provide any evidence of sufficiently wrongful acts by MidFirst, nor can the plaintiff show that MidFirst provided a sufficient amount of assistance to co-defendants.

72. If MidFirst did not have a special relationship with the primary actor that would place it in a position to influence the primary actor, this fact weighs against a finding of substantial assistance. *See Shinn*, 984 S.W.2d at 311. Plaintiff cannot provide any evidence of a special relationship between MidFirst and co-defendants that would place MidFirst in a position of influence. Plaintiff cannot provide any evidence of MidFirst's presence at or during the alleged wrongful act. Finally, Plaintiff cannot provide any evidence of MidFirst's sufficient state of mind.

## Alternatively, Conspiracy

73. The elements of conspiracy are the following:

   a. The defendant was a member of a combination of two or more person;

   b. The object of the combination was to accomplish (1) an unlawful purpose, or a lawful purpose by unlawful means;

   c. The members had a meeting of the minds on the object or course of conduct;

   d. One of the members committed an unlawful, overt act to further the object or course of action; and

   e. The plaintiff suffered injury as a proximate result of the wrongful act.

*See Chron Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex.2005).

74. Plaintiff must establish the parties involved had a meeting of the minds about the object of their conspiracy to prove a cause of action for conspiracy. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex.1995).

**DEFENDANT'S FIRST AMENDED MOTION FOR SUMMARY JUDGMENT**
BDFTE NO. 20100010601513

a. The conspirators must have knowledge of the object and purpose of the conspiracy to have a meeting of the minds. *See Triplex Comms. V. Riley*, 900 S.W.2d 716, 719-20 (Tex.1995). A defendant without knowledge of the object and purpose of a conspiracy cannot be a conspirator. *See Laxson v. Giddens*, 48 S.W.3d 408, 410 (Tex.App—Waco 2001, pet. denied). If one of the two defendants alleged to be conspirators does not know of the object or purpose of the conspiracy, there can be no conspiracy. *See Pairett v. Gutierrez*, 969 S.W.2d 512, 516 (Tex.App—Austin 1998, pet denied).

b. "Meeting of the minds" means there was an agreement or understanding between the conspirators to inflict a wrong on another party. *See Chu v. Hong*, 249 S.W.3d 441, 446 (Tex.2008).

75. Plaintiff cannot provide any evidence that MidFirst had knowledge of the object of the alleged conspiracy. Plaintiff cannot provide any evidence of an agreement or understanding between MidFirst and co-defendants to inflict a wrong on Plaintiff.

## D. QUIET TITLE.

76. MidFirst asserts that it is also entitled to a no-evidence motion for summary judgment on the quiet title cause of action asserted by Plaintiff since Plaintiff has failed to show any of the elements required to prove a quiet title claim. To prevail in a trespass to try title action, a plaintiff must prove a regular chain of conveyances from the sovereign, establish superior title out of a common source, prove title by limitations or prove title by prior possession coupled with proof that possession was not abandoned. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004).

77. Plaintiff has produced no evidence to show regular chain of conveyances from the sovereign, establish superior title out of a common source, prove title by limitations or prove title by prior possession coupled with proof that possession was not abandoned.

## E. VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT ("DTPA")

78. The elements for a cause of action for violation of the DTPA are the following:

a. The plaintiff is a consumer;

b. The defendant can be sued under the DTPA;

c. The defendant committed one or more of the following wrongful acts:

   i. a false, misleading, or deceptive act or practice that is specifically enumerated in the "laundry list" of Texas Business & Commerce Code § 17.46(b) and that was relied on by plaintiff to the plaintiff's detriment,

   ii. a breach of an express or implied warranty,

   iii. any unconscionable action or course of action,

d. the use or employment of an act or practice in violation of the Texas Insurance Code chapter 51, or

e. a violation of one of the "tie-in" consumer statutes, as authorized by Texas Business & Commerce Code § 17.50(h), which are classified as "false, misleading, or deceptive acts or practices"; and

   iv. The defendant's action was a producing cause of plaintiff's damages.

See *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex.1996).

79. A Plaintiff must establish his status as a consumer to prove a cause of action for violation(s) of the DTPA. *Doe v. Boys Club*, 907 S.W.2d 472, 478 (Tex.1995). Whether or not a plaintiff is a consumer is a question of law. See also *Bohls v. Oakes*, 75 S.W.3d

DEFENDANT'S FIRST AMENDED MOTION FOR SUMMARY JUDGMENT
BDFTE NO. 20100010601513

473, 479 (Tex.App—San Antonio 2002, pet. denied). Proving consumer status under the DTPA requires a plaintiff to prove she was a person listed in § 17.45(4) that sought or acquired goods or services by purchase or lease. Tex. Bus. & Com. Code § 17.45(4); also see Amstadt, 919 S.W.2d at 649.

80. Section 17.42(1) of the DTPA defines goods as "tangible chattels or real property purchased or leased for use." Tex. Bus. & Com. Code § 17.42(1). Plaintiffs cannot provide any evidence they sought or acquired any "goods" from MMC by purchase or lease. Plaintiffs purchased the Property from Hare.

81. Section 17.42(2) of the DTPA defines services as "work, labor, and services for other than commercial or business use, including services furnished in connection with the sale or repair of goods." Tex. Bus. & Com. Code § 17.42(2). The court in Riverside Nat'l Bank stated services must involve "...action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object." This definition described "services" in terms of "action," "conduct," "performance" and "deeds." All of these synonyms demonstrate that services include an activity on behalf of one party by another. This characterization indicates that "services" is similar in nature to work or labor. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex.1980) citing *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex.1962).

82. Plaintiff cannot provide any evidence that:

   a. He sought or acquired the "services" of MidFirst by purchase or lease.

b. MidFirst committed a false, misleading, or deceptive act or practice that is specifically enumerated in the "laundry list" of Texas Business & Commerce Code § 17.46(b) and that was relied on by Plaintiff to the Plaintiff's detriment.

c. MidFirst committed a breach of an express or implied warranty.

d. MidFirst committed an unconscionable action or course of action

e. MidFirst's actions were a producing cause of Plaintiff's damages.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ITS COUNTERCLAIM

43. Defendant filed an Original Answer and Counterclaim requesting attorneys' fees pursuant to the Texas Declaratory Judgment Act determining that MidFirst's foreclosure was valid, that it has a priority first lien on the Property in question, and that any interests of any secondary or junior lienholder were extinguished as a result of the foreclosure sale.

**a.     Declaratory Judgment**

44. As demonstrated above and in the attached exhibits, Defendant MidFirst Bank had standing to proceed with the foreclosure sale conducted on January 4, 2011. Thus, under the Uniform Declaratory Judgment Act, Defendant/Counter-Plaintiff is entitled to a declaratory judgment that its foreclosure was valid, that it has a priority first lien on the Property in question, and that any interests of any secondary or junior lienholder were extinguished as a result of the foreclosure sale.

**b.     Writ of Possession**

45. Because the foreclosure sale on January 4, 2011 was valid, any person ("Occupant") who occupies or claims possession of the Property after transfer of all right, title

and interest in the Property by trustee's deed, Defendant/Counter-Plaintiff is entitled to a writ of possession against Occupant in accordance with TEX. R. CIV. P. 310.

## VIII. PRAYER

WHEREFORE, premises considered, MidFirst is entitled to summary judgment as a matter of law on all of Plaintiff's causes of action. MidFirst prays the Court set this matter for hearing, grant its motion for summary judgment as to all of Plaintiff's causes of action, dismiss Plaintiff's causes of action against it with prejudice, and grant MidFirst summary judgment on its counterclaims and award such other and further relief to which it may be justly entitled.

Respectfully submitted,

**BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP**

Chris H. Pochyla
State Bar No. 24032842
15000 Surveyor Boulevard, Suite 100
Addison, TX 75001
972-340-7955 (Direct)
972-341-0734 (Fax)
ChrisPo@bdfgroup.com

ATTORNEY FOR DEFENDANT
MIDFIRST BANK

## CERTIFICATE OF SERVICE

I certify that on this the 18th day of February, 2014, I sent a copy of Defendant's Motion for Summary Judgment to all counsel of record in accordance with the Texas Rules of Civil Procedure.

**Via US CMRRR #7196 9008 9115 0259 7670**
William B. Gammon
Law Offices of William B. Gammon
2525 Wallingwood Dr., Suite 600
Austin, Texas 78746
Attorney for Plaintiff

_____
Chris H. Pochyla

| | | |
|---|---|---|
| KARL B. BAILEY, JR. | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | |
| | § | |
| MIDFIRST BANK; SMOKE SIGNAL | § | 250TH JUDICIAL DISTRICT |
| PASS, LLC; ERIC J. LEE; KW | § | |
| MANAGEMENT, LLC, d/b/a Keller | § | |
| Williams | § | |
| | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## AFFIDAVIT IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before me, the undersigned authority, personally appeared Affiant, who, being by me duly sworn, deposed as follows:

1.      "My name is ___Thad Burr___ ("Affiant"), I am of sound mind, am competent to make this Affidavit, and have personal knowledge of the facts herein stated, which are true and correct.

2.      "I am the ___First Vice President___ of MidFirst Bank ("MidFirst" or "Mortgagee"), the owner and holder of the loan. Attached hereto are ___27___ pages of MidFirst's records or copies of records from Travis County recorder's office. I have reviewed the records relating to this matter, including the payment history and origination documents relating to this loan. I am familiar with the activities in relation to Travis Chestnut and Amy Chestnut's (collectively "Borrowers") loan on behalf of Mortgagee. I have personal knowledge of the facts stated in this Affidavit.

3.      "The records attached hereto are records which were obtained and kept in the regular course of business by Mortgagee. The records attached hereto include documents from


EXHIBIT
1

Mortgagee's files in my custody. It was in the regular course of business that Mortgagee or an employee or representative of Mortgagee obtained these documents and records that are essential and required to properly administer the loan file of Mortgagee. As to the business records attached to this Affidavit, Mortgagee, with knowledge of the act, event, condition or opinion recorded, obtained the business record or made the record or transmitted the information to be included in such records. The records were made at or near the time, or reasonably soon after the act, event, or condition recorded. The records attached to this Affidavit are the originals or exact duplicates of the originals, or are copies of the originals. The documents attached to this affidavit are incorporated by reference and made a part of this affidavit for all purposes.

4.    "On or about July 15, 2004, Travis Chestnut and Amy Chestnut (collectively "Borrowers") executed a Deed of Trust ("Deed of Trust") in the original amount of $116,578.00, which was recorded in the Real Property Records of Travis County, a true and correct copy of which is attached to this Affidavit as Exhibit "A-1", securing payment of the promissory note ("Note") with respect to the property commonly known as 1234 Acanthus Street, Pflugerville, Texas 78660 ("Property"). A true and correct copy of said Note is attached to this Affidavit as Exhibit "A-2". MidFirst Bank is the mortgagee of the Deed of Trust and the security interest pursuant to the Assignments of Deed of Trust ("Assignment"), true and correct copies of which are attached to this Affidavit as Exhibit "A-3". MidFirst was the owner of the loan and holder of the note on or before April 22, 2010 and continued to be at the time of the foreclosure sale. Midland Mortgage Co., the loan servicer for MidFirst from December 2, 2008 through a date beyond the date of the foreclosure sale, was the last entity to whom the Borrowers were instructed by MidFirst to make payments to for their mortgage loan.

5.    On or about July 30, 2009 and unknown and unapproved by MidFirst, the

Borrowers executed a General Warranty Deed wherein the Borrowers granted, sold, and conveyed the subject Property to Defendant Smoke Signal Pass LLC. On or about July 31, 2009, and unknown and unapproved by MidFirst, Defendant Smoke Signal Pass LLC executed a Special Warranty Deed with Vendor's Lien wherein it granted, sold, and conveyed the subject Property to Plaintiff. True and correct copies of the aforementioned deeds are attached to this Affidavit as Exhibit "A-4".

6.      Borrowers' loan went into default as they failed to make their monthly mortgage payments (the loan was due for the May 1, 2010 payment) as of the January 4, 2011 foreclosure sale and Mortgagee provided Borrowers with notice of the default and the opportunity to cure same. A true and correct copy of the Notice of Default Letter is attached to this Affidavit as Exhibit "A-5". As Borrowers failed to cure the aforementioned payment default, Borrowers' loan was referred out for non-judicial foreclosure.

7.      Plaintiff is not a party to the subject loan nor did he take steps to assume the subject loan.

8.    Plaintiff has not tendered amount due under the subject Note and Mortgage.

Further Affiant sayeth not."

SIGNED this 7th day of May _____, 2013.

_Thad Burr_
Affiant        Thad Burr

STATE OF OKLAHOMA    §
                     §
COUNTY OF OKLAHOMA §

SWORN TO and SUBSCRIBED before me by Affiant on this ___7th___ day of ___May___ 2013.

_____
Notary Public, State of ___Oklahoma___
Print Name: ___Ted Snoddy___
My Commission Expires: ___3/6/16___

TED SNODDY
Notary Public
State of Oklahoma
Commission # 12002193  Expires 03/05/16

Unofficial Document

2512002146
SL0704

DT    2004136582

12 PGS

When Recorded Return and Mail To:
ALETHES, LLC
12885 RESEARCH BLVD STE 202
AUSTIN, TX 78750
ATTN:

Telephone:
Prepared By:
GINNY MILLER
ALETHES, LLC

12885 RESEARCH BLVD STE 202
AUSTIN, TX 78750

[Space Above This Line For Recording Data]

## DEED OF TRUST

CHESTNUT
LOAN NUMBER: 2
CASE NUMBER: /
MIN:

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THIS DEED OF TRUST ("Security Instrument") is made on    JULY 15, 2004        . The grantor is   TRAVIS  CHESTNUT AND AMY  CHESTNUT, HUSBAND AND WIFE

("Borrower"). The trustee is   ROBERT J. WILSON

whose address is    9951 ANDERSON MILL RD. #200 AUSTIN, TX 78750

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of Post Office Box 2026, Flint, Michigan 48501-2026, telephone (888)679-MERS.   ALETHES, LLC

("Lender") is organized and existing under the laws of   TEXAS
and has an address of    12885 RESEARCH BLVD STE 202 AUSTIN, TX 78750

DOCUTXI
DOCUTXI.VXX  01/23/2004

Page 1 of 10

FHA Texas Deed of Trust - 2/91

EXHIBIT

A-1

Borrower owes Lender the principal sum of
ONE HUNDRED SIXTEEN THOUSAND FIVE HUNDRED SEVENTY-EIGHT AND 00/100
Dollars (U.S. $ 116,578.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on AUGUST 1, 2034 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in
TRAVIS County, Texas:
LOT 18, BLOCK P, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 67 PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 2000188927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

which has the address of 1234 ACANTHUS STREET

[Street]

PFLUGERVILLE                                      Texas        78660
[City]                                            [Zip Code]              ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing, cancelling or assigning this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payments of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum of (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, for (c) premiums for insurance required by Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be

determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items", and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's accounts shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

DOCUKY1
HECUYOO.VTX  12/87/2003                    FHA Texas Deed of Trust - 2/91

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

DOC#: D200HD2.vtx   12/07/2003                    FHA Texas Deed of Trust - 2/01

**9. Grounds for Acceleration of Debt.**

    (a)    **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b)    **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    (c)    **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    (d)    **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    (e)    **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within sixty (60) days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to sixty (60) days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any

successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the Paragraph 16, "Environmental Law" means federal laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security

Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If after complying with all applicable statutory notice provisions Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public venue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Substitute Trustee. Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed

hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts acquired by Lender by assignment or are released by the holder thereof upon payment.

22. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

23. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Other(s) [specify] | |

24. **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**
Check box as applicable:

☒ **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

☐ **Other**

25. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the

FHA Texas Deed of Trust - 2/01

00000TXX
00000TXX.vzx   02/22/2004

Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 25.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

7/15/04

- BORROWER - TRAVIS CHESTNUT - DATE -

7/15/04

- BORROWER - AMY CHESTNUT - DATE -



[Space Below This Line For Acknowledgment

State of       Texas
County of       Travis
This instrument was acknowledged before me on    July 15, 2004        , by

TRAVIS CHESTNUT AND AMY CHESTNUT

SUSAN L. GRAHAM
MY COMMISSION EXPIRES
April 23, 2006

_____
(Signature of Officer)
(Title of Officer)_____
My commission expires:

DOTX10TX10
DOCUTXXA.VXX   12/12/2003

FHA Texas Deed of Trust - 2/91

Unofficial Document

# PLANNED UNIT DEVELOPMENT RIDER

CHESTNUT
LOAN NUMBER:
CASE NUMBER:                    13-

THIS PLANNED UNIT DEVELOPMENT RIDER is made this    15TH                         day of
JULY , 2004                        , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Note ("Note") to    ALETHES, LLC

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

1234 ACANTHUS STREET, PFLUGERVILLE, TX 78660

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

HEATHERWILDE

[Name of Planned Unit Development]

PUD COVENANTS.  In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities),
    acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a
    "master" or "blanket" policy insuring the property located in the PUD, including all improvements
    now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender
    and provides insurance coverage in the amounts, for the periods, and against the hazards Lender
    requires, including fire and other hazards included within the term "extended coverage," and loss by
    flood, to the extent required by the Secretary, then (i) Lender waives the provision in Paragraph 2 of
    this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium
    installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of
    this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to
    the extent that the required coverage is provided by the Owners Association policy.  Borrower shall
    give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss
    occurring from a hazard.  In the event of a distribution of hazard insurance proceeds in lieu of
    restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any
    proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the
    sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating
    and governing the PUD.

DOCURFM1
DOCURFBL.VTX   07/07/2000
Page 1 of 2                          FHA Multistate PUD Rider - 6/96

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

- BORROWER - TRAVIS CHESTNUT - DATE -    7/15/04

- BORROWER - AMY CHESTNUT - DATE -    7/15/04

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

2004 Jul 16 12:55 PM    2004136502
EVANSK $36.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

534 85 874

601032469

# NOTE

CHESTNUT
LOAN NUMBER:
CASE NUMBER:
MINIMUM:

JULY 15, 2004
[Date]
1234 ACANTHUS STREET PFLUGERVILLE, TX 78660

[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means ALETHES, LLC
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED SIXTEEN THOUSAND FIVE HUNDRED SEVENTY-EIGHT AND 00/100                                      Dollars
(U.S.$ 116,578.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of   SIX AND ONE-FOURTH
percent (  6.250                   %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time
Borrower shall make a payment of principal and interest to Lender on the  1ST   day of each month beginning on
SEPTEMBER 1, 2004          . Any principal and interest remaining on          AUGUST 1, 2034            ,
will be due on that date, which is called the maturity date.

(B) Place
Payment shall be made at  12885 RESEARCH BLVD., STE 202 AUSTIN, TX 78750

or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S.$  717.79        . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for Payment Adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.  [Check applicable box.]

☐ Graduated Payment Allonge     ☐ Growing Equity Allonge    ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

EXHIBIT

A-2

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of   FOUR                                       , percent (   4.000                        %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive notice of intention to accelerate, except as provided in Section 6 (B) above, and the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ 7/15/04
BORROWER - TRAVIS CHESTNUT - DATE -

_____ 7/15/04
BORROWER - AMY CHESTNUT - DATE -

PAY TO THE ORDER OF **GMAC BANK.**

WITHOUT RECOURSE
ALETHES, LLC

BY: _____

POA NORMAN KOCH VICE-PRESIDENT
FIRST STATE BANK BREMOND

Pay to the Order of
GMAC Mortgage Corporation
Without Recourse

Joanne Wight, Vice President
Acting Agent for GMAC Bank

PAY TO THE ORDER OF
**MIDFIRST BANK**
WITHOUT RECOURSE

D. Chiodo
Limited Signing Officer
Acting Agent for
GMAC MORTGAGE CORPORATION

# SPECIFIC
# POWER OF ATTORNEY

Pursuant to that certain Mortgage Purchase Agreement (the "Agreement") dated February 5, 2003 between ALETHES, L.L.C. (the "Company"), a Texas Corporation, and First State Bank Bremond (the "Bank"), which Agreement is hereby incorporated herein, the Company designates and appoints the Bank, its successors and assigns as the Company's true and lawful agent and attorney-in-fact with full power of substitution and with the power and authority to endorse and deliver all promissory notes and to execute and deliver all assignments of Mortgages and other security for such promissory notes, to either the Bank itself, any Investor or any other person or entity and to execute and deliver any and all other papers as the Bank or its substitutes shall deem necessary, appropriate or incidental to the administration and execution of any of the covenants, agreements or transactions provided for in or contemplated by the Agreement in the Company's name, place and stead and at any time and from time to time, and any such act by the Bank, its successors, substitutes or assigns, shall have the same force and effect as if done by the Company itself pursuant to a duly adopted resolution of its then incumbent board of directors. This power is coupled with an interest for so long as the Agreement remains in force and for so long as the Company is obligated to the Bank, its successors or assigns under or in respect of the Agreement, and shall be irrevocable for such duration.

ALETHES, L.L.C.

By: _____

Name: _S. Danny L. Smith_

Title: _CEO / President_

Date: _2/18/2003_

UNOFFICIAL Document (watermark)

Prepared by Sarah Fonseca
After recording return to:
MidFirst Bank
2730 N Portland
OKC, OK 73107
MERS# 52498874

1/7
2009 0610 600 661

2009079539
2 PGS

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc., as nominee for Alethes, LLC, PO Box 2026, Flint, MI, 48501-2026 (hereinafter called the "Assignor"), does hereby grant, convey, assign, transfer, and set over to MidFirst Bank, a Federally Chartered Savings Association, 999 NW Grand Blvd., Suite 100, Oklahoma City, OK 73118, (hereinafter called the "Assignee"), its successors and assigns, all of the Assignor's rights, title and interest in and to:

1.  The Promissory Note (herein called the "Note"), evidencing the indebtedness secured by the Mortgage/Deed of Trust.

2.  The Mortgage dated 7/15/04, executed by Travis Chestnut and Amy Chestnut, husband and wife, to Mortgage Electronic Registration Systems, Inc., as nominee for Alethes, LLC, recorded on 7/16/04 as Document No. 2004136552, in the Office of the Recorder, County of Travis, State of Texas, covering the following described property and all improvements as more fully described in the Deed of Trust referred to herein.

    LOT 18, BLOCK B, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87 PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 2000188027 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

    Property Address: 1234 Acanthus Street, Pflugerville, TX 78660

    Parcel ID: 0278360504 0000

In witness whereof, the undersigned corporation has caused this instrument to be executed this 22nd day of April, 2009.

Mortgage Electronic Registration Systems, Inc., as nominee for Alethes, LLC

Vice President    Jeri Bassett

State of Oklahoma
County Of Oklahoma

On this 22nd day of April, 2009, before me, a Notary Public, in and for said county, personally appeared Jeri Bassett, to me personally known, who being by me duly sworn, did say that she is the Vice President of Mortgage Electronic Registration Systems, Inc., as nominee for Alethes, LLC, and that the within instrument was signed on behalf of said corporation by authority of its Board of Directors, and that they acknowledged the execution of said instrument to be the voluntary act and deed of said corporation, executed for the uses and purposes set forth.

In testimony whereof, I have hereunto set my hand and official seal this 22nd day of April, 2009.
(Seal)

Notary Public:    Crystal Klohn
My Commission Exp:    5/11/10

After Recording Return To:
Barrett Daffin Frappier Turner and Engel, LLP.
15000 Surveyor Blvd., Suite 100
Addison, TX 75001
Attn: NDEx Title Services, L.L.C.

EXHIBIT
A-3

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

2009 May 15 10:42 AM    2009079539
HAYWOODK $20.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS



NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

15/ITC/091609-RBD

## Special Warranty Deed With Vendor's Lien

KNOW ALL MEN BY THESE PRESENTS, that SMOKE SIGNAL PASS LLC ("Grantor"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration to Grantor in hand paid by KARL BAILEY JR. AND REBECCA BAILEY (collectively, "Grantee"), the receipt and sufficiency of which are hereby acknowledged and confessed, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto said Grantee, the property commonly known as 1234 Acanthus Street, Pflugerville, TX 78660, and further described as

Lot 18, Block B, HEATHERWILDE, SECTION THREE, A SMALL LOT SUBDIVISION, according to the map or plat thereof, recorded in Volume 87, Page 57C, Plat Records, Travis County, Texas.

(together with all improvements, rights and appurtenances, the "Property")

This conveyance, however, is made and accepted subject to the Vendor's Lien retained in Deed recorded as Document No. 2004136581 in the Official Public Records of Travis County, Texas, the Deed of Trust recorded as Document No. 2004136582 in the Official Public Records of Travis County, Texas, and assigned by instrument recorded as Document No. 2009079539 in the Official Public Records of Travis County, Texas, and any and all validly existing encumbrances, conditions and restrictions, relating to the Property as now reflected by the Official Public Records of Travis County, Texas.

A portion of the consideration to be paid to Grantor was advanced by Grantor at the special instance and request of Grantee, which amount constitutes a portion of the proceeds of a loan from Grantor to Grantee evidenced by those certain Notes Secured by Wraparound Mortgage of even date herewith executed by Grantee in the aggregate original principal amount of One Hundred Twenty-One Thousand Fifty and No/100 Dollars ($121,050.00) (the "Notes"). The Notes are secured by the vendor's lien and superior title herein retained by Grantor and by the lien created by that certain Deed of Trust (Wraparound Mortgage), dated as of even date herewith executed, by Grantee in favor of Drew Shirley, P.C., Trustee, for the benefit of Grantor, covering the Property.

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereunto in anywise belonging unto said Grantee, its successors and assigns, forever. And Grantor does hereby bind itself and its successors to WARRANT and FOREVER DEFEND all and singular the Property unto said Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTOR AND GRANTEE AGREE THAT GRANTEE IS TAKING THE PROPERTY "AS IS" WITH ANY AND ALL LATENT AND PATENT DEFECTS AND THAT THERE IS NO WARRANTY BY GRANTOR THAT THE PROPERTY IS FIT FOR A PARTICULAR PURPOSE. GRANTEE ACKNOWLEDGES THAT GRANTEE IS NOT RELYING UPON ANY REPRESENTATIONS, STATEMENTS, ASSERTIONS, OR NON-ASSERTIONS BY THE GRANTOR WITH RESPECT TO THE PROPERTY CONDITION, BUT IS RELYING SOLELY UPON ITS EXAMINATION OF THE PROPERTY. GRANTEE TAKES THE PROPERTY UNDER THE EXPRESS UNDERSTANDING

Special Warranty Deed With Vendor's Lien – Page 1

Austin Data Inc.   TH   ADI11909   TR   2009136933.001

EXHIBIT
A-4

THAT THERE ARE NO EXPRESS OR IMPLIED WARRANTIES (EXCEPT FOR THE LIMITED WARRANTIES OF TITLE SET FORTH HEREIN).

But it is expressly agreed and stipulated that the Vendor's Lien is retained against the Property until the above-described Notes, and all interest thereon, are fully paid according to its face and tenor, effect and reading, when this Deed shall become absolute.

This Special Warranty Deed with Vendor's Lien is EXECUTED to be effective as of the 31st day of July, 2009.

GRANTOR:

SMOKE SIGNAL PASS LLC

By: _____, Manager
Eric J. Lee, Manager

STATE OF TEXAS          §
                        §
COUNTY OF TRAVIS        §

This instrument was acknowledged before me on July 31, 2009, by Eric J. Lee, Manager of Smoke Signal Pass LLC.

_____
Notary Public, State of Texas

S. A. MANGUM
MY COMMISSION EXPIRES
May 29, 2012

AFTER RECORDING RETURN TO:
Karl and Rebecca Bailey          Independence Title Company
1234 Acanthus Street                11215 S. IH35, Ste. 114
Pflugerville, TX 78660                Austin, TX 78747

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

2009 Aug 12 12:03 PM    2009136933
PEREZTA $20.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

Special Warranty Deed With Vendor's Lien – Page 2

Austin Data Inc.   TH   ADI11909   TR   2009136933.002

## GENERAL WARRANTY DEED

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

STATE OF TEXAS §
§
COUNTY OF TRAVIS §  KNOW ALL MEN BY THESE PRESENTS:

That TRAVIS CHESTNUT and wife, AMY CHESTNUT of TRAVIS COUNTY, STATE OF TEXAS, hereinafter referred to as "Grantor", for and in consideration of the sum of $10.00 and other good and valuable consideration to Grantor in hand paid, the receipt of which is hereby acknowledged, has GRANTED, SOLD, and CONVEYED, and by these presents does GRANT, SELL, and CONVEY unto SMOKE SIGNAL PASS LLC, whose mailing address is P.O. BOX 140871, AUSTIN, TEXAS 78714-0871, hereinafter referred to as "Grantee", the following described property situated in TRAVIS COUNTY, TEXAS:

LOT 18, BLOCK B, OF HEATHERWILDE SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87 PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 2000188927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

This conveyance is made and accepted subject to the following matters, to the extent same are in effect at this time: Any and all restrictions, covenants, and easements, if any, relating to the hereinabove described property, but only to the extent they are still in effect, shown of record in the hereinabove mentioned County and State, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are still in effect, relating to the herein above described property.

This conveyance is further made and accepted subject to any liens recorded prior to the date of this conveyance, as found in the Real Property Records of TRAVIS COUNTY, TEXAS.

TO HAVE AND TO HOLD the above described premises, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the said Grantee, his successors and assigns forever; and the said Grantor does hereby bind herself, her heirs, executors, administrators, and assigns, to WARRANT AND FOREVER DEFEND, all and singular, the said premises unto the said Grantee, his successors and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

EXECUTED this 30TH day of JULY, 2009

BY: _____
TRAVIS CHESTNUT

BY: _____
AMY CHESTNUT

### ACKNOWLEDGEMENT

STATE OF TEXAS §
§
COUNTY OF TRAVIS §

This instrument was acknowledged before me by TRAVIS CHESTNUT and AMY CHESTNUT on this 30th day of JULY, 2009, for the purposes therein expressed.

Independence Title Company
11215 S. IH35, Ste. 114
Austin, TX 78747

_____
Notary Public, State of Texas

After Recording Return to:
ERIC J LEE, as Manager
P.O. BOX 140871
AUSTIN, TEXAS 78714-0871



S.A. MANGUM
MY COMMISSION EXPIRES
May 18, 2012



FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

2008 Aug 12 12:03 PM 2008128032

FEE:$20.00

DANA DEBEAUVOIR COUNTY CLERK

TRAVIS COUNTY TEXAS

Unofficial Document

 **Midland Mortgage Co.**
**Delinquency Assistance Center**
P.O. Box 26646, Oklahoma City, OK 73126 • Phone (800) 552-3000

08/25/10

**/**
**/**REV**4.05***
**/**TRAVIS CHESTNUT
P.O. BOX 140871
AUSTIN          TX  78714-0871

RE:    1234 ACANTHUS STREET
       PFLUGERVILLE      TX  78660

Dear Mortgagor:

Pursuant to the terms of your Mortgage/Deed of Trust and security instrument, you are hereby served notice of the following:

A.      Your Note and security instrument are presently in default due to the non-payment of the 05/01/10 and subsequent installments.

B.    Your total delinquency for the 05/01/10 through 08/01/10 installments is $5925.69, including late charges and allowable fees. If any other installments become due at the time you attempt to cure this default, they will be added to this figure.

C.    To cure this default, you must pay the full amount as stated in item "B" above to Midland Mortgage Co. at the Expedited Payment Processing address shown on your payment coupon.

D.    If this amount is not in our possession within 30 days of the date of this notice, we intend to proceed with foreclosure and accelerate the loan balance without further notice to you. In such case, your property will be sold at a foreclosure sale and you will be required to vacate the premises. You have the right to reinstate the loan after acceleration and the right to assert in the foreclosure proceeding (a) the non-existence of a default and/or (b) any other defense to acceleration of the loan and sale of the property. If the default is not cured within the time specified in this notice, Midland will declare all of the sums secured by this Mortgage/Deed of Trust to be immediately due and payable without further demand, and we will invoke the power of sale and any other remedies that are permitted by applicable law. We shall be entitled to collect all reasonable costs and expenses incurred in pursuing these remedies in accordance with the terms of your security instrument.

Mortgage Servicer:   Midland Mortgage Co.

Mortgagee:    MERS
Address:      PO BOX 2026
              FLINT MI 48501-2026

The Mortgage Servicer above is acting as the Mortgage Servicer for the Mortgagee listed above, who is the Mortgagee of the Note and Deed of Trust associated with your real estate loan. The Mortgage Servicer represents the Mortgagee, whose address is shown above. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

Loan Number [                                                                      Page 1

*If you have received a bankruptcy discharge of the debt secured by the Mortgage/Deed of Trust or you are currently in bankruptcy under the protection of the automatic stay, this letter is not an attempt to collect the debt, but any default will need to be cured to avoid foreclosure. If your loan was in default at the time Midland began servicing it and you have not filed bankruptcy or received a discharge of the debt secured by the Mortgage/Deed of Trust, we are required to advise you that this communication is from a debt collector, this is an attempt to collect a debt, and any information obtained will be used for that purpose.


**EXHIBIT**
**A-5**

 **Midland Mortgage Co.**
**Delinquency Assistance Center**
P.O. Box 26648, Oklahoma City, OK 73126 • Phone (800) 552-3000

*Please be advised that pursuant to Section 269 of the Housing and Community Development Act of 1987, you have the opportunity to receive counseling from various local agencies regarding the retention of your home. You may secure a list of these agencies by contacting the office of the Department of Housing and Urban Development (HUD) nearest you.*

All notices, payments, correspondence, and other communications regarding your real estate loan should continue to be directed to Midland Mortgage Co. It is important that you call our office to discuss the options available to you. Our Loan Counselors may be reached toll-free at 1-800-552-3000, Monday through Friday, 8:00 a.m. to 9:00 p.m. (Central Time).

Sincerely,

Delinquency Assistance Center
Midland Mortgage Co.

179                                                                                          Page 2

*If you have received a bankruptcy discharge of the debt secured by the Mortgage/Deed of Trust or you are currently in bankruptcy under the protection of the automatic stay, this letter is not an attempt to collect the debt, but any default will need to be cured to avoid foreclosure. If your loan was in default at the time Midland began servicing it and you have not filed bankruptcy or received a discharge of the debt secured by the Mortgage/Deed of Trust, we are required to advise you that this communication is from a debt collector, this is an attempt to collect a debt, and any information obtained will be used for that purpose.



# Midland Mortgage Co.
## Delinquency Assistance Center
P.O. Box 26648, Oklahoma City, OK 73126 • Phone (800) 552-3000

08/25/10

**REV**4.05**
AMY CHESTNUT
P.O. BOX 140871
AUSTIN          TX 78714-0871

RE:    1234 ACANTHUS STREET
       PFLUGERVILLE       TX 78660

Dear Mortgagor:

Pursuant to the terms of your Mortgage/Deed of Trust and security instrument, you are hereby served notice of the following:

A.   Your Note and security instrument are presently in default due to the non-payment of the 05/01/10 and subsequent installments.

B.   Your total delinquency for the 05/01/10 through 08/01/10 installments is $5925.69, including late charges and allowable fees. If any other installments become due at the time you attempt to cure this default, they will be added to this figure.

C.   To cure this default, you must pay the full amount as stated in item "B" above to Midland Mortgage Co. at the Expedited Payment Processing address shown on your payment coupon.

D.   If this amount is not in our possession within 30 days of the date of this notice, we intend to proceed with foreclosure and accelerate the loan balance without further notice to you. In such case, your property will be sold at a foreclosure sale and you will be required to vacate the premises. You have the right to reinstate the loan after acceleration and the right to assert in the foreclosure proceeding (a) the non-existence of a default and/or (b) any other defense to acceleration of the loan and sale of the property. If the default is not cured within the time specified in this notice, Midland will declare all of the sums secured by this Mortgage/Deed of Trust to be immediately due and payable without further demand, and we will invoke the power of sale and any other remedies that are permitted by applicable law. We shall be entitled to collect all reasonable costs and expenses incurred in pursuing these remedies in accordance with the terms of your security instrument.

Mortgage Servicer:   Midland Mortgage Co.

Mortgagee:     MERS
Address:       PO BOX 2026
               FLINT MI 48501-2026

The Mortgage Servicer above is acting as the Mortgage Servicer for the Mortgagee listed above, who is the Mortgagee of the Note and Deed of Trust associated with your real estate loan. The Mortgage Servicer represents the Mortgagee, whose address is shown above. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

Loan Number ____                                                        Page 1

*If you have received a bankruptcy discharge of the debt secured by the Mortgage/Deed of Trust or you are currently in bankruptcy under the protection of the automatic stay, this letter is not an attempt to collect the debt, but any default will need to be cured to avoid foreclosure. If your loan was in default at the time Midland began servicing it and you have not filed bankruptcy or received a discharge of the debt secured by the Mortgage/Deed of Trust, we are required to advise you that this communication is from a debt collector; this is an attempt to collect a debt, and any information obtained will be used for that purpose.



# Midland Mortgage Co.
# Delinquency Assistance Center
P.O. Box 26648, Oklahoma City, OK 73126 • Phone (800) 552-3000

*Please be advised that pursuant to Section 269 of the Housing and Community Development Act of 1987, you have the opportunity to receive counseling from various local agencies regarding the retention of your home. You may secure a list of these agencies by contacting the office of the Department of Housing and Urban Development (HUD) nearest you.*

All notices, payments, correspondence, and other communications regarding your real estate loan should continue to be directed to Midland Mortgage Co. It is important that you call our office to discuss the options available to you. Our Loan Counselors may be reached toll-free at 1-800-552-3000, Monday through Friday, 8:00 a.m. to 9:00 p.m. (Central Time).

Sincerely,

Delinquency Assistance Center
Midland Mortgage Co.

179

*If you have received a bankruptcy discharge of the debt secured by the Mortgage/Deed of Trust or you are currently in bankruptcy under the protection of the automatic stay, this letter is not an attempt to collect the debt, but any default will need to be cured to avoid foreclosure. If your loan was in default at the time Midland began servicing it and you have not filed bankruptcy or received a discharge of the debt secured by the Mortgage/Deed of Trust, we are required to advise you that this communication is from a debt collector, this is an attempt to collect a debt, and any information obtained will be used for that purpose.



# Midland Mortgage Co.
# Delinquency Assistance Center
P.O. Box 26648, Oklahoma City, OK 73126 • Phone (800) 552-3000

08/25/10

***REV**4.05***
TRAVIS CHESTNUT
1234 ACANTHUS STREET
PFLUGERVILLE     TX  78660

RE:   1234 ACANTHUS STREET
      PFLUGERVILLE     TX  78660

Dear Mortgagor:

Pursuant to the terms of your Mortgage/Deed of Trust and security instrument, you are hereby served notice of the following:

A.  Your Note and security instrument are presently in default due to the non-payment of the 05/01/10 and subsequent installments.

B.  Your total delinquency for the 05/01/10 through 08/01/10 installments is $5925.69, including late charges and allowable fees. If any other installments become due at the time you attempt to cure this default, they will be added to this figure.

C.  To cure this default, you must pay the full amount as stated in item "B" above to Midland Mortgage Co. at the Expedited Payment Processing address shown on your payment coupon.

D.  If this amount is not in our possession within 30 days of the date of this notice, we intend to proceed with foreclosure and accelerate the loan balance without further notice to you. In such case, your property will be sold at a foreclosure sale and you will be required to vacate the premises. You have the right to reinstate the loan after acceleration and the right to assert in the foreclosure proceeding (a) the non-existence of a default and/or (b) any other defense to acceleration of the loan and sale of the property. If the default is not cured within the time specified in this notice, Midland will declare all of the sums secured by this Mortgage/Deed of Trust to be immediately due and payable without further demand, and we will invoke the power of sale and any other remedies that are permitted by applicable law. We shall be entitled to collect all reasonable costs and expenses incurred in pursuing these remedies in accordance with the terms of your security instrument.

Mortgage Servicer:   Midland Mortgage Co.

Mortgagee:   MERS
Address:   PO BOX 2026
           FLINT MI 48501-2026

The Mortgage Servicer above is acting as the Mortgage Servicer for the Mortgagee listed above, who is the Mortgagee of the Note and Deed of Trust associated with your real estate loan. The Mortgage Servicer represents the Mortgagee, whose address is shown above. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

Loan Number                                                                           Page 1

*If you have received a bankruptcy discharge of the debt secured by the Mortgage/Deed of Trust or you are currently in bankruptcy under the protection of the automatic stay, this letter is not an attempt to collect the debt, but any default will need to be cured to avoid foreclosure. If your loan was in default at the time Midland began servicing it and you have not filed bankruptcy or received a discharge of the debt secured by the Mortgage/Deed of Trust, we are required to advise you that this communication is from a debt collector, this is an attempt to collect a debt, and any information obtained will be used for that purpose.

CAUSE NO. D-1-GN-11-000558

| KARL B. BAILEY, JR. | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| MIDFIRST BANK; SMOKE SIGNAL | § | 250TH JUDICIAL DISTRICT |
| PASS, LLC; ERIC J. LEE; KW | § | |
| MANAGEMENT, LLC, d/b/a Keller | § | |
| Williams | § | |
| | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## AFFIDAVIT OF BECKY HOWELL

| THE STATE OF TEXAS | § |
|---|---|
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned notary public, on this day personally appeared BECKY HOWELL, who being by me duly sworn, on this oath stated that she is authorized in all respects to make this affidavit; and that every statement contained in this affidavit is within her personal knowledge:

1.     "My name is Becky Howell. I ɛ        e of eighteen (18), have never been convicted of a crime involving moral turpitude        ompetent to provide this testimony. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.     "I am the Chief Administrative Officer of Foreclosure for National Default Exchange, LP, an affiliated service provider for Barrett Daffin Frappier Turner & Engel, LLP ('BDFTE'), and I am responsible for all default servicing activities by BDFTE involved in relation to Travis and Amy Chestnut's ("Mortgagors") loan on behalf of Movant, the holder or owner of the Mortgagors' mortgage.



3.    "In my capacities, my duties have included the supervision of conducting foreclosure sales on behalf of BDFTE's clients, including the supervision of the mailing of a reinstatement quote, the notice of sale, the filing of the notice of sale, and the recording of the substitute trustee's deed, as appropriate on each given matter. I personally am familiar with the standard business practices of BDFTE in the service of these notices. In preparation for this affidavit, I have reviewed the business records of BDFTE, including, but not limited to, the notices of acceleration and notices of trustee sale provided by BDFTE on behalf of MidFirst Bank (referred to as "Movant"), to Travis and Amy Chestnut for the loan secured by the property commonly known as 1234 Acanthus Street, Pflugerville, Texas 78660 (the 'Property'). I personally am familiar with these records.

4.    The records attached to this Affidavit are records which were obtained and kept in the regular course of business by BDFTE for purposes of liquidating the security for the Mortgagor's loan so that Movant could obtain payment for the purchase money advanced for the Property. The records attached to Movant's Motion for Summary Judgment and this Affidavit include documents from Movant in the custody of BDFTE and real property records of the county where the Property made the subject of this suit is located. The records are the source of the exhibits attached to Movant's Motion for Summary Judgment and this Affidavit. It was in the regular course of business that BDFTE or an employee or representative of BDFTE obtained these documents and records which were kept and generated in Movant's regular course of business which is essential and required to properly administer the loan file for Movant. BDFTE is the duly authorized agent and custodian for Movant with respect to the Mortgagors' loan file. As to the business records attached to Movant's Motion for Summary Judgment and this Affidavit, BDFTE, with knowledge of the act, event, condition or opinion recorded, obtained the

business records which were received, checked, verified and then incorporated into, and made an integral part of, BDFTE's business records and file, and kept in its regular course of business; or BDFTE made the record or transmitted the information to be included in such records. The records were made at or near the time, or reasonably soon after the act, event, or condition recorded. The records attached to Movant's Motion for Summary Judgment and this Affidavit are the originals or exact duplicates of the original.

5.    Upon my review and examination of the documents, the attached notices of acceleration and notices of sale were mailed to the Mortgagors via certified U.S. mail. A true and correct copy of the notices of acceleration and notices of sale are attached hereto and incorporated herein as **Exhibit "B-1."** In addition, a true and correct copy of the Substitute Trustee's Deed recorded in the real property records of Travis County, Texas is attached hereto and incorporated herein as **Exhibit "B-2".**

**FURTHER AFFIANT SAYETH NOT.**

SIGNED this ___ day of _____, 2013.

AFFIANT

Becky Howell

SUBSCRIBED AND SWORN TO BEFORE ME on the ___ day of _____, 2013, to certify which; witness my hand and official seal.

Notary Public in and for
the State of Texas

MICHELLE MARTIN
Notary Public
State of Texas
My Comm. Exp. 01-21-2015

AFFIDAVIT OF BECKY HOWELL
BDFTE NO. 20100010301513 Chestnut

Page 3



7160 9668 9670 5015 4262

AMY CHESTNUT
16701 N HEATHERWILDE BLVD APT 1033
PFLUGERVILLE, TX 78660

CASEKEY: 20100010601513

---

# IMPORTANT INFORMATION IS CONTAINED WITHIN THE ATTACHED NOTICE.

## PLEASE READ CAREFULLY

CERT

# BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

FCUS_Std_Banner_Portrait_DocGen.rpt - (07/20/10) / Ver-37



**Barrett Daffin Frappier Turner & Engel, LLP**
A Partnership Including Professional Corporations
ATTORNEYS AND COUNSELORS AT LAW
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001
Telephone: (972) 419-1163
Telecopier: (972) 386-7673

November 05, 2010

Certified Mail 7160 9668 9670 5015 4262
AMY CHESTNUT
16701 N HEATHERWILDE BLVD APT
1033
PFLUGERVILLE, TX 78660

RE:    Mortgage Servicer:    MIDLAND MORTGAGE CO.
       Loan No.:
       BDFTE No.:    20100010601513

This law firm represents MIDLAND MORTGAGE CO., the Mortgage Servicer, in its mortgage banking activities in the State of Texas. We have been authorized by the Mortgage Servicer to initiate legal proceedings in connection with the foreclosure of a Deed of Trust associated with your real estate loan (the "Debt").

MIDLAND MORTGAGE CO. is acting as the Mortgage Servicer for MIDFIRST BANK, who is the Mortgagee of the Note and Deed of Trust associated with the above referenced loan. MIDLAND MORTGAGE CO., as Mortgage Servicer, is representing the Mortgagee, whose address is:

MIDFIRST BANK
c/o MIDLAND MORTGAGE CO.
999 N.W. GRAND BLVD
STE 110
OKLAHOMA CITY, OK 73118-6077

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

This letter is formal notice of the following:

1. Payment of the past due balance on the Debt has not been received by the Mortgage Servicer. Because of this default, the Mortgagee has elected to ACCELERATE the maturity of the Debt.

2. The amount of the Debt as of the date of this notice, according to the records of the Mortgage Servicer, is $113,019.08. Because of interest and other charges that may vary from day to day, the amount due on the day you pay may be greater. If you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write or call the Foreclosure Department of this firm at (972) 419-1163. Payment must be made in certified funds, cashier's check or money order(s).

3. As designated on the enclosed Notice of Trustee's Sale, the Trustee, or the Substitute Trustee, will sell the real estate therein described to the highest bidder for cash.

4. All of the obligors and guarantors (if any) of the Debt have the right to reinstate the loan as provided in the Deed of Trust and as provided by Texas law. You may obtain reinstatement figures by calling the Foreclosure Department of this firm at (972) 419-1163.

5. All of the obligors and guarantors (if any) have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure which they may have.

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**



AFF20100010601513

November 05, 2010

Certified Mail 7160 9668 9670 5015 4262
20100010601513
AMY CHESTNUT
16701 N HEATHERWILDE BLVD APT
1033
PFLUGERVILLE, TX 78660

Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the Debt or any part thereof. If you don't dispute the Debt within that period, this firm will assume that the Debt is valid. If you do dispute the Debt by notifying this firm in writing, the firm will obtain and mail verification of the Debt to you. If within the same period, you request in writing the name and address of the original mortgagee, and if the original mortgagee is different from the current mortgagee, this firm will furnish you with that information.

The law does not require this firm to wait until the end of the thirty-day period before taking action to collect the Debt. If, however, you have requested verification of the Debt or the name and address of the original mortgagee within the time stated above, this firm will cease collection activities until such requested information has been mailed to you.

If you are not obligated on the Debt, or if the Debt has been discharged in a bankruptcy proceeding, the Mortgage Servicer is not attempting to collect from you personally. You are being given this notice as a courtesy because your interest in the Real Estate may be affected.

Sincerely,

Barrett Daffin Frappier Turner & Engel, LLP

Enclosed: Notice of Trustee Sale

1234 ACANTHUS STREET
PFLUGERVILLE, TX 78660

## NOTICE OF SUBSTITUTE TRUSTEE SALE

Deed of Trust

Date: July 15, 2004

Grantor(s):

AMY CHESTNUT
TRAVIS CHESTNUT

Original Mortgagee:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE

Current Mortgagee:

MIDFIRST BANK
999 N.W. GRAND BLVD.
OKLAHOMA CITY, OK 73118

Mortgage Servicer:

MIDLAND MORTGAGE CO.

Recorded in:     CLERK'S FILE NO. 2004136582

Property County: TRAVIS

Legal Description:

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.

Date of Sale: January 04, 2011

Earliest Time Sale will Begin: 10:00AM

Place of Sale of Property:

THE REAR "SALLYPORT" OF THE TRAVIS COUNTY COURTHOUSE1000 GUADALUPE STREET, AUSTIN, TEXAS 78701, OR THE PLACE DESIGNATED BY THE COUNTY COMMISSIONERS COURT

The Substitute Trustee will sell the property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

MIDLAND MORTGAGE CO. is acting as the Mortgage Servicer for MIDFIRST BANK, who is the Mortgagee of the Note and Deed of Trust associated with the above referenced loan. MIDLAND MORTGAGE CO., as Mortgage Servicer, is representing the Mortgagee, whose address is:

MIDFIRST BANK
c/o MIDLAND MORTGAGE CO.
999 N.W. GRAND BLVD STE 110
OKLAHOMA CITY, OK 73118-6077

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

TOBEY LATHAM, STEVE UTLEY OR WENDY ALEXANDER

Substitute Trustee

c/o   Barrett Daffin Frappier Turner & Engel, LLP
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001



NOS20100010601513

## EXHIBIT "A"

LOT 18 BLOCK B, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87, PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 2000188927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

1234 ACANTHUS STREET                                    4957012473703
PFLUGERVILLE, TX 78660                                  20100010601513

## NOTICE OF SUBSTITUTE TRUSTEE SALE

Deed of Trust

Date:   July 15, 2004

Grantor(s):

AMY CHESTNUT
TRAVIS CHESTNUT

Original Mortgagee:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE

Current Mortgagee:

MIDFIRST BANK
999 N.W. GRAND BLVD.
OKLAHOMA CITY, OK 73118

Mortgage Servicer:

MIDLAND MORTGAGE CO.

Recorded in: CLERK'S FILE NO. 2004136582

Property County: TRAVIS

Legal Description:

LOT 18 BLOCK B, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87, PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 2000188927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

Date of Sale: Tuesday, January 4, 2011

Earliest Time Sale will Begin: 10:00AM

Place of Sale of Property:

THE REAR "SALLYPORT" OF THE TRAVIS COUNTY COURTHOUSE 1000 GUADALUPE STREET, AUSTIN, TEXAS 78701, OR THE PLACE DESIGNATED BY THE COUNTY COMMISSIONERS COURT.

The Substitute Trustee will sell the property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

MIDLAND MORTGAGE CO. is acting as the Mortgage Servicer for MIDFIRST BANK, who is the Mortgagee of the Note and Deed of Trust associated with the above referenced loan. MIDLAND MORTGAGE CO., as Mortgage Servicer, is representing the Mortgagee, whose address is:

MIDFIRST BANK
c/o MIDLAND MORTGAGE CO.
999 N.W. GRAND BLVD STE 110
OKLAHOMA CITY, OK 731186077

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

Dated this November 15, 2010.



TOBEY LATHAM, STEVE UTLEY OR WENDY ALEXANDER
Substitute Trustee
c/o BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001



NOS20100010601513

NSTSXSID.rpt- (02/24/2010) - Ver-13

TRV 2011006182
3 PGS

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

1234 ACANTHUS STREET
PFLUGERVILLE, TX 78660
4957012475703
20100010601513

## SUBSTITUTE TRUSTEE'S DEED

GRANTOR(S):
   AMY CHESTNUT
   TRAVIS CHESTNUT

ORIGINAL MORTGAGEE:
   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE

DEED OF TRUST DATE: July 15, 2004
DATE OF SALE OF PROPERTY: January 4, 2011

TIME OF SALE: 10:14 AM/PM

PLACE OF SALE OF PROPERTY:
THE REAR "SALLYPORT" OF THE TRAVIS COUNTY COURTHOUSE 1000 GUADALUPE STREET, AUSTIN, TEXAS 78701, OR THE PLACE DESIGNATED BY THE COUNTY COMMISSIONERS COURT

CURRENT MORTGAGEE:
   MIDFIRST BANK

MORTGAGE SERVICER:
   MIDLAND MORTGAGE CO.:

GRANTEE/BUYER:
   MIDFIRST BANK

GRANTEE/BUYER'S MAILING ADDRESS:
999 N.W. GRAND BLVD.
OKLAHOMA CITY, OK 73118

RECORDED IN:
   CLERK'S FILE NO. 2004136582

AMOUNT OF SALE: $118,742.11

PROPERTY COUNTY/LEGAL DESCRIPTION: TRAVIS
LOT 18 BLOCK B, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87, PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 2000188927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

Grantor conveyed the property to Trustee in trust to secure payment of the Note. Mortgagee, through the Mortgage Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee of the Note, through the Mortgage Servicer, accordingly has appointed Substitute Trustee and requested Substitute Trustee to enforce the trust.

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law. Substitute Trustee sold the property to Buyer, who was the highest bidder at the public auction, for amount of sale in the manner prescribed by law. The subject sale was conducted no earlier than 10:00AM as set forth in the Notice of Substitute Trustee's Sale and was concluded within three (3)hours of such time. All matters, duties and obligations of Mortgagee were lawfully performed.

Substitute Trustee, subject to any matters of record, and for amount of sale paid by buyer as consideration, grants, sells and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor. Substitute Trustee hereby sells the above referenced property AS IS without any expressed or implied warranties, except as to warranties of title, and hereby conveys the property to the purchaser at the purchaser's own risk, pursuant to the terms of Texas Property Code §§ 51.002 and 51.009.

WITNESS MY HAND, this January 04, 2011.

_____ OR WENDY ALEXANDER
Substitute Trustee

STATE OF TEXAS
COUNTY OF WILLIAMSON

Before me, the undersigned Notary Public, on this day personally appeared _____ WENDY ALEXANDER as Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification described as _____, to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this January 05, 2011.

My Commission Expires: _____

_____
Notary Public for the State of TEXAS

_____
Printed Name of Notary Public

RETURN TO:
BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, L.L.P.
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001

Substitute Trustee's Deed (FHA)
SubTrusteeDeedCounty.rpt - (05/04/2009) / Ver-19

STD20100010601513



# STATEMENT OF FACTS

BEFORE ME, the undersigned authority on this day personally appeared Mike Vestal, known to me, who upon oath administered by me deposed and stated:

1. I am a representative of the law firm BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP in connection with the administration of foreclosure of that certain Deed of Trust or Security Instrument ("Deed of Trust") dated July 15, 2004, recorded in CLERK'S FILE NO. 2004136582, Real Property Records, TRAVIS County, TEXAS, executed by TRAVIS CHESTNUT and AMY CHESTNUT ("Grantor").

2. I am making this affidavit based upon certain records maintained within the firm's files in the regular course of its business, which may include images of notices, certified mail forms, the signed Substitute Trustee's Deed, title searches, and other documents and records obtained and maintained in the usual course of business. Together with my general knowledge of mortgage servicer practices for referring foreclosure matters to the firm, the statements and information shown in these records form the basis for the following statements made in this affidavit, which to the best of my knowledge and belief are true.

3. MIDLAND MORTGAGE CO. is the Mortgage Servicer for the Lender or its Nominee concerning the debt evidenced by the Deed of Trust.

4. The Mortgagee, through the Mortgage Servicer declared that the Grantor defaulted in performing the obligations of the Deed of Trust and lawfully performed service of a proper notice of default and other obligations and duties of the Mortgage Servicer.

5. All notices of acceleration were served on each debtor obligated on the debt according to records obtained from the Mortgage Servicer by certified mail at the last known address of each such debtor in accordance with law. Based upon these records, each mortgagor was alive at the time of the foreclosure sale or if deceased, title was restored to the debt owner through a court judgment, or an underwriter's approval letter obtained.

6. At the instructions and on behalf of the Mortgage Servicer, Notices stating the time, place and terms of sale of the property were mailed, posted and filed in accordance with law. Notices were served on each debtor obligated on the debt according to records obtained from the Mortgage Servicer by certified mail at the last known address of each such debtor at least twenty one (21) days before the date of the sale.

7. Through my work at the firm, I know that the firm follows a regular process in foreclosure matters to ascertain a Grantor's military service status for purposes of the federal Service Member's Civil Relief Act and state law. I am familiar with this regular process, which involves submitting Grantors' names and identifying information obtained from the Mortgage Servicer or commercially available records searches to the federal Defense Manpower Data Center ("DMDC") through that agency's official internet search site (the "DMDC Site). Based upon my review of search returns obtained and maintained in the firm's files, no Grantor is reported as on active duty military service or as having concluded active duty military service within the preceding nine months.

AFFIANT: Mike Vestal

JAN 07 2011

STATE OF     TEXAS     }
COUNTY OF     DALLAS     }

Given under my hand and seal of office this _____ day of _____

Notary Seal:

Notary Public for the State of Texas

BROOKE L EWING
Notary Public, State of Texas
My Commission expires
January 28, 2013

AFFIDAVIT - 1356
RETURN TO:
    BARRETT DAFFIN FRAPPIER
    TURNER & ENGEL, LLP
    15000 Surveyor Boulevard, Suite 100
    Addison, Texas 75001

STA20100010601513

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

Jan 12, 2011  03:11 PM    2011006152
HAYWOODK: $24.00
Dana DeBeauvoir, County Clerk
Travis County  TEXAS

# APPENDIX
# TAB D

CAUSE NO. D-1-GN-11-000558

| | | |
|---|---|---|
| KARL B. BAILEY, JR. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff | § | |
| v | § | |
| | § | 250th JUDICIAL DISTRICT |
| | § | |
| MIDFIRST BANK; SMOKE SIGNAL | § | |
| PASS, LLC; ERIC J. LEE; KW | § | |
| MANAGEMENT, LLC, d/b/a Keller | § | |
| Williams | § | |
| | § | |
| Defendants | § | TRAVIS COUNTY, TEXAS |

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S TRADITIONAL & NO-EVIDENCE MOTION FOR SUMMARY
JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Karl B. Bailey, Jr., asks the Court to deny defendant MidFirst Bank's motions

for summary judgment and to grant Plaintiff's motion for summary judgment

against defendant MidFirst Bank.

**INTRODUCTION**

1.    Plaintiff, Karl B. Bailey (Bailey), sued defendant, MidFirst Bank (MidFirst), for

breach of contract, violations of the Texas DTPA, void foreclosure, equitable

estoppel/unjust enrichment and quiet title.

2.    MidFirst answered asserting counter claims for declaratory judgment and a writ

of possession.  MidFirst's chief claim is that Bailey was not a party to the Deed of

Trust, MidFirst was not aware the property in question had been deeded to Bailey

and therefore Bailey has no standing to bring these claims and was not entitled to

notice prior to foreclosure and MidFirst was entitled to keep payments Bailey

made on the note.

2512002146
SLG/04



DT    2004136582

12 PGS

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

Dana DeBeauvoir, County Clerk
By Deputy:

P. MACHADO
JUN 20 2014

When Recorded Return and Mail To:
ALETHES, LLC

12885 RESEARCH BLVD STE 202

AUSTIN, TX 78750
ATTN:

Telephone: _____
Prepared By:
GINNY MILLER
ALETHES, LLC

12885 RESEARCH BLVD STE 202,
AUSTIN, TX 78750

[Space Above This Line For Recording Data]
## DEED OF TRUST

CHESTNUT
LOAN NUMBER: 205368
CASE NUMBER: 495-7012473-703 -
MIN: 100247100002053683

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THIS DEED OF TRUST ("Security Instrument") is made on   JULY 15, 2004          . The grantor is   TRAVIS  CHESTNUT AND AMY  CHESTNUT, HUSBAND AND WIFE

("Borrower"). The trustee is   ROBERT J. WILSON

whose address is     9951 ANDERSON MILL RD. #200 AUSTIN, TX 78750

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of Post Office Box 2026, Flint, Michigan 48501-2026, telephone (888)679-MERS.   ALETHES, LLC

("Lender") is organized and existing under the laws of   TEXAS
and has an address of     12885 RESEARCH BLVD STE 202 AUSTIN, TX 78750

DOCUUTX1
DOCUUTX1.VTX  01/23/2004

Page 1 of 10          FHA Texas Deed of Trust - 2/91

Exhibit 1

205368

Borrower owes Lender the principal sum of
ONE HUNDRED SIXTEEN THOUSAND FIVE HUNDRED SEVENTY-EIGHT AND 00/100
Dollars (U.S. $   116,578.00              ). This debt is evidenced by Borrower's note dated the same
date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not
paid earlier, due and payable on     AUGUST 1, 2034      . This Security Instrument secures to Lender:
(a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and
conveys to Trustee, in trust, with power of sale, the following described property located in
TRAVIS                                                                    County, Texas:
LOT 18, BLOCK B, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS
COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87
 PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS
CORRECTED IN DOCUMENT NUMBER 2000188927 OF THE OFFICIAL PUBLIC RECORDS
OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.


which has the address of     1234 ACANTHUS STREET

                                                          [Street]
PFLUGERVILLE                              Texas    78660
[City]                                                    [Zip Code]         ("Property Address");
TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also
be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for
Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,
but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing, canceling or assigning this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and
has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for
encumbrances of record. Borrower warrants and will defend generally the title to the Property against all
claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of,
and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each
monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum
of (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or
ground rents on the Property, for (c) premiums for insurance required by Paragraph 4. In any year in which
the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development
("Secretary"), or in any year in which such premium would have been required if Lender still held the
Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage
insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage
insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be

JUN 20 2014   P. MACHADO

I, Dana DeBeauvoir, County Clerk, Travis County,
Texas, do hereby certify that this is a true and
correct copy as same appears of record in my office.
Witness my hand and seal of office on

Dana DeBeauvoir, County Clerk
By Deputy:

determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq*. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's accounts shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

*First,* to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

*Second,* to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

*Third,* to interest due under the Note;

*Fourth,* to amortization of the principal of the Note; and

*Fifth,* to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

JUN 2 0 2014

Dana DeBeauvoir County Clerk
By Deputy: P. MACHADO

205368

5.   **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.   **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

7.   **Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.   **Fees.**  Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a)**    **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b)**    **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary. require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(c)**    **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    **(d)**    **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    **(e)**    **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within sixty (60) days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to sixty (60) days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any

JUN 20 2014

P. MACHADO

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is true and correct copy as same appears of record in my office. Witness my hand and seal.

Dana DeBeauvoir, County Clerk
By Deputy:

205368

successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law .

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the Paragraph 16, "Environmental Law" means federal laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

JUN 20 2014

Dana DeBeauvoir, County Clerk
By Deputy: P. MACHADO

Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If after complying with all applicable statutory notice provisions Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public venue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed

DOCUUTX7
DOCUUTX7.VTX  12/07/2003

Page 7 of 10

FHA Texas Deed of Trust - 2/91

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on JUN 20 2014

Dana DeBeauvoir, County Clerk
By Deputy: [signature] F. MACHADO

hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts acquired by Lender by assignment or are released by the holder thereof upon payment.

**22. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Other(s) [specify] | |

**24. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**

Check box as applicable:

☒ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

☐ **Other**

**25. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the

205368

DOCUUTX8
DOCUUTX8.VTX  01/23/2004

Page 8 of 10

FHA Texas Deed of Trust - 2/91

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office.
Witness my hand and seal of office on

JUN 2 0 2014

Dana DeBeauvoir, County Clerk
By Deputy: P. MACHADO

205368

Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 25.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

- BORROWER - TRAVIS CHESTNUT - DATE -  7/15/04

- BORROWER - AMY CHESTNUT - DATE -  7/15/04

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office.  JUN 2 0 2014

Dana DeBeauvoir, County Clerk
By Deputy:  P. MACHADO

205368

**|Space Below This Line For Acknowledgment**

State of     Texas
County of    Travis
This instrument was acknowledged before me on     July 15, 2004     , by

TRAVIS CHESTNUT AND AMY CHESTNUT

SUSAN L. GRAHAM
MY COMMISSION EXPIRES
April 23, 2008

(Signature of Officer)
(Title of Officer)
My commission expires:

JUN 20 2014

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

Dana DeBeauvoir, County Clerk
By Deputy: P. MACHADO

# PLANNED UNIT DEVELOPMENT RIDER

CHESTNUT
LOAN NUMBER:     205368
CASE NUMBER:     495-7012473-703-

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **15TH** day of **JULY, 2004**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to    **ALETHES, LLC**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**1234 ACANTHUS STREET PFLUGERVILLE, TX 78660**

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

**HEATHERWILDE**

[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

DOCURPB1
DOCURPB1.VTX  07/07/2000                    Page 1 of 2                    FHA Multistate PUD Rider – 6/96

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

205368

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

— BORROWER — TRAVIS CHESTNUT — DATE —  7/15/04

— BORROWER — AMY CHESTNUT — DATE —  7/15/04

FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

2004 Jul 16 12:55 PM  2004136582
EVANSK $36.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office.

Dana DeBeauvoir, County Clerk
By Deputy: P. MACHADO

JUN 20 2014

## CAUSE NO. D-1-GN-11-000558

| | | |
|---|---|---|
| KARL B. BAILEY, JR. | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| v | § | |
| | § | 250th JUDICIAL DISTRICT |
| | § | |
| MIDFIRST BANK; SMOKE SIGNAL | § | |
| PASS, LLC; ERIC J. LEE; KW | § | |
| MANAGEMENT, LLC, d/b/a Keller | § | |
| Williams | § | |
| | § | |
| Defendants | § | TRAVIS COUNTY, TEXAS |

## AFFIDAVIT OF KARL B. BAILEY, JR.

| | |
|---|---|
| STATE OF TEXAS | § |
| TRAVIS COUNTY | § |

Before me, the undersigned notary, on this day personally appeared Karl B. Bailey, Jr., the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

1. "My name is Karl B. Bailey, Jr. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. "On or about July 14, 2009, I entered a contract to purchase the property at 1234 Acanthus Street, Pflugerville, TX 78660 from Smoke Signal Pass, LLC. I paid Eric Lee $2,000 in earnest money.

3. "On or about July 31, 2009, the sale was closed at the office of Keller Williams in Austin.

4. "I made all payments required under the contract. Beginning on or about August, 2, 2009, I made payments on my mortgage to Smoke Signal Pass, LLC. every month until

<div style="border:1px solid black; display:inline-block; padding:4px">Exhibit 6</div>

I received a three-day notice to vacate my home on February 14, 2011. After receiving this notice, I attempted to contact Eric Lee but was unable to do so.

5. "Attached to this Affidavit as Exhibit A are true and correct copies of the checks paid to Smoke Signal Pass, LLC as well as a listing of payments made. It was my understanding that Smoke Signal Pass, LLC was supposed to use my payments to pay the mortgage to MidFirst Bank and retain the remainder as profit.

6. "Further, affiant sayeth not."

_____
Karl B. Bailey, Jr.

Sworn to and subscribed before me by Karl B. Bailey on June 16 , 20 14 .

_____
Notary Public in and for
the State of Texas

My commission expires:

CHARLOTTE SECORD
Notary Public, State of Texas
My Commission Expires
July 05, 2015

20100010601513
1234 ACANTHUS STREET
PFLUGERVILLE, TEXAS 78660

## APPOINTMENT OF SUBSTITUTE TRUSTEE

DEED OF TRUST

DATED: July 15, 2004

TRV
2010182473

1 PG

AMY CHESTNUT
TRAVIS CHESTNUT

RECORDED IN:     CLERK'S FILE NO. 2004136582

PROPERTY COUNTY:    TRAVIS

The undersigned as mortgagee, or as mortgage servicer for the mortgagee under Texas Property Code Sec.51.0075, does hereby remove the original Trustee and all successor substitute trustees and appoints in their stead TOBEY LATHAM, STEVE UTLEY OR WENDY ALEXANDER as Substitute Trustee, who shall hereafter exercise all powers and duties set aside to the said original Trustee under the said Deed of Trust; and, further, does hereby request, authorize, and instruct said Substitute Trustee to conduct and direct the execution of remedies set aside to the beneficiary therein.

Executed on

MIDFIRST BANK

11-5-10

BY: _Thad Burr_
Thad Burr
Vice President

### CORPORATE ACKNOWLEDGEMENT

STATE OF     OKLAHOMA     }
COUNTY OF    OKLAHOMA     }

Before me, the undersigned Notary Public, on this day personally appeared _Thad Burr_, who is the _Vice President_ of MIDFIRST BANK, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _5th_ day of _November, 2010_.

My Commission Expires:

_____     Notary Public for the State of OKLAHOMA

CHRIS EALOM
Notary Public
State of Oklahoma
Commission # 08012102  Expires 12/11/12

Printed Name of Notary Public

### FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

_Dana DeBeauvoir_

Dec 07, 2010  04:23 PM     2010182473
HAYWOODK: $16.00
Dana DeBeauvoir, County Clerk
Travis County  TEXAS

RETURN TO:
BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP
15000 Surveyor Boulevard, Suite 100
Addison, Texas  75001

Appt_net.rpt - FHA  (06/08/2010) Ver-31

Exhibit 5

WD 2009136933

2 PGS

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

15/ITC/0916094-RBD

### Special Warranty Deed With Vendor's Lien

KNOW ALL MEN BY THESE PRESENTS, that SMOKE SIGNAL PASS LLC ("Grantor"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration to Grantor in hand paid by KARL BAILEY JR. AND REBECCA BAILEY (collectively, "Grantee"), the receipt and sufficiency of which are hereby acknowledged and confessed, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto said Grantee, the property commonly known as 1234 Acanthus Street, Pflugerville, TX 78660, and further described as

**Lot 18, Block B, HEATHERWILDE, SECTION THREE, A SMALL LOT SUBDIVISION, according to the map or plat thereof, recorded in Volume 87, Page 57C, Plat Records, Travis County, Texas.**

(together with all improvements, rights and appurtenances, the "Property")

This conveyance, however, is made and accepted subject to the Vendor's Lien retained in Deed recorded as Document No. 2004136581 in the Official Public Records of Travis County, Texas, the Deed of Trust recorded as Document No. 2004136582 in the Official Public Records of Travis County, Texas, and assigned by instrument recorded as Document No. 2009079539 in the Official Public Records of Travis County, Texas, and any and all validly existing encumbrances, conditions and restrictions, relating to the Property as now reflected by the Official Public Records of Travis County, Texas.

A portion of the consideration to be paid to Grantor was advanced by Grantor at the special instance and request of Grantee, which amount constitutes a portion of the proceeds of a loan from Grantor to Grantee evidenced by those certain Notes Secured by Wraparound Mortgage of even date herewith executed by Grantee in the aggregate original principal amount of One Hundred Twenty-One Thousand Fifty and No/100 Dollars ($121,050.00) (the "Notes"). The Notes are secured by the vendor's lien and superior title herein retained by Grantor and by the lien created by that certain Deed of Trust (Wraparound Mortgage), dated as of even date herewith executed, by Grantee in favor of Drew Shirley, P.C., Trustee, for the benefit of Grantor, covering the Property.

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereunto in anywise belonging unto said Grantee, its successors and assigns, forever. And Grantor does hereby bind itself and its successors to WARRANT and FOREVER DEFEND all and singular the Property unto said Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTOR AND GRANTEE AGREE THAT GRANTEE IS TAKING THE PROPERTY "AS IS" WITH ANY AND ALL LATENT AND PATENT DEFECTS AND THAT THERE IS NO WARRANTY BY GRANTOR THAT THE PROPERTY IS FIT FOR A PARTICULAR PURPOSE. GRANTEE ACKNOWLEDGES THAT GRANTEE IS NOT RELYING UPON ANY REPRESENTATIONS, STATEMENTS, ASSERTIONS, OR NON-ASSERTIONS BY THE GRANTOR WITH RESPECT TO THE PROPERTY CONDITION, BUT IS RELYING SOLELY UPON ITS EXAMINATION OF THE PROPERTY. GRANTEE TAKES THE PROPERTY UNDER THE EXPRESS UNDERSTANDING

Exhibit 4

**THAT THERE ARE NO EXPRESS OR IMPLIED WARRANTIES (EXCEPT FOR THE LIMITED WARRANTIES OF TITLE SET FORTH HEREIN).**

But it is expressly agreed and stipulated that the Vendor's Lien is retained against the Property until the above-described Notes, and all interest thereon, are fully paid according to its face and tenor, effect and reading, when this Deed shall become absolute.

This Special Warranty Deed with Vendor's Lien is EXECUTED to be effective as of the 31st day of July, 2009.

GRANTOR:

SMOKE SIGNAL PASS LLC

By:  , Manager

Eric J. Lee, Manager

| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

This instrument was acknowledged before me on July 31, 2009, by Eric J. Lee, Manager of Smoke Signal Pass LLC.

S. A. MANGUM
MY COMMISSION EXPIRES
May 28, 2012

Notary Public, State of Texas

AFTER RECORDING RETURN TO:
Karl and Rebecca Bailey
1234 Acanthus Street
Pflugerville, TX 78660

Independence Title Company
11215 S. IH35, Ste. 114
Austin, TX 78747

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

2009 Aug 12 12:03 PM     2009136933
PEREZTA $20.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

JUN 2 3 2014

P. MACHADO

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

Dana DeBeauvoir, County Clerk
By Deputy:

# GENERAL WARRANTY DEED

15) ITC/0916094-RBD

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ WD 2009136932
2 PGS

| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF TRAVIS | § | |

That **TRAVIS CHESTNUT and wife, AMY CHESTNUT** of TRAVIS COUNTY, STATE OF TEXAS, hereinafter referred to as "Grantor", for and in consideration of the sum of $10.00 and other good and valuable consideration to Grantor in hand paid, the receipt of which is hereby acknowledged, has GRANTED, SOLD, and CONVEYED, and by these presents does GRANT, SELL, and CONVEY unto **SMOKE SIGNAL PASS LLC**, whose mailing address is P.O. BOX 140871, AUSTIN, TEXAS 78714-0871, hereinafter referred to as "Grantee", the following described property situated in TRAVIS COUNTY, TEXAS:

LOT 18, BLOCK B, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87 PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 2000188927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

This conveyance is made and accepted subject to the following matters, to the extent same are in effect at this time: Any and all restrictions, covenants, and easements, if any, relating to the hereinabove described property, but only to the extent they are still in effect, shown of record in the hereinabove mentioned County and State, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are still in effect, relating to the herein above described property.

This conveyance is further made and accepted subject to any liens recorded prior to the date of this conveyance, as found in the Real Property Records of TRAVIS COUNTY, TEXAS.

TO HAVE AND TO HOLD the above described premises, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the said Grantee, his successors and assigns forever; and the said Grantor does hereby bind herself, her heirs, executors, administrators, and assigns, to WARRANT AND FOREVER DEFEND, all and singular, the said premises unto the said Grantee, his successors and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

EXECUTED this 30TH day of JULY, 2009

BY: _____
TRAVIS CHESTNUT

BY: _____
AMY CHESTNUT

## ACKNOWLEDGEMENT

| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF TRAVIS | § | |

This instrument was acknowledged before me by TRAVIS CHESTNUT and AMY CHESTNUT, on this 30TH day of JULY, 2009, for the purposes therein expressed.

Independence Title Company
11215 S. IH35, Ste. 114
Austin, TX 78747

_____
Notary Public, State of Texas

After Recording Return to:
ERIC J LEE, as Manager
P.O. BOX 140871
AUSTIN, TEXAS 78714-0871



S. A. MANGUM
MY COMMISSION EXPIRES
May 28, 2012

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on
JUN 20 2014
Dana DeBeauvoir, County Clerk
By Deputy: P. MACHADO

Exhibit 3

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

2009 Aug 12 12:03 PM    2009136932

PEREZTA $20.00

DANA DeBEAUVOIR COUNTY CLERK

TRAVIS COUNTY TEXAS

JUN 2 0 2014

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

Dana DeBeauvoir, County Clerk

By Deputy

P. MACHADO



Prepared by Sarah Fonseca
After recording return to:
MidFirst Bank
2730 N Portland
OKC, OK 73107
MFB# 53485874



    TRF     2009079539

2 PGS

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office.

JUN 20 2014

P. MACHADO

Dana DeBeauvoir, County Clerk
By Deputy:

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **Mortgage Electronic Registration Systems, Inc., as nominee for Alethes, LLC**, PO Box 2026, Flint, MI, 48501-2026 (hereinafter called the "Assignor"), does hereby grant, convey, assign, transfer, and set over to **MidFirst Bank, a Federally Chartered Savings Association**, 999 NW Grand Blvd., Suite 100, Oklahoma City, OK 73118, (hereinafter called the "Assignee"), its successors and assigns, all of the Assignor's rights, title and interest in and to:

1. The Promissory Note (herein called the "Note"), evidencing the indebtedness secured by the Mortgage/Deed of Trust.

2. The Mortgage dated 7/15/04, executed by **Travis Chestnut and Amy Chestnut, husband and wife**, to **Mortgage Electronic Registration Systems, Inc., as nominee for Alethes, LLC**, recorded on 7/16/04 as **Document No. 2004136582**, in the Office of the Recorder, County of **Travis**, State of **Texas**, covering the following described property and all improvements as more fully described in the Deed of Trust referred to herein.

   LOT 18, BLOCK B, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87 PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 200018927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

   Property Address: **1234 Acanthus Street, Pflugerville, TX 78660**

   Parcel ID: 02783608040000

In witness whereof, the undersigned corporation has caused this instrument to be executed this **22nd** day of **April, 2009.**

Mortgage Electronic Registration Systems, Inc., as nominee for Alethes, LLC

Vice President      Jeri Bassett

State of Oklahoma
County Of Oklahoma

On this **22nd** day of **April, 2009,** before me, a Notary Public, in and for said county, personally appeared **Jeri Bassett**, to me personally known, who being by me duly sworn did say that she is the **Vice President of Mortgage Electronic Registration Systems, Inc., as nominee for Alethes, LLC,** and that the within instrument was signed on behalf of said corporation by authority of its Board of Directors, and that they acknowledged the execution of said instrument to be the voluntary act and deed of said corporation, executed for the uses and purposes set forth.

In testimony whereof, I have hereunto set my hand and official seal this **22nd** day of **April, 2009.**
(Seal)

Notary Public:      Crystal Klohn
My Commission Exp       5/11/10

After Recording Return To:
Barrett Daffin Frappier Turner and Engel, LLP.
15000 Surveyor Blvd., Suite 100
Addison, TX 75001
Attn: NDEx Title Services, L.L.C.

Exhibit 2

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

2009 May 15 10:42 AM    2009079539

HAYWOODK $20.00

DANA DEBEAUVOIR COUNTY CLERK

TRAVIS COUNTY TEXAS

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on JUN 2 0 2014

Dana DeBeauvoir, County Clerk

By Deputy: P. MACHADO

TRV 2011006182

3 PGS

JUN 20 2014

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office.

Dana DeBeauvoir, County Clerk
By Deputy: P. MACHADO

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

1234 ACANTHUS STREET
PFLUGERVILLE, TX 78660
4957012473703
20100010601513

### SUBSTITUTE TRUSTEE'S DEED

GRANTOR(S):
  AMY CHESTNUT
  TRAVIS CHESTNUT

ORIGINAL MORTGAGEE:
  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE

CURRENT MORTGAGEE:
  MIDFIRST BANK

MORTGAGE SERVICER:
  MIDLAND MORTGAGE CO.

RECORDED IN:
  CLERK'S FILE NO. 2004136582

DEED OF TRUST DATE: July 15, 2004
DATE OF SALE OF PROPERTY: January 4, 2011

TIME OF SALE: 10:14 (AM)/PM
PLACE OF SALE OF PROPERTY:
  THE REAR "SALLYPORT" OF THE TRAVIS COUNTY COURTHOUSE 1000 GUADALUPE STREET, AUSTIN, TEXAS 78701, OR THE PLACE DESIGNATED BY THE COUNTY COMMISSIONERS COURT

GRANTEE/BUYER:
  MIDFIRST BANK

GRANTEE/BUYER'S MAILING ADDRESS:
  999 N.W. GRAND BLVD.
  OKLAHOMA CITY , OK 73118

AMOUNT OF SALE: $ 118,742.11

PROPERTY COUNTY/LEGAL DESCRIPTION: TRAVIS
LOT 18 BLOCK B, OF HEATHERWILDE, SECTION THREE, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 87, PAGES 57C-58A, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS; AS CORRECTED IN DOCUMENT NUMBER 2000188927 OF THE OFFICIAL PUBLIC RECORDS OF THE REAL PROPERTY RECORDS OF TRAVIS COUNTY, TEXAS.

Grantor conveyed the property to Trustee in trust to secure payment of the Note. Mortgagee, through the Mortgage Servicer, declared that Grantor defaulted in performing the obligations of the Deed of Trust. Current Mortgagee of the Note, through the Mortgage Servicer, accordingly has appointed Substitute Trustee and requested Substitute Trustee to enforce the trust.

Notices stating the time, place and terms of sale of the property were mailed, posted and filed, as required by law. Substitute Trustee sold the property to Buyer, who was the highest bidder at the public auction, for amount of sale in the manner prescribed by law. The subject sale was conducted no earlier than 10:00AM as set forth in the Notice of Substitute Trustee's Sale and was concluded within three (3)hours of such time. All matters, duties and obligations of Mortgagee were lawfully performed.

Substitute Trustee, subject to any matters of record, and for amount of sale paid by buyer as consideration, grants, sells and conveys to Buyer, Buyer's heirs, executors, administrators, successors or assigns forever, the property together with all rights and appurtenances belonging to Grantor. Substitute Trustee hereby sells the above referenced property AS IS without any expressed or implied warranties, except as to warranties of title, and hereby conveys the property to the purchaser at the purchaser's own risk, pursuant to the terms of Texas Property Code §§ 51.002 and 51.009.

WITNESS MY HAND, this January 04, 2011.



~~TOBEY LATHAM, STEVE UTLEY OR~~ WENDY ALEXANDER
Substitute Trustee

STATE OF TEXAS
COUNTY OF WILLIAMSON

Before me, the undersigned Notary Public, on this day personally appeared ~~TOBEY LATHAM, STEVE UTLEY OR~~ WENDY ALEXANDER as Substitute Trustee, known to me or proved to me through a valid State driver's license or other official identification described as _____ , to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this January 04, 2011.

My Commission Expires:

_____

_____
Notary Public for the State of TEXAS

_____
Printed Name of Notary Public

THERESE H. LINNEMEYER
MY COMMISSION EXPIRES
September 26, 2011

RETURN TO:
  BARRETT DAFFIN FRAPPIER
  TURNER & ENGEL, L.L.P.
  15000 Surveyor Boulevard, Suite 100
  Addison, Texas 75001

  Substitute Trustee's Deed (FHA)
  SubTrusteeDeedCounty.rpt - (06/04/2009) / Ver-19

STD20100010601513

Exhibit 8

## STATEMENT OF FACTS

1234 ACANTHUS STREET
PFLUGERVILLE, TX 78660

BDFTE No: 20100010601513

BEFORE ME, the undersigned authority on this day personally appeared Mike Vestal, known to me, who upon oath administered by me deposed and stated:

1. I am a representative of the law firm BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP in connection with the administration of foreclosure of that certain Deed of Trust or Security Instrument ("Deed of Trust") dated July 15, 2004, recorded in CLERK'S FILE NO. 2004136582, Real Property Records, TRAVIS County, TEXAS, executed by TRAVIS CHESTNUT and AMY CHESTNUT ("Grantor").

2. I am making this affidavit based upon certain records maintained within the firm's files in the regular course of its business, which may include images of notices, certified mail forms, the signed Substitute Trustee's Deed, title searches, and other documents and records obtained and maintained in the usual course of business. Together with my general knowledge of mortgage servicer practices for referring foreclosure matters to the firm, the statements and information shown in these records form the basis for the following statements made in this affidavit, which to the best of my knowledge and belief are true.

3. MIDLAND MORTGAGE CO. is the Mortgage Servicer for the Lender or its Nominee concerning the debt evidenced by the Deed of Trust.

4. The Mortgagee, through the Mortgage Servicer declared that the Grantor defaulted in performing the obligations of the Deed of Trust and lawfully performed service of a proper notice of default and other obligations and duties of the Mortgage Servicer.

5. All notices of acceleration were served on each debtor obligated on the debt according to records obtained from the Mortgage Servicer by certified mail at the last known address of each such debtor in accordance with law. Based upon these records, each mortgagor was alive at the time of the foreclosure sale or if deceased, title was restored to the debt owner through a court judgment, or an underwriter's approval letter obtained.

6. At the instructions and on behalf of the Mortgage Servicer, Notices stating the time, place and terms of sale of the property were mailed, posted and filed in accordance with law. Notices were served on each debtor obligated on the debt according to records obtained from the Mortgage Servicer by certified mail at the last known address of each such debtor at least twenty one (21) days before the date of the sale.

7. Through my work at the firm, I know that the firm follows a regular process in foreclosure matters to ascertain a Grantor's military service status for purposes of the federal Service Member's Civil Relief Act and state law. I am familiar with this regular process, which involves submitting Grantors' names and identifying information obtained from the Mortgage Servicer or commercially available records searches to the federal Defense Manpower Data Center ("DMDC") through that agency's official internet search site (the "DMDC Site). Based upon my review of search returns obtained and maintained in the firm's files, no Grantor is reported as on active duty military service or as having concluded active duty military service within the preceding nine months.

AFFIANT: Mike Vestal

STATE OF TEXAS }
COUNTY OF DALLAS }

JAN 07 2011

Given under my hand and seal of office this ________ day of ____________, ________.

Notary Seal:

Notary Public for the State of Texas

BROOKE L EVANS
Notary Public, State of Texas
My Commission expires
January 2?, 2013

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

JUN 20 2014

Dana DeBeauvoir, County Clerk

By Deputy: D. MACHADO

AFFIDAVIT - 1356

RETURN TO:
BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP
15000 Surveyor Boulevard, Suite 100
Addison, Texas 75001

STA20100010601513

Affidavit-BatchPrint.rpt - (12/10/2010) / Ver-16

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

Jan 12, 2011   03:11 PM        2011006182
HAYWOODK: $24.00

Dana DeBeauvoir, County Clerk

Travis County   TEXAS

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

JUN 2 0 2014

Dana DeBeauvoir, County Clerk

By Deputy:

P. MACHADO

KARL B. BAILEY, JR.
REBECCA M. BAILEY
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

855

ACCOUNT ☐☐☐☐☐  8-2-09

88-7710/3149
09

Pay to the Order of SMOKE SIGNAL PASS LLC    $ 1,115.78

ONE THOUSAND ONE HUNDRED FIFTEEN & 78/100 ——— Dollars

Credit Union

For MorGAGE

Pay any bank JPMorgan Chase Bank

Smoke Signal Pass LLC

Exhibit 7

**KARL B. BAILEY, JR.**
**REBECCA M. BAILEY**
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

856

Date 8-2-09

*ERIC'S LOAN*

Pay to the Order of ___SMOKE SIGNAL PASS LLC___ $ 276.39

___TWO HUNDRED SEVEN SIX + 39/100___ Dollars

Federal Credit Union

For ___MORTGAGE 2___

Pay any bank JPMorgan Chase Bank

Smoke Signal Pass LLC

KARL B. BAILEY, JR.
REBECCA M. BAILEY
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

893

88-7710/3140
09

10/20/09  Date

Pay to the
Order of  Smoke Signal Pass            $ 1170.69

One-Thousand Seventy ——————— 69/100  Dollars

Federal
Credit
Union

For _____

Rebecca

Pay any bank  JPMorgan Chase Bank

Smoke Signal Pass LLC

**KARL B. BAILEY, JR.**
**REBECCA M. BAILEY**
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

896

88-7710/3149
09

11/4/09

Date

Pay to the Order of ___Smoke Signal Pass LLC___ $ 1,170.69

___ONE-THOUSAND ONE-HUNDRED SEVENTY—___ 69/100 Dollars

Federal Credit Union
PO Box 1907
...

For ___House PAYMENT Rebecca___

Harland Clarke

For any bank JPMorgan Chase Bank

Smoke Signal Pass LLC

KARL B. BAILEY, JR.
REBECCA M. BAILEY
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

857

88-7710/3149
09

Date: 12/1/09

Pay to the Order of: Smoke Signal Pass LLC     $ 1170.69

ONE Thousand ~~Seven~~ ONE HUNDRED SEVENTY — 69/100 Dollars

Federal Credit Union

For: House Payment     Rebecca Bailey

Smoke Signal Pass LLC





**KARL B. BAILEY, JR.**
**REBECCA M. BAILEY**
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

862

1-4-09 Date

Pay to the Order of ~~Smoke Signal Pass LLC~~ $ 1,170.69

One-Thousand one-Hundred SEVENTY 69/100 Dollars

Federal Credit Union

For House Payment

Smoke Signal Pass LLC

**KARL B. BAILEY, JR.**
**REBECCA M. BAILEY**
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

868

2-4-00
Date

Pay to the Order of   Smoke Signal Pass LLC                    $ 1170.69

One-Thousand One-Hundred Seventy —————— 69/100 Dollars

Federal Credit Union
Making the Grade

For   House Payment                    Rebecca 170

**KARL B. BAILEY, JR.**
**REBECCA M. BAILEY**
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

874

88-7710/3149
08

3-5-10
_Date_

Pay to the
Order of _Smoke Signal Pass LLC_          $ 1170.69

One-Thousand One-Hundred Seventy 69/100 _Dollars_

Federal
Credit
Union
*Making the Grade*

PO Box 14547
Austin, TX 78761-4547
512-302-5800 • 800-252-1310

For _____

Rebecca M. Bailey

Smoke Signal Pass LLC

**KARL B. BAILEY, JR.**
**REBECCA M. BAILEY**
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

905

88-7710/3149
08

4-5-10
Date

Pay to the
Order of _Smoke Signal Pass LLC_ | $ 1170.69

_One-Thousand one-hundred Seventy — 69/100_ Dollars

Federal
Credit
Union

For _____

Smoke Signal Pass LLC
CREDITED TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JPMorgan Chase Bank, N.A.

Pay any bank JPMorgan Chase Bank

KARL B. BAILEY, JR.
REBECCA M. BAILEY
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

910

98-7710/3145
09

5-4-10 _Date_

Pay to the Order of _Smoke Signal Pass LLC_ | $ 1170.69

_One-Thousand Seventy —————— 69/100_ Dollars

Federal Credit Union

For _____

CREDITED TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JPMORGAN CHASE BANK, N.A.

**KARL B. BAILEY, JR.**
**REBECCA M. BAILEY**
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

920

88-7710/3148

7-5-10
Date

Pay to the Order of ___Smoke Signal Press___ $ 1170.69

One Thousand One Hundred Seventy ___Dollars 69/100

Federal Credit Union
PO Box 14867
Austin TX 78761-4867
512/302-6800 • 800/252-9148

For ___House Payment-___ Rebecca B.

CREDITED TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JPMorgan Chase Bank, N.A.

KARL B. BAILEY, JR.
REBECCA M. BAILEY
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

929

8-5-2010

Pay to the Order of **Smoke Signal Pass LLC**     $ 1170.69

One-Thousand one-Hundred Seventy ————— Dollars

Rebecca Bay

For _____

KARL B. BAILEY, JR.
REBECCA M. BAILEY
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

934

9-6-2010

Date

Pay to the
Order of Smoke Signal Pass LLC   $ 1115.78

One-Thousand one-Hundred Fifteen Dollars 78/100

Federal
Credit
Union

For _____

For Deposit Only

**KARL B. BAILEY, JR.**
**REBECCA M. BAILEY**
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

978

10-4-10  Date

Pay to the Order of  Smoke Signal Pass LLC  $ 1,115.78

One thousand one-Hundred Fifteen  Dollars

Federal Credit Union

For

*[signature]*

For Deposit Only

KARL B. BAILEY, JR.
REBECCA M. BAILEY
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

939

11-13-10
Date

Pay to the Order of  Smoke Signal Pass                    $ 1174.98

One-Thousand One-Hundred Seventy-four                    98/100  DOLLARS

Federal
Credit
Union

For _____      Rebecca Bg

For Deposit Only

KARL B. BAILEY, JR.
REBECCA M. BAILEY
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

961

12-12-10 Date

Pay to the Order of ___Smoke Signal Poss LLC___ $ 1,174.98

one-thousand one hundred Seventy four—98/100 Dollars

Federal Credit Union

For _____

Rebecca ___

For Deposit Only

**KARL B. BAILEY, JR.**
**REBECCA M. BAILEY**
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

962

88-7710/3149
01

12-12-10 _Date_

ERIC'S
LOAN →

Pay to the
Order of _Smoke Signal Pass LLC_ | $ 276.39

_Two-Hundred Seventy Six — 39/100_ Dollars

Federal
Credit
Union

PO Box 14547
Austin, TX 78761 4547
512-302-5555 • 800-252-8148

For _____

_Rebecca Bay_

For Deposit Only

KARL B. BAILEY, JR.
REBECCA M. BAILEY
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

945

98-7710/3149
09

1-7-11
Date

Pay to the
Order of Smoke Signal Pass                    $ 1,174.98

One Thousand one Hundred Seventy four — Dollars
98/100

Federal
Credit
Union

PO Box 14567
Austin, TX 78761-4567
512 302 6400 • 800 252 8148

For _____          Rebecca Bailey          MP

For Deposit Only

**KARL B. BAILEY, JR.**
**REBECCA M. BAILEY**
1234 ACANTHUS ST
PFLUGERVILLE, TX 78660

944

88-7710/3119
09

1-7-10 ᴿᴮ
Date

Pay to the Order of _Smoke Signal Pass_    $ 276.39

Two Hundred Seventy Six ——— 39/100 Dollars

Federal Credit Union
Banking the Grade

PO Box 14867
Austin, TX 78761-4867
512 302-5500 • 800 252 5148

For _____    _Redwipzi_    MP

Harland Clarke

ERICS LOAN ←

For Deposit Only

04/06/10    -276.00 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 326.43

04/06/10    -1,170.69 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 602.43

03/08/10    -276.39 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 446.84

03/08/10    -1,170.69 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 723.23

02/11/10    -276.39 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 605.01

02/11/10    -1,170.69 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 881.40

01/07/10    -1,170.69 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 921.81

01/07/10    -276.39 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 2,092.50

12/02/09    (-276.39) 0.00 0.00    Check W/D Error! Hyperlink reference not valid.58

12/02/09    -1,170.69 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 453.71

11/05/09    (-276.39) 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 408.52

11/05/09    -1,170.69 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 684.91

10/22/09    -1,170.69 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 953.81

10/21/09    (-276.39) 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 2,124.50

09/08/09    (-276.39) 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 851.19

09/08/09    -1,115.78 0.00 0.00    Check W/D Error! Hyperlink reference not valid. 1,127.58

*[handwritten annotations: "EPIC's LOAN" (pointing to circled 09/08/09 entry); "1st PAYMENT" (pointing to 09/08/09)]*

01/13/11    -1,174.98    0.00 0.00 reference not valid.    Check W/D Error! Hyperlink

01/13/11    -276.39    0.00 0.00 reference not valid.    Check W/D Error! Hyperlink

12/16/10    -1,174.98    0.00 0.00 reference not valid. 343.51    Check W/D Error! Hyperlink

11/17/10    -1,174.98    0.00 0.00 reference not valid. 97.14    Check W/D Error! Hyperlink

11/17/10    -276.39    0.00 0.00 reference not valid. 1,272.12    Check W/D Error! Hyperlink

10/06/10    -1,115.78    0.00 0.00 reference not valid. 211.11    Check W/D Error! Hyperlink

10/06/10    -276.39    0.00 0.00 reference not valid. 1,326    Check W/D Error! Hyperlink

09/08/10    -1,115.78 0.00 0.00 reference not valid. 4.15    Check W/D Error! Hyperlink

09/08/10    -276.39 0.00 0.00 reference not valid. 1,119.93    Check W/D Error! Hyperlink

08/09/10    -276.39 0.00 0.00 reference not valid. 373.47    Check W/D Error! Hyperlink

08/09/10    -1,170.69 0.00 0.00 reference not valid. 649.86    Check W/D Error! Hyperlink

07/07/10    -1,170.69 0.00 0.00 reference not valid. 0.66    Check W/D Error! Hyperlink

07/07/10    -276.00 0.00 0.00 reference not valid. 1,171.35    Check W/D Error! Hyperlink

06/08/10    -1,170.69 0.00 0.00 reference not valid. 12.51    Check W/D Error! Hyperlink

06/08/10    -276.39 0.00 0.00 reference not valid. 1,183.20    Check W/D Error! Hyperlink

05/10/10    -1,170.69 0.00 0.00 reference not valid. 2.83    Check W/D Error! Hyperlink

05/10/10    -276.39 0.00 0.00 reference not valid. 1,173.52    Check W/D Error! Hyperlink

## BACKGROUND

3. The property in question is described in Exhibit 1 and is more commonly known as 1234 Acanthus Street, Pflugerville, Texas 78660 ("the property").

4. The property was initially purchased by Travis and Amy Chestnut through a Note and Deed of Trust on or about July 15, 2004. The lender was Alethes, LLC. On or about April 17, 2009, MidFirst allegedly obtained, by assignment and endorsement, the Note and Deed of Trust on the property.

5. On or about July 30, 2009, the Chestnut's transferred the property to Smoke Signal Pass, LLC (SPP) under a General Warranty Deed.

6. SPP then transferred the property to Bailey on or about July 31, 2009 under a Special Warranty Deed with Vendor's Lien. Bailey began making payments in September, 2009 and continued to make all payments until he was informed MidFirst had foreclosed on the property by receipt of a three day notice to vacate.

## SUMMARY-JUDGMENT EVIDENCE

7. To support the facts in this response, plaintiff offers the following summary-judgment evidence attached to this response and incorporates the evidence into this response by reference.

> Exhibit 1: Deed of Trust dated July 15, 2004 and recorded in the Travis County Property Records as Document 2004136582. (Chestnut Deed).

> Exhibit 2: Assignment of Deed of Trust, dated April 22, 2009 and recorded in the Travis County Property Records as Document 2009079539. (MidFirst Assignment)

> Exhibit 3: General Warranty Deed, dated July 30, 2009 and recorded in the Travis County Property Records as Document 200913692. (SPP Deed).

Exhibit 4:  Special Warranty Deed with Vendor's Lien dated July 31, 2009 and recorded in the Travis County Property Records as Document 2009135933. (Bailey Deed)

Exhibit 5:  Appointment of Substitute Trustee dated November 5, 2010 and recorded in the Travis County Property Records as Document 2010182473.

Exhibit 6:  Affidavit of Karl Bailey

Exhibit 7:  Checks and bank statement showing Bailey payments to SPP.

Exhibit 8:  Substitute Trustee's Deed dated January 4, 2011 and recorded in the Travis County Property Records as Document 2011006182.

## RESPONSE TO TRADITIONAL SUMMARY JUDGMENT ON PLAINTIFF'S CAUSES OF ACTION DUE TO LACK OF STANDING

**A. Defendant did not disprove plaintiff's causes of action as a matter of law.**

8.  A defendant is entitled to summary judgment on a plaintiff's cause of action if the defendant can disprove at least one element of the cause of action as a matter of law. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *see Tello v. Bank One, N.A.*, 218 S.W.3d 109, 113 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

9.  The Court should deny defendant's motion for summary judgment on plaintiff's cause of action because defendant did not disprove Bailey's claims as a matter of law.

10.  The Court should deny defendant's motion for summary judgment on plaintiff's cause of action because the Affidavits and property records attached to defendant's motion are defective and do not present competent summary-judgment evidence. Specifically, see Bailey's Motion to Strike MidFirst Bank's Summary Judgment Evidence.

**A. MidFirst did not prove Bailey lacks standing as a matter of law**

11.  MidFirst's chief argument is that Bailey does not have standing to sue on breach of the Deed of Trust because he is not a party to the Deed of Trust.  Further,

MidFirst asserts Bailey is not entitled to the notices required by law and by the Deed of Trust because he was not a party to the contract and not obligated to pay the debt.

12. The Court should deny MidFirst's motion for summary judgment on the issue of Bailey's standing because MidFirst did not prove lack of standing as a matter of law. Bailey does have standing as a matter of law based on the Chain of Title proven by Exhibits 1 through 4.

13. Bailey's standing is further evidenced by the Chestnut deed, Section 12, which states: "[t]he covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b)."[1]

14. Since Bailey was an assignee and/or successor of Borrower (the Chestnuts), the covenants and agreements of the Security Instrument benefit him. MidFirst was required to provide the contractual notices in the Deed of Trust to Bailey. This clause also makes Bailey a party to the contract. A party to a contract can always sue under the contract.

15. Both the SPP Deed and the Bailey Deed were properly recorded in the Travis County Property Records. This gives rise to an irrebutable presumption MidFirst had notice of these instruments.[2]

---

[1] Paragraph 9(b) is the "due on sale" clause that gives the Lender the right to accelerate the debt if the original borrower sells their interest without the Lender's permission.

[2] *Noble Mortg. & Invs. LLC v. D&M Vision Invs., LLC*, 340 S.W.3d 65 (Tex. App. Houston [1st Dist.] 2011, no pet.) "The Texas Property Code provides that an "instrument that is properly recorded in the proper county is . . . notice to all persons of the existence of the instrument." Tex. Prop. Code Ann. § 13.002. Recorded instruments in a grantee's

16. Some courts have said instruments recorded after the property was purchased do not automatically provide notice to the purchaser. *See Andretta v. West*, 415 S.W.2d 638, 642 (Tex. 1967). However, in the instant case, MidFirst had reason to investigate when payment origination changed from the Chestnuts to SPP. This should have led them to inquire regarding what had been filed to lead SPP to make payments.[3] Additionally, MidFirst recorded documents in the Travis County Property Records after the SPP Deed and the Bailey Deed were recorded. For example, Exhibit 5 was recorded in November 2010 showing MidFirst or one of its agents was actively accessing the property records. At that point, MidFirst would have had notice of the SPP Deed and the Bailey Deed.

17. MidFirst has produced no admissible evidence to prove they were not aware of these deeds. At best, an incompetent interested witness affidavit claims only that MidFirst was not aware of the Deeds **on or about the time they were executed**. The Thad Burr affidavit (Exhibit A to MidFirst's motion) did not address the question of when MidFirst learned of the deeds.

18. MidFirst and their agents were either not diligent in execution of the foreclosure or ignored the SPP Deed and the Bailey Deed. Before foreclosing on a homeowner, it should be expected the appropriate property records would be

---

chain of title generally establish an irrebuttable presumption of notice. *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007)."

[3] "Reasonable diligence requires that owners of property interests make themselves aware of relevant information available in the public record." …'However, reliance is not reasonable when information revealing the truth could have been discovered within the limitations period.' Diligence is required when claimants have been 'put on notice of the alleged harm of injury-causing actions.'"

*Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928 (Tex. 2011)

checked to determine if there were any tax or judgment liens or second liens. These could affect the foreclosure and certainly would affect the allocation of sales proceeds.

19. Additionally, several of the documents filed with MidFirst's Motion have check marks not on the recorded copies. These check marks seem to be noting particular data in the document. For example, MidFirst's Exhibit A-1, Bailey's Exhibit 1 (Chester Deed) has checks on the names of the borrowers and the amount borrowed. MidFirst's Exhibit A-4, Bailey's Exhibit 4 (Bailey Deed) has these same check marks. It is a key fact issue as to when the marks were made and by whom. If made by MidFirst or its agent prior to the sale, it is evidence of knowledge of the Bailey Deed and, by extension, the SPP Deed.

20. Finally, several of the exhibits in MidFirst's Motion were clearly downloaded from the Travis County Clerk's website (they have "Unofficial Document" emblazoned across the pages). This shows MidFirst or its agent was accessing the property records for the property and should have noticed the Bailey and SPP deeds.

21. At a minimum, a fact issue exists regarding what MidFirst knew and when they knew it.

**B. MidFirst did not prove Bailey lacks standing to challenge any assignment.**

22. As discussed *supra*, Bailey has standing with regard to the Chester Deed and, as a successor and/or assign is entitled to the benefits thereof.

23. Texas law follows the common law rule where a debtor may bring any ground against an assignee to challenge an assignment as void or invalid. *See Tri-Cities*

*Const., Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ); *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.). This was recently acknowledged by the Federal 5th Circuit, and is the majority rule followed in Texas. *See Reinagel, et al. v. Deutsche Bank Nat'l Trust Co.*, No. 12-50569, 2013 U.S. App. LEXIS 14089 (5th Cir. (Tex.) July 11, 2013) (reversing district court, Hon. Sam Sparks, on this point of law);

24. Texas Courts also permit challenging the chain of assignments regarding the right of a party to foreclose. *See Priesmeyer v. Pacific Southwest Bank, F.S.B.*, 917 S.W.2d 937 (Tex.App.—Austin 1996); *see also Martin v. New Century Mortgage Co.*, 2012 Tex. App. LEXIS 4705 (Tex. App.—Houston [1st Dist.] 2012); *Austin v. Countrywide Home Loans*, 261 S.W.3d 68 (Tex. App.—Houston [1st Dist.] 2008); *Leavings v. Mills*, 175 S.W.3d 301 (Tex. App.— Houston [1st Dist.] 2004, no pet.); *Shepard v. Boone*, 99 S.W.3d 263 (Tex. App.—Eastland 2003).

## C. Plaintiff has a viable cause of action for breach of contract.

25. MidFirst claimed that it is entitled to summary judgment on Bailey's breach of contract claim because Bailey did not have a contract with MidFirst. As discussed *supra*, Bailey is a successor and/or assignee of the Chestnut Deed and is bound and benefited by the Deed of Trust. Therefore, he is a party to the contract. If MidFirst is a party to the contract, Bailey has a contract with MidFirst.

26. The Chestnut deed is a valid contract, Bailey tendered every payment required of him until after foreclosure. See Exhibits 6 and 7 Affidavit and Proof of payments. MidFirst breached the contract by not providing notice to Bailey as

admitted in paragraph 23 of MidFirst's Motion. Bailey pled damages of having a void foreclosure executed on his home. This was a violation of Section 18 of the Chester Deed.

### D. Bailey's pleading supports his assertion the foreclosure is void *ab initio* and should be set aside

27. The intervening actions of the Chestnuts and SPP to deed the property to Bailey negated MidFirst's authority to conduct a foreclosure. An action taken without authority is void. Bailey is entitled to have the foreclosure sale set aside because MidFirst did not own any of the debt.

### E. Bailey's Quiet Title Claim is Supported by Proper Assignments

28. MidFirst states Plaintiff's Quiet Title action fails but then discusses the elements of a trespass to title action. Bailey has pled Quiet Title but not trespass to quiet title.

29. The elements of a suit to Quiet Title are:

    (a) Petitioner's legal or equitable interest in specific property

    (b) Existence of claim by defendant that appears valid on its face and interferes with or hinders petitioner's title.

    (c) Invalidity or unenforceability of defendant's claim

30. Petitioner seeks judicial decree quieting title to property by removing cloud cast by defendant's claim or contention.

31. The Bailey Title shows his interest in the specific property. The Substitute Trustee's Deed (Exhibit 8) appears valid on its face and interferes with Bailey's title.

32. MidFirst's claim is invalid because of the void foreclosure discussed *supra*.

33. Bailey has sought judicial decree quieting title to the property by removing the cloud cast by MidFirst's claim or contention.

## RESPONSE TO NO-EVIDENCE SUMMARY JUDGMENT

### A. Bailey has sufficient evidence to raise fact issues on his breach of contract claim.

34. In a no-evidence motion for summary judgment, a defendant can challenge a plaintiff to produce evidence to support one or more elements of the plaintiff's cause of action on which the plaintiff would have the burden of proof at trial after an adequate time for discovery has passed. TEX. R. CIV. P. 166a(i). To avoid a no-evidence summary judgment, the plaintiff is not required to marshal its proof; the plaintiff only needs to point out evidence that raises a fact issue on the elements challenged in the defendant's motion. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). To raise a genuine issue of material fact, the plaintiff must produce more than a scintilla of evidence in support of the challenged elements. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence is produced if the evidence is sufficient to allow reasonable and fair-minded people to differ in their conclusions on whether the challenged fact exists. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). In evaluating whether more than a scintilla of evidence exists, the court must view the evidence in the light most favorable to the plaintiff, crediting evidence favorable to the plaintiff if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

35. Defendant alleged that there is no evidence supporting essential elements of plaintiff's cause of action for breach of contract. MidFirst only challenges the element requiring the existence of a contract. Bailey has shown there is more than a scintilla of evidence he is a successor and/or assignee of the Chester Deed which is the contract that MidFirst contends gives them contractual rights in the lien and the ability to foreclose. MidFirst is purportedly a successor and/or assignee of the Deed of Trust

36. The Court should deny defendant's no-evidence motion for summary judgment because plaintiff has produced sufficient evidence to raise a fact issue on the element challenged by MidFirst.

37. MidFirst also seeks no-evidence summary judgment on a wrongful foreclosure claim that was not pled. Instead, Bailey stated the foreclosure was void.

**B. Bailey has sufficient evidence to support his Quiet Title Claim**

38. Bailey's Quiet Tile claim evidence is discussed supra. Bailey has provided more than a scintilla of evidence to support the elements of Quiet Title.

**REQUEST FOR TRADITIONAL SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIMS**

**A. MidFirst did not satisfy its burden under Texas Rule of Civil Procedure 166a(c)**

39. To succeed on a traditional motion for summary judgment on its counterclaim, the defendant must show that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex.

2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). To meet this burden, the defendant must conclusively prove all essential elements of its claim. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A matter is conclusively established if reasonable people could not differ on the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence that raises a genuine issue of material fact. *Boudreau v. Fed. Trust Bank*, 115 S.W.3d 740, 743 (Tex. App.—Dallas 2003, pet. denied). In deciding whether to grant defendant's motion, the court must take as true all competent evidence favorable to the plaintiff and indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Nixon*, 690 S.W.2d at 548-49.

40. MidFirst moved for summary judgment on its counterclaim for Declaratory Judgment, arguing that its motion had proven it had standing to foreclose. Because Plaintiff has not brought an action under the Act, Movant is not permitted to bring counterclaims under the Act. The Declaratory Judgment Act is not available to settle disputes already pending before a court. *Johnson v. Hewitt*, 539 S.W.2d 239, 240-241 (Tex. Civ. App. -- Houston [1st Dist.] 1976, no writ); *Joseph v. City of Ranger*, 188 S.W.2d 1013, 1014 (Tex. Civ. App. -- Eastland 1945, writ ref'd w.o.m.). *John Chezik Buick Co. v. Friendly Chevrolet Co.*, 749 S.W.2d 591, 594 (Tex. App. Dallas 1988).

41. MidFirst's Declaratory Judgment counterclaim is duplicative of Bailey's Quiet Title claim and therefore a dispute already before the Court and should be denied.

42. Further, MidFirst has not proven that its foreclosure was valid as discussed *supra.* The SPP Deed and Bailey Deed negated MidFirst's right to foreclose or at least its right to foreclose without notifying Bailey.

**B. This suit does not support a writ of possession counterclaim.**

43. Tex. R. Civ. Pro. 310 provides a writ of possession "when an order foreclosing a lien upon real estate is made in a suit having for its object the foreclosure of such lien…" This suit does not have for its object the foreclosure of the lien. Instead, it is a suit claiming the foreclosure of the lien was improper due, among other things, to a lack of standing and proper foreclosure procedure.

44. Additionally, MidFirst, as discussed *supra,* has not established its right to foreclose.

## CONCLUSION

45. Plaintiff Karl B. Bailey has provided admissible evidence to support his claims and defeat defendant MidFirst Bank's amended traditional and no evidence motions for summary judgment. Further, admissible evidence has been provided to disprove defendant MidFirst Bank's, counterclaims.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Karl B. Bailey requests that the Amended Motion for Summary Judgment of MidFirst Bank, Defendant, be denied in its entirety and further that summary judgment be entered in his favor on the counterclaims of MidFirst Bank. If the Court grants defendant's motion for

summary judgment, plaintiff asks the Court to overrule plaintiff's objections so they will be preserved for appeal.

**Respectfully submitted,**

/s/ Anthony G. Read
---------------------------------
**William B. Gammon SBN: 07611280**
**Anthony G. Read SBN: 24056184**
1201 Spyglass Dr., Suite 100
Austin, Texas 78746
(512) 472-8909
(888) 545-4279 (fax)
firm@gammonlawoffice.com
Attorneys for Karl B. Bailey

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument has been served via ProDoc E-Service or fax on June 25, 2014, in accordance with Rule 21a, Texas Rules of Civil Procedure, on all counsel of record.


CHRIS H. POCHYLA
**BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP**
15000 Surveyor Boulevard, Suite 100
Addison, TX 75001
Phone: 972-340-7955
Fax: 972-341-0734


<u>/s/ Anthony G. Read</u>
Anthony G. Read

# APPENDIX
# TAB E

Tᴇx. R. Cɪv. P. 310 Writ of Possession

When an order foreclosing a lien upon real estate is made in a suit having for its object the foreclosure of such lien, such order shall have all the force and effect of a writ of possession as between the parties to the foreclosure suit and any person claiming under the defendant to such suit by any right acquired pending such suit; and the court shall so direct in the judgment providing for the issuance of such order. The sheriff or other officer executing such order of sale shall proceed by virtue of such order of sale to place the purchaser of the property sold thereunder in possession thereof within thirty days after the day of sale.

# APPENDIX
# TAB F

7 Tex. Admin. Code § 65.3. Definitions

The following words and terms, when used in this chapter, shall have the following meanings, unless the context clearly indicates otherwise.

…

(21) Wrap-around real estate loan--A financing device whereby a junior mortgage lien secures a liability consisting of the amount of senior debt, plus any additional funds advanced to the borrower.

# APPENDIX
## TAB G

TEX. PROP. CODE § 51.002.  Sale of Real Property Under Contract Lien

   (a) A sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month. Except as provided by Subsection (h), the sale must take place at the county courthouse in the county in which the land is located, or if the property is located in more than one county, the sale may be made at the courthouse in any county in which the property is located. The commissioners court shall designate the area at the courthouse where the sales are to take place and shall record the designation in the real property records of the county. The sale must occur in the designated area. If no area is designated by the commissioners court, the notice of sale must designate the area where the sale covered by that notice is to take place, and the sale must occur in that area.

(b) Except as provided by Subsection (b-1), notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:

   (1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;

   (2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and

   (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.

(b-1) If the courthouse or county clerk's office is closed because of inclement weather, natural disaster, or other act of God, a notice required to be posted at the courthouse under Subsection (b)(1) or filed with the county clerk under Subsection (b)(2) may be posted or filed, as appropriate, up to 48 hours after the courthouse or county clerk's office reopens for business, as applicable.

(c) The sale must begin at the time stated in the notice of sale or not later than three hours after that time.

(d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

(e) Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

(f) Each county clerk shall keep all notices filed under Subdivision (2) of Subsection (b) in a convenient file that is available to the public for examination during normal business hours. The clerk may dispose of the notices after the date of sale specified in the notice has passed. The clerk shall receive a fee of $ 2 for each notice filed.

(f-1) If a county maintains an Internet website, the county must post a notice of sale filed with the county clerk under Subsection (b)(2) on the website on a page that is publicly available for viewing without charge or registration.

(g) The entire calendar day on which the notice of sale is given, regardless of the time of day at which the notice is given, is included in computing the 21-day notice period required by Subsection (b), and the entire calendar day of the foreclosure sale is excluded.

(h) For the purposes of Subsection (a), the commissioners court of a county may designate an area other than an area at the county courthouse where public sales of real property under this section will take place that is in a public place within a reasonable proximity of the county courthouse as determined by the commissioners court and in a location as accessible to the public as the courthouse

door. The commissioners court shall record that designation in the real property records of the county. A designation by a commissioners court under this section is not a ground for challenging or invalidating any sale. A sale must be held at an area designated under this subsection if the sale is held on or after the 90th day after the date the designation is recorded. The posting of the notice required by Subsection (b)(1) of a sale designated under this subsection to take place at an area other than an area of the courthouse remains at the courthouse door of the appropriate county.

(i) Notice served on a debtor under this section must state the name and address of the sender of the notice and contain, in addition to any other statements required under this section, a statement that is conspicuous, printed in boldface or underlined type, and substantially similar to the following: "Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately."

# APPENDIX
# TAB H

Tex. R. Civ. P. 166a Summary Judgment

(a) *For Claimant.* --A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the adverse party has appeared or answered, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to amount of damages.

(b) *For Defending Party.* --A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

(c) *Motion and Proceedings Thereon.* --The motion for summary judgment shall state the specific grounds therefor. Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response. No oral testimony shall be received at the hearing. The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

(d) *Appendices, References and Other Use of Discovery Not Otherwise on File.* -- Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs: (i) at least twenty-one days before the hearing if such proofs are to be used to support the summary judgment; or (ii) at least seven days before the hearing if such proofs are to be used to oppose the summary judgment.

(e) *Case Not Fully Adjudicated on Motion.* --If summary judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the judge may at the hearing examine the pleadings and the evidence on file, interrogate counsel, ascertain what material fact issues exist and make an order specifying the facts that are established as a matter of law, and directing such further proceedings in the action as are just.

(f) *Form of Affidavits; Further Testimony.* --Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.

(g) *When Affidavits Are Unavailable.* --Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(h) *Affidavits Made in Bad Faith.* --Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party

employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

(i) *No-Evidence Motion.* --After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.